# EXHIBIT B

STATE OF NORTH CAROLINA       IN THE GENERAL COURT OF JUSTICE

SUPERIOR COURT DIVISION

COUNTY OF MECKLENBURG      CIVIL ACTION NO: 18-CVS-1254

MALCOM H. WIENER,

Plaintiff,

v.

AXA EQUITABLE LIFE INSURANCE
COMPANY.

Defendant.

**COMPLAINT**
(Jury Demand)

NOW COMES Plaintiff Malcom H. Wiener ("Plaintiff"), by and through counsel, complaining of Defendant AXA Equitable Life Insurance Company, ("Defendant") and alleges and says as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff is a citizen of the State of Connecticut, who presently resides at 66 Vista Drive, Greenwich Connecticut, 06830.

2.     Upon information and belief, AXA Equitable Life Insurance Company ("AXA") is an insurance company organized under New York law with its principal place of business in New York, New York.

3.     Defendant owns and manages an operation center in Charlotte, North Carolina that is home to nearly 700 employees.

4.     Defendant regularly and consistently solicits and conducts business in North Carolina, including business related to Plaintiff.

5.     Defendant's underlying actions that are the subject of this lawsuit and give rise to the claims in this lawsuit took place in North Carolina and are the direct result of Defendant's

contacts with North Carolina.

6.      This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties.

7.      Venue is proper in Mecklenburg County, North Carolina.

## FACTUAL ALLEGATIONS
### Plaintiff's Insurance Policies with Defendant

8.      Plaintiff is an internationally recognized and awarded Aegean prehistorian.

9.      Plaintiff purchased a series of flexible premium life insurance policies from Defendant (collectively, the "Policies") as follows:

     a.      On or about October 14, 1986, policy number 35 224 259 (attached hereto as Exhibit A) in the amount of Nine Million Dollars ($9,000,000.00), which on or about November 30, 1987 was reduced to Seven Million Two Hundred Thousand Dollars ($7,200,000.00);

     b.      On or about May 14, 1987, policy number 37 205 147 (attached hereto as Exhibit B) in the amount of Nine Million Dollars ($9,000,000.00), which on or about November 30, 1987 was reduced to Seven Million Two Hundred Thousand Dollars ($7,200,000.00); and

     c.      On or about May 14, 1987, policy number 37 205 155 (attached hereto as Exhibit C) in the amount of Two Million Dollars ($2,000,000.00), which on or about November 30, 1987 was reduced to One Million Six Hundred Thousand Dollars ($1,600,000.00).

10.      Plaintiff was born on July 3, 1935 and purchased the Policies at fifty-one (51) years of age.

11.      The Policies are universal life insurance plans that stay in effect throughout Plaintiff's life provided that the conditions of the Policies are met.

12.      Defendant's representative, David Hungerford ("Hungerford"), serviced and maintained the Policies on Plaintiff's behalf.

01075-001/00097217-3

13. Hungerford was the agent of record on the Policies.

14. Hungerford acted as Plaintiff's advocate whenever any action needed to be taken regarding the Policies, including but not limited to, a prior reinstatement application for the Policies.

15. In 2009, the Policies lapsed, and Defendant required Plaintiff to complete a reinstatement application, which Defendant subsequently approved.

16. Plaintiff's former company, Millburn Corporation ("Millburn"), a New York company, was responsible for maintaining the Policies on Plaintiff's behalf, including paying any and all premiums.

17. Millburn's business address was the mailing address for all correspondence from Defendant regarding the Policies.

18. The Policies require that Plaintiff maintain the cash value of the Policies at a level sufficient to cover the cost of monthly deductions.

19. Pursuant to the express terms of the Policies, if upon any monthly anniversary, the cash value of the Policies is insufficient to cover the cost of monthly deductions, Defendant is required to send a policy lapse notice to Plaintiff's last known address informing Plaintiff of the calculated shortfall and resultant premium payment needed to prevent the Policies from lapsing. The only way Plaintiff or Millburn would know whether there was a premium shortfall and the amount of any such shortfall is by receipt of the policy lapse notice from Defendant. The Policies further provided Plaintiff a 61 day grace period within which to make such shortfall payment.

20. Since purchasing the Policies, Plaintiff has paid over three million dollars ($3,000,000.00) in premiums under the Policies.

**Plaintiff's 2013 Application for Reinstatement**

21.     On or about December 2, 2013, when Plaintiff was seventy-eight (78) years old, Plaintiff received notice of termination from Defendant for each of the Policies (attached hereto as Exhibit D) along with an application for reinstatement.

22.     The purpose of the application for reinstatement as stated on the application is to "[p]rovide a preliminary indication of [Plaintiff's] insurability[.]"

23.     Immediately upon receipt of the policy termination notices, Plaintiff contacted Hungerford and expressed his intention to send the missing payments to Defendant.

24.     In response, Hungerford told the Plaintiff the best course of action was to complete the application for reinstatement and submit the requested medical evidence of insurability rather than sending a payment.

25.     Acting in accordance with Hungerford's advice, Plaintiff set about to complete the application for reinstatement and submit the requested medical evidence of insurability.

26.     On or about December 23, 2013, Plaintiff submitted the reinstatement application along with the materials required by Defendant for medical evidence of insurability.

27.     On or about March 24, 2014, Defendant sent a notice to Plaintiff formally declining Plaintiff's reinstatement application, stating only that "[t]he decision results from our evaluation of specific items of information obtained from you in your application, or supplements to the application statements: specifically, information received from Dr. Barry Boyd" (attached hereto as Exhibit E).

28.     Plaintiff's health did not change in any material way between his 2009 reinstatement applicable and his 2013 reinstatement application.

### Defendant's Reckless Review and Reporting of Plaintiff's Reinstatement Application Materials

29.     Defendant's Underwriter, Hallie Hawkins ("Hawkins"), reviewed Plaintiff's 2013

reinstatement application.

30.     As part of her review of Plaintiff's reinstatement application, Hawkins requested Plaintiff's medical records from Plaintiff's doctor.

31.     After receiving and reviewing Plaintiff's medical records, Hawkins reported that Plaintiff had medical conditions and experienced medical events that he did not have and had never experienced, including but not limited to, reporting that Plaintiff had experienced a stroke and cognitive impairment.

32.     The inaccurate medical conditions and events Hawkins claims to have concluded from her review of Plaintiff's medical records were not supported by any facts or representations contained in those records.

33.     Upon information and belief, Hawkins failed to use any of the numerous resources or contacts available to her to verify her false conclusions before taking further action on those conclusions.

34.     After making her reckless, unverified and false conclusions regarding Plaintiff's health history, on or about March 12, 2014, Hawkins relayed those conclusions to another one of Defendant's employees, Sandra Huffstetler ("Huffstetler"), who was located at Defendant's Charlotte, NC operations center, and instructed her to report the false conclusions about Plaintiff's medical history, conditions and events, including those that were false, to the Medical Information Bureau ("MIB").

35.     Huffstetler reported the conclusions Hawkins had made concerning Plaintiff's medical history, conditions and events, including those that were false, to the MIB Group, Inc. f/k/a Medical Information Bureau ("MIB").

36.     At all times relevant hereto, Hawkins and Huffstetler were acting within the course

5

and scope of their employment with Defendant.

37.     MIB is a membership corporation owned by hundreds of insurance companies, including Defendant, and provides services designed to protect insurers, among others, from attempts to conceal or omit information material to underwriting life and health insurance.  fact collecting agency to which many life insurance companies belong, including Defendant.

38.     MIB collects information regarding individual applicants from member companies and, when authorized, provides that information to other life insurance companies.

39.     When a life insurance company receives an individual's life insurance application, the life insurance company reviews the individual's medical conditions and events that have been reported to MIB.

40.     Defendant falsely reported and made misrepresentations to MIB that Plaintiff has medical conditions and a medical history he does not have and has experienced medical events that he has not experienced.

41.     The false medical conditions Defendant reported to MIB from Plaintiff's medical file painted Plaintiff's current health and medical history in a false and negative light.

42.     Defendant's false report and misrepresentations to MIB prevents Plaintiff from obtaining life insurance from other companies and renders him uninsurable.

43.     Plaintiff's intention was, and remains, to continue to pay premium as required by the terms of the Policies.

44.     Plaintiff first learned about Defendant's false report and misrepresentations concerning Plaintiff's medical history, conditions and events to MIB on August 30, 2017 when Huffstetler was deposed in Charlotte, North Carolina as part of a separate lawsuit.

## FIRST CLAIM FOR RELIEF
### (Negligent Misrepresentation)

45.     Plaintiff incorporates fully herein by reference the allegations of the preceding paragraphs of this Complaint.

46.     Defendant required Plaintiff to provide his private medical records, including an authorization to communicate with his physician regarding his health, in order to consider his 2013 reinstatement application.

47.     Plaintiff signed and provided Defendant with a release granting Defendant access to all requested materials for the 2013 reinstatement application.

48.     Defendant owed Plaintiff a duty of care in preparing information about Plaintiff's medical history, conditions and events and making representations regarding the same to third parties.

49.     Defendant did not review, assess, prepare and communicate Plaintiff's medical records with reasonable care.

50.     Defendant's subsequent representations to the MIB concerning Plaintiff's medical history were not made with reasonable care because Defendant prepared and communicated false and inaccurate information concerning Plaintiff's medical history, conditions and events to MIB that was unsupported by the medical records and never verified by Defendant.

51.     Plaintiff justifiably relied on Defendant and its representatives to exercise reasonable care and competence to prepare and communicate accurate information to MIB concerning Plaintiff's medical history, conditions and events.

52.     Plaintiff's reliance on Defendant's representations and duty to exercise reasonable care in preparing and communications concerning his medical history, conditions and experiences was detrimental considering Defendant failed to exercise due care in the performance of its duties and prepared and communicated false information concerning  Plaintiff's medical history,

conditions and events to Defendant.

53.     The actions and representations of the Defendant as described herein have caused damages to Plaintiff in an amount in excess of $25,000.00.

**SECOND CLAIM FOR RELIEF**
**(Libel)**

54.     Plaintiff incorporates fully herein by reference the allegations of the preceding paragraphs of this Complaint.

55.     The misrepresentations Defendant reported to the MIB concerning Plaintiff's medical history, conditions and events ("Libelous Statements") were false.

56.     The Libelous Statements were published in a written communication by the Defendant to third parties.

57.     At the time the Libelous Statements were made, Defendant either knew they were false or failed to exercise ordinary care to determine those statements were false.

58.     The Libelous Statements tend to subject Plaintiff to ridicule, contempt or disgrace, tended to degrade Plaintiff and/or caused him to be shunned and avoided under the circumstances described herein.

59.     The people to whom the Libelous Statements were published reasonably understood the Libelous Statements to subject Plaintiff to ridicule, contempt or disgrace, degrade Plaintiff and/or caused Plaintiff to be shunned and avoided under the circumstances described herein.

60.     At minimum, the Libelous Statements within the context they were made (i.e., to MIB for insuring purposes) necessarily defamatory under the circumstances.

61.     The Libelous Statements constitute libel per se or, alternatively, libel per quod.

62.     The Libelous Statements were made by the Defendant, through their agents, with

willful and wanton disregard, and with malice, as the agents knew the statements were false, or acted with reckless disregard as to their falsity.

63.     Plaintiff has suffered special damages by virtue of being rendered uninsurable as a result of the Libelous Statements and has been injured in an amount in excess of $25,000.

## THIRD CLAIM FOR RELIEF
### (Negligence)

64.     Plaintiff incorporates fully herein by reference the allegations of the preceding paragraphs of this Complaint.

65.     Defendant was responsible for the full and accurate review of Plaintiff's medical records and the reporting of accurate conclusions concerning those records to the MIB.

66.     Defendant had a duty to exercise reasonable care in its review, assessment, reporting and subsequent publishing of Plaintiff's private health information.

67.     Defendant failed to exercise reasonable care in the performance of its duties owed to Plaintiff by, among other things, failing to adequately read, understand and verify and accurately report Plaintiff's medical history, conditions and events to third parties, including MIB.

68.     Defendant's actions as described herein constituted breaches of its duty to exercise reasonable care owed to Plaintiff in Defendant's review, assessment, reporting and subsequent publishing of Plaintiff's private health information.

69.     As a result of Defendant's actions, Plaintiff was not only denied reinstatement of his life insurance with Defendant but also had a MIB profile that incorrectly identified him as having several serious medical conditions that he does not have and experiencing certain serious medical events that he has not experienced.

70.     The MIB report based on Defendant's misrepresentations regarding Plaintiff's medical history, conditions and events is accessible by life insurance companies across the country

and the incorrect information in the MIB report renders Plaintiff unfairly and incorrectly uninsurable.

71.     The MIB report based on Defendant's misrepresentations regarding Plaintiff's medical history, conditions and events is a direct result of Defendant's failure to exercise reasonable care in regards to its review and report of Plaintiff's medical history, conditions and events and is the proximate and actual cause of Plaintiff's uninsurability.

72.     Defendant's negligence has proximately caused Plaintiff to suffer damages in an amount in excess of $25,000.00.

**FOURTH CLAIM FOR RELIEF**
**(Unfair and Deceptive Trade Practices-Chapter 75)**

73.     Plaintiff incorporates fully herein by reference the allegations of the preceding paragraphs of this Complaint.

74.     The actions and misrepresentations of Defendant in its course of dealings with Plaintiff and MIB as described herein were unfair, unscrupulous and calculated to deceive and were deceptive.

75.     The actions and representations of the Defendant as described herein were in or affecting commerce in North Carolina.

76.     The actions and representations of Defendant as described herein have caused damages to Plaintiff in an amount in excess of $25,000.00.

77.     Plaintiff is entitled to treble damages and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16 and 75-16.1.

WHEREFORE, Plaintiff Malcom H. Wiener prays the Court for judgment as follows:

1. That Plaintiff have and recover from Defendant damages in an amount in excess of $25,000.00, plus interest in at the legal rate as allowed by law as requested in the First Claim for Relief;

2. That Plaintiff have and recover from Defendant damages in an amount in excess of $25,000.00, plus interest in at the legal rate as allowed by law as requested in the Second Claim for Relief;

3. That Plaintiff have and recover from Defendant damages in an amount in excess of $25,000.00, plus interest in at the legal rate as allowed by law as requested in the Third Claim for Relief;

4. That Plaintiff have and recover from Defendant damages in an amount in excess of $25,000.00, plus interest in at the legal rate as allowed by law as requested in the Fourth Claim for Relief;

5. That Plaintiff's respective damages as to the Fourth Claim for Relief be trebled pursuant to N.C. Gen. Stat. § 75-16;

6. That all costs of this action be taxed against Defendant;

7. That Plaintiff have and recover any and all attorneys' fees from the Defendant be trebled pursuant to N.C. Gen. Stat. § 75-16.1 or to the extent otherwise permitted under North Carolina law;

8. For a trial by jury as to all facts so triable; and

9. For such other and further relief to which Plaintiff may be entitled.

Respectfully submitted this the 24th day of January, 2018.

ALEXANDER RICKS PLLC

Kerry L. Traynum
NC Bar No. 32968
kerry@alexanderricks.com

Abigail W. Henderson
NC Bar No. 52182
abbie@alexanderricks.com

4601 Park Road, Suite 580
Charlotte, North Carolina 28209
Telephone: (704)365-3656
Facsimile:  (704) 365-3676

01075-001/00097217.3

# EXHIBIT A

| | |
|---|---|
| INSURED PERSON | MALCOLM H WIENER |
| POLICY OWNER | MALCOLM H WIENER |
| FACE AMOUNT OF INSURANCE | $7,200,000 |
| DEATH BENEFIT | OPTION B (SEE PAGE 6) |
| POLICY NUMBER | 36 224 259 |

 AXA EQUITABLE

**LIFE
INSURANCE
POLICY**

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*

Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

*Christopher M. Condon*

Christopher M. Condon
Chairman and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

# *Contents*

*Policy Information*      3

*Table of Guaranteed Maximum Insurance Costs*      4

*Who Benefits from this Policy?*      5

*The Insurance Benefits We Pay*      5

*The Premiums You Pay*      7

*Your Policy Account and How it Works*      8

*Our Annual Report to You*      10

*The Cash Surrender Value of this Policy*      10

*How a Loan Can be Made*      11

*How Benefits are Paid*      12

*Other Important Information*      13



*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

### In this policy:

*"We"*, *"our"* and *"us"* mean Equitable Variable Life Insurance Company.

*"You"* and *"your"* mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

No. 85-200                    Page 2

## POLICY INFORMATION

INSURED PERSON   MALCOLM H WIENER

POLICY OWNER   MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE   $7,200,000

DEATH BENEFIT   OPTION B (SEE PAGE 6)

POLICY NUMBER   36224259

BENEFICIARY   CAROLYN SEELY WIENER

REGISTER DATE   NOV 01, 1986                ISSUE AGE   51

DATE OF ISSUE   FEB 11, 1987                     SEX   MALE

                                            NON-SMOKER

PARTIAL
CASH VALUE
WITHDRAWAL   MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE   CONNECTICUT

AN INITIAL PREMIUM PAYMENT OF $96,782.50 IS DUE ON OR BEFORE DELIVERY OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $96,782.50 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE, WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH BIRTHDAY.  THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.



POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

-------------TABLE OF EXPENSE CHARGES-------------

INITIAL ADMINISTRATIVE CHARGE:

   $250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:

   2% OF EACH PREMIUM PAYMENT.  THIS AMOUNT IS SUBTRACTED FROM EACH
   PREMIUM PAYMENT.  WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
   CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
   RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

   $4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT.  WE RESERVE THE RIGHT TO
   CHANGE THIS CHARGE.  BUT IT WILL NEVER BE MORE THAN $8 A MONTH.  CHANGES
   WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

   $25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
   SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

   $1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
   FROM THE POLICY ACCOUNT.

85-200-3                    PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

------------TABLE OF SURRENDER CHARGES----------------

| POLICY YEAR | CHARGE |
| --- | --- |
| 1 | $76,950 |
| 2 | 76,950 |
| 3 | 76,950 |
| 4 | 76,950 |
| 5 | 76,950 |
| 6 | 76,950 |
| 7 | 61,560 |
| 8 | 46,170 |
| 9 | 30,780 |
| 10 | 15,390 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS. IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT. SEE PAGE 11.

----------------ENDORSEMENTS-----------------

1. AMENDMENT TO SUICIDE EXCLUSION: THE SUICIDE EXCLUSION IN THIS POLICY, OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2. WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES. ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3. THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4. THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259



5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 4.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION: THE THIRD SENTENCE IS DELETED.

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION: THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

      A. ITEM 5 ON PAGE 7 OF THE POLICY;

      B. THE THIRD PARAGRAPH ON PAGE 8;

      C. THE FIRST PARAGRAPH ON PAGE 12; AND

      D. THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

<u>EXHIBIT A</u>
Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 20 of 108

POLICY INFORMATION CONTINUED - POLICY NUMBER 36224259

---------TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS---------

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | $ 0.61000 | 86 | $15.02167 |
| 52 | 0.66583 | 87 | 16.35567 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.26750 |
| 57 | 1.04667 | 92 | 24.06333 |
| 58 | 1.14000 | 93 | 26.12000 |
| 59 | 1.23917 | 94 | 28.81333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27583 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33917 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

85-200-4                    PAGE 4

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 12.

**Assignment.** You can assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

- the death benefit described below;
- plus any other benefits then due from riders to this policy;
- minus any loan (and loan interest) on the policy;
- minus any overdue monthly deduction if the insured person dies during the grace period.

*THE INSURANCE*
*BENEFITS*
*WE PAY* (continued)

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

Death Benefit. The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF*
*APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall decrease by a ratable portion for each full year

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |

EXHIBIT A

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 23 of 108

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3. You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4. Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

## The Premiums You Pay

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

Page

**THE PREMIUMS
YOU PAY** *(continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

**Limits.** Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

**Grace Period.** If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

**Reinstatement.** If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

## *Your Policy Account and How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.



EXHIBIT A
Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 25 of 108

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

**How We Add Interest.** We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than 4½%.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

**Monthly Deductions.** At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 8. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

* The monthly cost of insurance for the insured person that we determine.

* The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; *plus* any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.



**YOUR POLICY ACCOUNT AND HOW IT WORKS** *(continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

Other Deductions. We also make the following other deductions from the Policy Account as they occur:

- If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.

- We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.

- We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

*Our Annual Report to You*

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

*The Cash Surrender Value of this Policy*

Net Cash Surrender Value. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

Cash Surrender Value. The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

Surrender Charges. If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 27 of 108

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made



**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.

85-300-11                                        Page 11

2. INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at $3\frac{1}{2}$% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## Other Important Information

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

*OTHER IMPORTANT*
*INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Policy Changes—Applicable Tax Law. For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

Changes in Policy Cost Factors. Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

When the Policy is Incontestable. We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

What if Age or Sex has Been Misstated? If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

**How the Suicide Exclusion Affects Benefits.** If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

**How We Measure Policy Periods and Anniversaries.** We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

**How and When We Defer Payment.** We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

**The Basis We Use for Computation.** We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at $4\frac{1}{2}$%.

**Policy Illustrations.** Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

**Policy Changes.** You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

## Table of Guaranteed Payments
### MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM

| Option 2 — FIXED PERIOD INSTALLMENTS | | | | Option 3 — MONTHLY LIFE INCOME | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | 10 Years Certain Male | 10 Years Certain Female | 20 Years Certain Male | 20 Years Certain Female | Refund Certain Male | Refund Certain Female |
| 1 | $84.70 | $1,000.00 | 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.53 | 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

# Limitation on Amount of Insurance Rider

*(This limitation is required by the laws of New York State)*

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of: a) $5,000; or b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 6 months | The greater of: a) $10,000; or b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at 4½% per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President, Secretary and Associate General Counsel

Christopher M. Condron, Chairman and Chief Executive Officer

R85-406

*Exchange*
*Privilege*
*Rider*

In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

THE NEW POLICY. Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in effect in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R85-405NY        Exchange Privilege

*M. Wiener*

**Application To**

☐ The Equitable Life Assurance Society of the United States

☒ Equitable Variable Life Insurance Company

REQUEST FOR ☑ CHANGE (as specified in Section I) OF POLICY OR CONTRACT NO. 36224259

☐ REINSTATEMENT ☐ DELIVERY OF POLICY OR CONTRACT NO. _____

## SECTION I

**Requested Change** (see below for adding RTI and CTI): Reduce the Face Amount from $9,000,000 to $7,200,000. Effective date of change is December 1, 1987.

_____
_____
_____
_____

**ADD** ☐ Renewable Term Rider (RTI) on Insured     Amt. $_____
     ☐ Renewable Term Rider (RTI) on Additional Insured     Amt. $_____
     ☐ Children's Term Rider (CTI)     Amt. $_____ Units____

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" (in any designation include Full Name and Relationship to Insured).

*Complete below and answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.*

**PERSON(S) TO BE COVERED UNDER RTI ON ADDITIONAL INSURED AND/OR CTI:**

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI? | First Name | Middle Initial | Last Name | Sex | Date of Birth Mo. | Day | Yr. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Complete a.-e. only as to Additional Insured for RTI.*

a. List all current occupations—Give Title(s) and Duties.

_____
_____

b. Age Nearest Birthday_____

c. Place of Birth: State of _____

d. Residence: State of _____

e. Owner's Relationship to Addl. Insured: _____

The signers of this request agree that:

1. If evidence of insurability is required, the statements and answers to the questions
   ☐ in Sections I and II of this form
   ☐ in Sections I and II of this form and on the medical history form dated _____
   are reaffirmed and offered as part of this request.

   Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request
   (a) until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and
   (b) unless, if evidence of insurability is required, the

statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to: (1) Any assignment of the original policy or contract in force and on file with the Insurer at its Home Office; and (2) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

Dated at N.Y.   N.Y.   on 11-30 1987
     City   State

*See reverse side for Signature Requirements.*

_X_ _____ M.M. Wiener_, TRUSTEE

_____
_____
*Signature(s)*

Will any other existing insurance or annuity be replaced or changed (or has it been) assuming that any new insurance or annuity applied for will be issued?     ☐ Yes ☐ No

Signature of Agent _____

Also complete Production Credits information on the back.

180-333C

Cat. No. 45837

## Application (Continued)

### SECTION II

*For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.*
*For persons already covered by the policy or contract, such questions need be answered only as to occurrences that took place after the date of application for the policy or contract.*

**1. Has any Person To be Covered:**
a. Within the last two years been convicted of two or more moving violations or driving under the influence of alcohol or drugs, or had a driver's license suspended or revoked? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☐ No
b. Any plan to travel or reside outside the U.S.? (Give full details.) ☐ Yes ☐ No
c. Any other life insurance now in effect or application now pending? (State companies and amounts.) ☐ Yes ☐ No

**2. Has any Person To Be Covered:**
a. Within the last year flown other than as a passenger or plan to do so? ☐ Yes ☐ No
If yes: Total flying time at present _____ Hours;
Last 12 mos. _____ Hours; Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for competitive, test, stunt or military flying, or crop dusting.)
b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☐ No
c. Ever had an application for life or health insurance declined, that required an extra premium or was otherwise modified? (Give full details.) ☐ Yes ☐ No

d. Replaced or changed any other existing insurance or annuity (or any plan to do so) assuming that any new insurance or annuity applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☐ No
**3. Insured:** Height _____ Ft. _____ In. Weight _____ lbs.
Additional Insured: Height _____ Ft. _____ In. Weight _____ lbs.

**4. Has any Person To Be Covered:**
a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☐ No
b. Within the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☐ No

**5. Has any Person To Be Covered:**
a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.) ☐ Yes ☐ No
b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.) ☐ Yes ☐ No

**6. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. *For 4 and 5 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.*

| No. | Name of Person Affected | Details |
|-----|-------------------------|---------|
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |

**TO BE COMPLETED BY AGENT.**
For Production Credits (Service Agent first)

| (Print) Agent's Name(s) | Initial of Last Name | Number | % Int. |
|-------------------------|----------------------|--------|--------|
|                         |                      |        |        |
|                         |                      |        |        |
|                         |                      |        |        |

Agency & Code No. _____
District & Code No. _____
Date _____ 19 _____
Service Agent's Signature _____

### SIGNATURE REQUIREMENTS

*Change.* Owner (and assignee if policy is assigned) must sign. If evidence of insurability is required, each person covered by the change must also sign.
*Reinstatement.* Each person covered by the policy must sign. If the Insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.
*Delivery.* Same signature requirements as on original application.
*NOTE: If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.*

180-333C

THE **EQUITABLE**   ◈ **EVLICO**

## REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO
☐ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY

EQUITABLE AND EVLICO REQUESTS FOR CHANGE OF BENEFICIARY AND/OR OWNER MUST BE SUBMITTED ON SEPARATE FORMS.

### DO NOT RETURN THE POLICY WITH THIS REQUEST
*BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.*

INSURED'S/ANNUITANT'S NAME MALCOLM H. WIENER     POLICY NUMBER(S) 36 224 259

CHANGE OF BENEFICIARY: ☒ YES  ☐ NO (No change from present Beneficiary if neither box is checked.)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

CAROLYN SEELY WIENER, WIFE   Soc Sec # 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
720 PARK AVENUE
NEW YORK, N.Y. 10021

*ATTACH... APP "022"*

CHANGE OF OWNER:  ☒ YES  ☐ NO (No change from present Owner if neither box is checked.)
FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT

MALCOLM H. WIENER, SELF

### THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE

Owner's Address: if applicable, check one and complete.
☒ Address of NEW OWNER is  ☐ Change address of SAME OWNER to:

720 PARK AVENUE
NEW YORK, N.Y.    10021

TRUSTEE UNDER TRUST AGREEMENT
DATED 7/23/86
MHW   Malcolm H Wiener
SIGNATURE OF PRESENT OWNER(S)
(if present Owner is not the Insured/Annuitant, see signature instructions on cover page.)

Date: 11  9  93
        Month  Day  Year

### SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY
Federal Law requires that you provide the following Data (see reverse side for explanation).

PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.

Social Security Number  5 5 2 4 8 3 0 0 1   OR   Employer I.D. Number [ ][ ][ ][ ][ ][ ][ ][ ][ ]

PART TWO — Check the box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(c) of the Internal Revenue Code. . . ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete.

MHW  Malcolm H Wiener
Signature of New Owner

FOR EQUITABLE/EVLICO USE ONLY
The Equitable/EVLICO certifies that this change has been recorded.

Date: 11 17 19 93   By: [signature]

IMPORTANT: Please use typewriter or ball point pen. Press firmly since entries must be legible on both parts. Avoid erasures or alterations. When this page and its duplicate are completed, send both completed copies to us. When we have recorded the change, we will return a copy of the form signed by us as evidence of the change.

KB 11/16/93

ITEM# P325-7510C
CATALOG #113754

**Part 1 of an Application for Fixed Benefit Life Insurance To**
## Equitable Variable Life Insurance Company (EVLICO)

☐ JUV.
☐ OPAI

**1. Proposed Insured**
a. Print name to appear on policy.
MALCOLM   H.   WIENER
First / Middle Initial / Last

b. ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title____
c. List all current occupations—Give Title(s) and Duties
CHIEF EXECUTIVE OFFICER

d. Date of Birth: Mo. 07  Day 03  Yr. 19 35
e. Age Nearest Birthday: 51
f. Place of Birth: State of CHINA
g. Residence: State of CT
h. ☑ Male  ☐ Female

**2. Plan** ___ **Amount of Insurance**
☐ Indeterminate Premium—Yearly
Renewable Term for five years $____
☐ Modified Yearly Renewable Term for Amounts and Years selected below.

| Year | Face Amount | Year | Face Amount | Year | Face Amount |
|---|---|---|---|---|---|
| 1 | $ | 5 | $ | 8 | $ |
| 2 | | 6 | | 9 | |
| 3 | | 7 | | 10 | |
| 4 | | | | | |

☐ Single Premium Endowment $____
☐ Other ____ $____
☑ Flexible Premium Adjustable Life $ 9,000,000
Is the Death Benefit to include the Policy Account? ☐ Yes (Option B) ☐ No (Option A)

**3. Optional Benefits**
☐ Accidental Death Benefit $____
☐ Renewable Term on Additional Insured $____
☐ Children's Term $____ Units
☐ Disability Premium Waiver $____ Disability Benefit-Flexible Prem. Pol.
☐ Other ____ ☐ Waive Cost of Insurance
☐ Credit $____ per____

**4. Beneficiary** for Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured.
SAME AS OWNER

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.
The Beneficiary under any Term Insurance Rider on an Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions.

**5. Owner** Owner's Soc. Sec. or Tax No. 052 68 8801
The Owner is ☐ Proposed Insured ☐ Applicant for Child (See 10.c.)
☑ Other (Give Full Name): SHAREINVEST PARTNER REV. LVG
COUNTY MANS TRUST FBO MALCOLM H. WIENER , UNDER
AGREEMENT DATED 11/1/86
If Other , complete the following:
☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. Other Title____
Relationship to Insured____
Specify a successor Owner if desired

If the Proposed Insured or the Applicant for a Child is not the Owner and if all persons designated die before the Insured, the Owner will be the estate of the last of such persons to die except where the Insured is a Child (see Note in 10.c.).

**6. Mailing Address** ☑ Business (Give Full Name) ☐ Residence
MILBURN CORP'S
No. / Street / Apt.
C/o WOLPER ROSS
City
14070 BISCAYNE BLVD, MIAMI, FLA 33187
State / Zip

**7. Premium Payment Plan**
Check mode, and if Flexible Premium Policy complete the following:
Initial Prem. Payment: $ 96,782.50
Planned Periodic Prems. $ 96,782.50
☐ Do not send premium reminder notices
☐ Annual ☑ Semi-Annual ☐ Quarterly
☐ Monthly ☐ System-Matic (Attach S-M Form)
☐ Single
☐ Military Allotment: Branch____
Register Date____
☐ Salary Allotment: Register Date____
Unit Name____
Unit/Sub-Unit No. if established:____
Divisible by ☐ 2 ☐ 4 Payroll No.____
☐ Hold Prem.$____

**8. Note:**
Premiums for the Indeterminate Premium policy may change annually, subject to a guaranteed maximum annual renewal premium shown in the policy.

**9. Special Instructions**
a. ☐ Preliminary Term (PT) period of ____ days
ending ____ PT Premium $____
Mo. Day Yr.
b. ☐ Date to save insurance age:____
c. Other:
"ISSUE W/ENDORSEMENT
S 86-189"

REGISTER DATE : 11-1-86

EV-1-155   Cat. No. 110150

## 10. Complete if Proposed Insured Person is a Child (Issue Ages 0-14).

a. Will there be more life insurance in effect on the Child than on any older child in the family? ☐ Yes ☐ No
If yes, explain: _____

b. Applicant-Complete if other than the Child.
i. _____
First Name    Middle Initial    Last Name
ii. ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title _____
iii. Date of Birth _____ 19____
Month    Day    Year
iv. ☐ Male    ☐ Female
v. Relationship to Child: _____
vi. Total Life Insurance now in effect: $ _____

c. Owner. If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designation include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).
NOTE: Consider designating an adult secondary Owner.

to reduce the chance of a minor Child becoming the Owner. If all persons designated die before the Child, the Owner will be the Child.

d. Optional Benefit on Applicant.
☐ Supplemental Protective Benefit. Give Applicant's:
i. Age Nearest    ii. Place of
Birthday _____    Birth _____
State
iii. Height ____ Ft ____ In. Weight _____ lbs.
iv. Occupation-Give Title(s) and Duties: _____

Also answer questions on page 3 as to Applicant.

e. Limitations On Child's ADB and DPW Benefits.
If the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

## 11. Complete for Children's Term Rider.

Give Names of Children below and answer the Questions on page 3 as to each Child.

CHILDREN PROPOSED FOR INSURANCE.
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| First Name | Middle Initial | Last Name | Sex | Date of Birth | | |
|---|---|---|---|---|---|---|
| | | | | Mo. | Day | Yr. |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## 12. Complete for Renewable Term Rider on Additional Insured.

Complete below and answer the Questions on page 3 as to the Additional Insured.

PROPOSED ADDITIONAL INSURED PERSON
a. Print name as it is to appear on the Policy.
_____
First    Middle Initial    Last
b. List all current occupations—Give Title(s) and Duties.
_____
_____

c. Date of Birth: Mo. _____ Day _____ Yr. 19__
d. Age Nearest Birthday _____
e. Place of Birth: State of _____
f. Residence: State of _____
g. ☐ Male    ☐ Female
h. Owner's Relationship to Additional Insured Person: _____

## 13. Complete if Using Existing Option to Purchase Insurance.

i. Existing Individual Policy No. _____
ii. Option Date _____ iii. Option Amount: $ _____
iv. ☐ Regular Option or
☐ Option on Birth or Adoption of Child
Child's Name _____
Date of Birth or Adoption _____
v. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?
☐ Yes ☐ No

Answer the Questions on page 3 only if evidence of insurability is required in connection with an optional benefit or any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision (the option insurance).

This application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EVLICO would issue. Otherwise, the option insurance shall not take effect.

EV4-155

NO. B 92070

2

**OTHER INFORMATION—** any Person Proposed for Insurance:

14. a. Ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☑ No
b. Any plan to travel or reside outside the U.S.? (Give full details.) ☑ Yes ☐ No
c. Any other life insurance now in effect or application now pending? (State companies, plans and amounts.) ☐ Yes ☑ No
d. Smoked cigarettes within the last 12 months? ☐ Yes ☑ No

15. a. In the last year flown other than as a passenger or pilot in to do so? ☐ Yes ☑ No
If yes: Total flying time at present_____ Hours;
Last 12 mos._____ Hours. Next 12 mos._____ Est. Hours.
(Complete Aviation Supplement for pilot instruction; competitive, test, stunt or military flying; or crop dusting.)
b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☑ No
c. Ever had an application for life or health insurance declined,

that required an extra premium or was otherwise modified? (Give full details.) ☐ Yes ☑ No
d. Replaced or changed any existing insurance or annuity (or any plan to do so) assuming the insurance applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☑ No

Answer Questions 16, 17 and 18 only if Non-Medical.

16. Proposed Insured: Height____ Ft.____ In. Weight____ lbs.
Additional Insured: Height____ Ft.____ In. Weight____ lbs.

Has any Person Proposed for Insurance:

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☐ No
b. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☐ No

18. a. In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.) ☐ Yes ☐ No
b. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.) ☐ Yes ☐ No

19. **DETAILS.** For each yes answer give Question number and full details. For 17 and 18 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|---|---|---|
| 14b | MALCOLM | TRAVEL > BUS. PLEAS.   UK, FR, GREECE   3X/YR. SWITZ. |
|  |  | SWIT. MAY / X |
|  |  |  |
|  |  |  |
|  |  |  |

20. **Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:**
Have the undersigned read and do they agree to the conditions of EVLICO's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in that Agreement must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation? ☐ Yes ☐ No (If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.)

☐ Amount Paid: $ __NONE__ (Draw checks to order of EVLICO.)  ☐ Payroll deduction authorization signed.

**AGREEMENT.** Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.
(2) EVLICO's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect, if the full first premium is paid, or a payroll deduction authorization is signed, before the policy is delivered.
(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed Insured is living; (b) before any Register Date specified in this application; and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information unless it is stated in application Part 1, 1A or 2.

Dated at _New York, New York_ on _10/14_ 19_86_.

(X) ___Niels Weiner___
Signature of Proposed Insured or of Applicant if Proposed Insured is a Child, Issue Age 0-14.

_____
Signature of Proposed Additional Insured if required.

___Niels Weiner, Trustee___
Signature of Purchaser if not Proposed Insured. (If corp. show firm's name and signature of authorized officer.)

Signature of Agent ___Kimball J. Whitgen___

EV4-155

3

# LARGE AMOUNT SUPPLEMENT

To: ☐ The Equitable Life Assurance Society of the United States
☐ Equitable Variable Life Insurance Company

Instructions: Complete Section I and applicable Section(s) II (Personal Insurance) or III (Business Insurance).

PROPOSED INSURED'S
NAME  *MALCOLM  H·  WIENER*   ASU (Alpha)/App. No.  *PBA 75222*

## Section I - General Information
(Complete in all instances)

A. Insurance In Force (All Companies)                    B. Insurance Applied For (All Companies)

| Purpose | Face Amount | | Face Amount |
|---|---|---|---|
| Personal | $ ~ O ~ | $ | |
| Business | $ | $ | |
| Total In Force | $ | | |

Amount applied for elsewhere is ☐ competitive ☐ additional

C. Financial Information:

1. Income:

| | Current | Previous Full Year |
|---|---|---|
| Gross Annual Compensation: (e.g. Salary, Commissions, Bonuses, etc.) | $ 5,000,000+ | $ |
| Gross Annual Investment and Other Income: (e.g. Dividends, Interest, Net Real Estate Income, etc.) | $ 5,000,000+ | $ |
| Total Annual Cash Income before taxes | $ | $ |

2. Net Personal Worth:                    Current

Assets: $ _____
Liabilities (including mortgages): $ _____
Net Worth: $ 100,000,000.

3. Have either Proposed Insured or Applicant filed for bankruptcy within the past 5 years?  Yes ☐  No ☒

(If yes, explain) _____

## Section II - Personal Insurance
(Complete only when applying for Personal Insurance)

Purpose: (Check appropriate boxes) and answer all supplemental questions.)
☐ Family Income  ☐ Education Fund  ☐ Gift  ☐ Mortgage Protection  ☐ Personal Loan Collateral (other than mortgage protection): answer supplemental questions under Business Loan Collateral in Section III. C).

☐ Estate Settlement:

Taxable Estate $ _____
Estimated Settlement Costs (taxes and administration expenses) $ _____
Total Liquid Assets $ _____

☐ Other (specify) _____

The above statements and answers are true and complete to the best of my knowledge and belief. I agree that such statements and answers shall be made part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on this application.

Dated at *N.y.* *N.y.* on *10/14* 19 *86.*  Signature _____
(City)  (State)  Signature of Proposed Insured, or Applicant if Proposed
Insured is a Child

Witnessed by: _____
Signature of Agent

PHOTO

**Application Part 2**

☐ To The Equitable Life Assurance Society of the United States
☑ Or To Equitable Variable Life Insurance Company

(180-M205M)  Reason for submission of this form: ☑ New Policy  ☐ Policy Change  ☐ Reinstatement

1. a. Proposed Insured  First Name  Middle Initial  Last Name
   (Please Print)  **MALCOLM  H.  WIENER**
   b. Height: 6 ft 2 in.  c. Weight: 177 lbs.  ☑ Male ☐ Female
   d. Birth Date: Mo. 7  Day 3  Yr. 1935  July 3, 1935

2. a. Name and address of personal physician or medical facility last used instead: (If none, so state)  Dr. John Brown  E. 70's  NY. NY
   b. Date and reason last consulted if within the last 5 years:  6 months ago - annual
   c. What treatment was given or recommended? (If none, so state)  exam - was normal

3. Has Proposed Insured ever been treated for or ever had any known indication of: (Circle items that apply)  **Yes No**
   a. Disease or disorder of eyes, ears, nose or throat?  ☐ ☑
   b. Dizziness, fainting, convulsions; paralysis or stroke; psychiatric, psychological or emotional problem or disturbance; mental or nervous disease or disorder?  ☐ ☑
   c. Shortness of breath; blood spitting; bronchitis, asthma, emphysema, tuberculosis or other chronic respiratory disease or disorder?  ☐ ☑
   d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disease or disorder of the heart or blood vessels?  ☐ ☑
   e. Ulcer, hernia, colitis, intestinal bleeding; jaundice, hemorrhoids, or other disease or disorder of the stomach, intestines, liver or gallbladder?  ☐ ☑
   f. Sugar, albumin, blood or pus in urine; stone or other disease or disorder of kidney or bladder?  ☐ ☑
   g. Diabetes; cyst, tumor, or cancer; thyroid or glandular disorder; skin disease or disorder?  ☐ ☑
   h. Neuritis, arthritis, gout, or disease or disorder of the muscles or bones, including the back, or joints?  ☑ ☐
   i. Deformity, lameness or amputation?  ☐ ☑
   j. Allergies; anemia; other blood or lymph disease or disorder?  ☐ ☑
   k. Disorder of prostate, reproductive organs, breasts, menstruation or pregnancy?  ☐ ☑

4. Is Proposed Insured now under observation or taking treatment?  ☐ ☑

5. Has Proposed Insured:
   a. Ever used barbiturates, amphetamines, hallucinatory drugs, heroin, opiates or other narcotics, except as prescribed by a physician?  ☐ ☑
   b. Ever received counseling or treatment regarding the use of alcohol or drugs?  ☐ ☑

6. Other than as stated in answers to Questions 2-5, has Proposed Insured within the last 5 years:
   a. Consulted or been examined or treated by any physician or practitioner?  ☐ ☑
   b. Had any illness, injury, or surgery?  ☐ ☑
   c. Been a patient in or been examined or treated at a hospital, clinic, sanatorium, or other medical facility?  ☐ ☑
   d. Had electrocardiogram, X-ray, or other diagnostic test?  ☑ ☐
   e. Been advised to have any diagnostic test, hospitalization, treatment or surgery which was not completed?  ☐ ☑

7. Has Proposed Insured's weight changed by more than 10 pounds in the last 6 months?  ☐ ☑

8. Have any of the Proposed Insured's parents, brothers or sisters ever had cancer, diabetes, high blood pressure or heart disease before age 60? If yes, specify person and condition.  ☐ ☑

9. Family History:

| | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | | | 73 |
| Mother | | | |
| Brothers and Sisters | | | |

**DETAILS FOR YES ANSWERS. Include:**
i. Question Number.  iv. Dates and Duration.
ii. Diagnosis and  v. Names and Addresses of all
   Treatment.  attending physicians and medical
iii. Results.  facilities.

(6a) General exam - annually x 20?
exam have been Normal
including  CXR, EKG, Blood,
? Urine  tests ...
Dr. Brown

(6d) Treadmill stress EKG
was normal ~ 6 months ago
Dr Brown has records

(3h) Dr. Nagler - NY Hospital
Sports related - L4-5 ache
resolved with exercise
~ 4 yrs ago - No recurrence
CAT scan of lower spine was normal

(6a) Evaluation of chest ache
one ~ 1 month ago  and about
1 yr ago - EKG's were normal
it was felt this was minor
indigestion - Dr. Brown
No medications

The above statements and answers are true and complete to the best of my knowledge and belief and I agree that such statements and answers shall be part of the application for insurance or request for policy change or reinstatement, as the case may be. The Insurer may rely on them in acting on the application or making the policy change or reinstatement.

Dated at  NY, NY  (city)  (state)  on  10-14 1986   _[signature]_ Malcolm Wiener
Signature of Proposed Insured

Witness: _____

180-M205M  (Ed. 10-84)

**TO THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
OR TO EQUITABLE VARIABLE LIFE INSURANCE COMPANY**

POL. NO. 36224 259     File ☐ 2 ☐ 7

Proposed Insured Malcolm Wiener    ASU (Alpha) PPA    App. No. 25222

Date Sent 10-22-92    Rep. no    CRA (Name) Jim Costello

Special Instructions N.I.Crag.Insp: Please secure Insp o/a
amt 20,000,000.

    ☐ Direct (Applicant Interview)    ☐ Key

This report will assist in considering an insurance application. The Proposed Insured has been advised that an investigation may be made. A copy of the Agent's Report is attached. **GENERAL INSTRUCTIONS** - Answer all pertinent questions, and use reverse side for narrative. Comment on all significant aspects. Make no reference to any person's race, creed, color, national origin or lifestyle. Do not make comments which are not related to the stated purpose of this report. Public record information should be limited to the past 7 years. When reporting criminal records, list convictions or pending charges, but not arrests. **DIRECT (Applicant Interview) INSTRUCTIONS** - Attempt to complete report by direct (telephone) interview. If applicant not available, use other qualified sources to avoid delay. **KEY INSTRUCTIONS** - Contact qualified sources in your area. All statements should be confirmed to insure accuracy.

1. **DIRECT and KEY:**        NO    YES

  A. Describe exact duties of all occupations - full and part time _MillRiver Group_
Chairman / CEO - Active venture funding

  B. Any contemplated change in occupation?

  C. Plan to work or travel in foreign countries? 2 This annually. London/Paris - Consults

  D. Any weight problem (over or under), including marked loss?

  E. Any history of illness, operation, or injury?

  F. Any operations contemplated?

  G. Any medical treatment or consultations within 5 years?

  H. Any past or present alcohol problem?

  I. Any past or present drug habit? (Marijuana, cocaine, barbiturates, amphetamines, hallucinogens, heroin, opiates or other narcotics?(If questions H or I answered "Yes", it is important to comment fully and in detail regarding all aspects.)

  J. Any cigarettes smoked in last 12 months?

  K. Within the last year, engaged in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting?

  L. Within the last year, any aircraft flights other than as a passenger?(If "Yes", state in narrative as to whether pilot, student pilot or crew member, frequency, etc.)

  M. Within last 2 years, any traffic violations or accidents?

  N. This insurance to replace or change any existing insurance or annuity?

2. **KEY Only:**

  A. Estimate net worth?   ☐ Under $100,000   ☐ $100,000 - $500,000   ☑ Over $500,000 (Check One)

  B. Annual income from occupation(s). $ 20 million

  C. Annual income from other sources (explain in narrative section).

  D. Anything regarding activities or environment that is potentially hazardous or unlawful?

3. **Sources of Information:**

  A. Applicant Interviewed?

  B. Indicate on reverse side all other sources of information, their qualifications for providing information, and length of time known.

Date ___    Sign here ___    Rep. ___    CRA. ___   PHOTO

(COMPLETE NARRATIVE PORTION ON REVERSE SIDE)

# EXHIBIT B

| | | |
|---|---|---|
| *INSURED PERSON* | MALCOLM H WIENER |  |
| *POLICY OWNER* | MALCOLM H WIENER | |
| *FACE AMOUNT OF INSURANCE* | $7,200,000 | **LIFE** |
| *DEATH BENEFIT* | OPTION B (SEE PAGE 6) | **INSURANCE** |
| *POLICY NUMBER* | 37 205 147 | **POLICY** |

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*

Pauline Sherman, Senior Vice President, Secretary and Associate General Counsel

Christopher M. Condron, Chairman, President and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

# Contents

*Policy Information*    3

*Table of Guaranteed Maximum Insurance Costs*    4

*Who Benefits from this Policy?*    5

*The Insurance Benefits We Pay*    5

*The Premiums You Pay*    7

*Your Policy Account and How it Works*    8

*Our Annual Report to You*    10

*The Cash Surrender Value of this Policy*    10

*How a Loan Can be Made*    11

*How Benefits are Paid*    12

*Other Important Information*    13

*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

## In this policy:

*"We"*, *"our"* and *"us"* mean AXA Equitable Life Insurance Company.

*"You"* and *"your"* mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 47 of 108

POLICY INFORMATION

INSURED PERSON    MALCOLM H WIENER

POLICY OWNER      MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE      $7,200,000

DEATH BENEFIT     OPTION B (SEE PAGE 6)

POLICY NUMBER     37205147

BENEFICIARY       CAROLYN SEELY WIENER

REGISTER DATE     NOV 01, 1986                    ISSUE AGE   51

DATE OF ISSUE     APR 24, 1987                         SEX   MALE

                                                      NON-SMOKER

PARTIAL
CASH VALUE
WITHDRAWAL    MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE     CONNECTICUT

AN INITIAL PREMIUM PAYMENT OF $96,782.50 IS DUE ON OR BEFORE DELIVERY
OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $96,782.50 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL
BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE
POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE,
WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH
BIRTHDAY.  THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE
IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM
PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT
OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY
COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND
ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL
NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

-----------------TABLE OF EXPENSE CHARGES----------------

INITIAL ADMINISTRATIVE CHARGE:

    $250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:

    2% OF EACH PREMIUM PAYMENT.  THIS AMOUNT IS SUBTRACTED FROM EACH
    PREMIUM PAYMENT.  WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
    CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
    RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

    $4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT.  WE RESERVE THE RIGHT TO
    CHANGE THIS CHARGE, BUT IT WILL NEVER BE MORE THAN $8 A MONTH.  CHANGES
    WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

    $25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
    SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

    $1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
    FROM THE POLICY ACCOUNT.

PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

----------------TABLE OF SURRENDER CHARGES----------------

| POLICY YEAR | CHARGE |
|------|------|
| 1 | $76,950 |
| 2 | 76,950 |
| 3 | 76,950 |
| 4 | 76,950 |
| 5 | 76,950 |
| 6 | 76,950 |
| 7 | 61,560 |
| 8 | 46,170 |
| 9 | 30,780 |
| 10 | 15,390 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS. IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT. SEE PAGE 11.

----------------ENDORSEMENTS----------------

1. AMENDMENT TO SUICIDE EXCLUSION:  THE SUICIDE EXCLUSION IN THIS POLICY, OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2. WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES.  ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3. THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4. THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 50 of 108

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 4.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION:  THE THIRD SENTENCE IS DELETED.

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION:  THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

      A. ITEM 5 ON PAGE 7 OF THE POLICY;

      B. THE THIRD PARAGRAPH ON PAGE 8;

      C. THE FIRST PARAGRAPH ON PAGE 12; AND

      D. THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

85-200-3                 PAGE 3 - CONTINUED

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205147

---------TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS---------

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | $ 0.61000 | 86 | $15.02167 |
| 52 | 0.66583 | 87 | 16.35667 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.28750 |
| 57 | 1.04667 | 92 | 24.06333 |
| 58 | 1.14000 | 93 | 26.12000 |
| 59 | 1.23917 | 94 | 28.81333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27583 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33917 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

85-200-4

PAGE 4

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 12.

**Assignment.** You can assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

° the death benefit described below;

° plus any other benefits then due from riders to this policy;

° minus any loan (and loan interest) on the policy;

° minus any overdue monthly deductions if the insured person dies during the grace period.

*THE INSURANCE*
*BENEFITS*
*WE PAY (continued)*

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

**Death Benefit.** The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF*
*APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall decrease by a ratable portion for each full year

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3. You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4. Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

## The Premiums You Pay

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

35-100-7

*THE PREMIUMS*
*YOU PAY (continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

Limits. Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

Grace Period. If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

Reinstatement. If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

*Your Policy*
*Account and*
*How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.

EXHIBIT B

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

**How We Add Interest.** We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than 4½%.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

**Monthly Deductions.** At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 8. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

- The monthly cost of insurance for the insured person that we determine.

- The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; *plus* any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.

**YOUR POLICY ACCOUNT AND HOW IT WORKS** *(continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

**Other Deductions.** We also make the following other deductions from the Policy Account as they occur:

- If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.

- We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.

- We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

## Our Annual Report to You

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.

## The Cash Surrender Value of this Policy

**Net Cash Surrender Value.** You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

**Cash Surrender Value.** The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

**Surrender Charges.** If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 59 of 108

EXHIBIT B

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.

2. INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at $3\frac{1}{2}$% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

## Other Important Information

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

*OTHER IMPORTANT*
*INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Policy Changes — Applicable Tax Law. For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

Changes in Policy Cost Factors. Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

When the Policy is Incontestable. We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

What if Age or Sex has Been Misstated? If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 62 of 108

How the Suicide Exclusion Affects Benefits. If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

How We Measure Policy Periods and Anniversaries. We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

How and When We Defer Payment. We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

The Basis We Use for Computation. We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at $4\frac{1}{2}$%.

Policy Illustrations. Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

Policy Changes. You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

## Table of Guaranteed Payments
### MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM

| Option 2 | | | | Option 3 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **FIXED PERIOD INSTALLMENTS** | | | | **MONTHLY LIFE INCOME** | | | | | |
| | | | | | 10 Years Certain | | 20 Years Certain | | Refund Certain |
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | Male | Female | Male | Female | Male | Female |
| 1 | $84.70 | $1,000.00 | 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.53 | 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

35-100-16

# Limitation on Amount of Insurance Rider

*(This limitation is required by the laws of New York State)*

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of:<br>a) $5,000; or<br>b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 6 months | The greater of:<br>a) $10,000; or<br>b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of

the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at $4\frac{1}{2}\%$ per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President, Secretary and Associate General Counsel

Christopher M. Condron, Chairman and Chief Executive Officer

5-406

# Exchange Privilege Rider

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.*

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, and with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

**THE NEW POLICY.** Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in effect in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

### AXA Equitable Life Insurance Company

Karen Field Hazin, Vice President, Secretary and Associate General Counsel

Christopher M. Condron, Chairman and Chief Executive Officer

185-405NY      Exchange Privilege

M. Wilson

☐ The Equitable Life Assurance Society of the United States
☒ Equitable Variable Life Insurance Company

☺ Application To

REQUEST FOR ☒ CHANGE (as specified in Section II) OF POLICY OR CONTRACT NO. 37205147
☐ REINSTATEMENT ☐ DELIVERY OF POLICY OR CONTRACT NO. _____

**SECTION I**

**Requested Change** (see below for adding RTI and CTI): Reduce the Face Amount from $9,000,000 to $7,200,000. Effective date of change is December 1, 1987.

**ADD** ☐ Renewable Term Rider (RTI) on Insured      Amt. $ _____
☐ Renewable Term Rider (RTI) on Additional Insured      Amt. $ _____
☐ Children's Term Rider (CTI)      Amt. $ _____ Units _____

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" (in any designation include Full Name and Relationship to Insured).

*Complete below* ***and*** *answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.*

**PERSON(S) TO BE COVERED UNDER RTI ON ADDITIONAL INSURED AND/OR CTI:**

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI? | First Name | Middle Initial | Last Name | Sex | Date of Birth Mo. | Day | Yr. |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Complete a.-e. only as to Additional Insured for RTI.*

a. List all current occupations—Give Title(s) and Duties. _____

b. Age Nearest Birthday _____
c. Place of Birth: State of _____
d. Residence: State of _____
e. Owner's Relationship to Addl. Insured: _____

The signers of this request agree that:

1. If evidence of insurability is required, the statements and answers to the questions
   ☐ in Sections I and II of this form
   ☐ in Sections I and II of this form and on the medical history form dated _____ are reaffirmed and offered as part of this request.

   Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request (a) until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and (b) unless, if evidence of insurability is required, the

Dated at _N.Y._    _N.Y._   on _11-30_ 19_87_
        City        State

statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to: (1) Any assignment of the original policy or contract in force and on the rider of the Insurer at its Home Office; and (2) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

*See reverse side for Signature Requirements.*

x MHW   *[signature]* Wilson   TRUSTEE

---

Will any other existing insurance or annuity be replaced or changed (or has it been) assuming that any new insurance or annuity applied for will be issued?   ☐ Yes ☐ No

Signature
of Agent    N/A
Also complete Production Credits information on the back.

*Signator(s)*

180-333C

Cat. No. 45837

Case 3:18-cv-00106-RJC-DSC   Document 1-2   Filed 03/08/18   Page 67 of 108

## Application (Continued)

### SECTION II

*For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.*
*For persons already covered by the policy or contract, such questions need be answered only as to occurrences that took place after the date of application for the policy or contract.*

**1. Has any Person To Be Covered:**

a. Within the last two years been convicted of two or more moving violations or driving under the influence of alcohol or drugs, or had a driver's license suspended or revoked? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)  ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? (Give full details.)  ☐ Yes ☐ No

c. Any other life insurance now in effect or application now pending? (State companies and amounts.)  ☐ Yes ☐ No

**2. Has any Person To Be Covered:**

a. Within the last year flown other than as a passenger or plan to do so?  ☐ Yes ☐ No
If yes: Total flying time at present _____ Hours;
Last 12 mos. _____ Hours; Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for competitive, test, stunt or military flying, or crop dusting.)

b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☐ No

c. Ever had an application for life or health insurance declined, that required an extra premium or was otherwise modified? (Give full details.)  ☐ Yes ☐ No

d. Replaced or changed any other existing insurance or annuity (or any plan to do so) assuming that any new insurance or annuity applied for will be issued? (State companies, plans and amounts.)  ☐ Yes ☐ No

**3.** Insured: Height _____ Ft. _____ In. Weight _____ lbs.
Additional Insured: Height _____ Ft. _____ In. Weight _____ lbs.

**4. Has any Person To Be Covered:**

a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.)  ☐ Yes ☐ No

b. Within the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)  ☐ Yes ☐ No

**5. Has any Person To Be Covered:**

a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No

b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

**6. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. For 4 and 5 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.

| No. | Name of Person Affected | Details |
|-----|-------------------------|---------|
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |

---

**TO BE COMPLETED BY AGENT.**
For Production Credits (Service Agent first)

| (Print) Agent's Name(s) | Initial of Last Name | Number | % Ins. |
|-------------------------|----------------------|--------|--------|
|                         |                      |        |        |
|                         |                      |        |        |
|                         |                      |        |        |

Agency & Code No. _____

District & Code No. _____

Date _____ 19___

Service Agent's Signature _____

---

### SIGNATURE REQUIREMENTS

*Change.* Owner (and assignee if policy is assigned) must sign. If evidence of insurability is required, each person covered by the change must also sign.

*Reinstatement.* Each person covered by the policy must sign. If the Insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.

*Delivery.* Same signature requirements as on original application.

**NOTE:** *If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.*

180-333C

**THE EQUITABLE** · ◈ **EVLICO**®

### REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO
○ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY

EQUITABLE AND EVLICO REQUESTS FOR CHANGE OF BENEFICIARY AND/OR OWNER MUST BE SUBMITTED ON SEPARATE FORMS.

**DO NOT RETURN THE POLICY WITH THIS REQUEST**
BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.

INSURED'S/ANNUITANT'S NAME  MALCOLM H. WIENER   POLICY NUMBER(S)  37 205 147

CHANGE OF BENEFICIARY:   ☒YES   ☐NO (No change from present Beneficiary if neither box is checked.)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS
OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

CAROLYN SEELY WIENER, WIFE    SOC. SEC.# 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
720 PARK AVENUE
NEW YORK, N.Y. 10081

CHANGE OF OWNER:   ☐YES   ☒NO (No change from present Owner if neither box is checked.)
FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT

---

**THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE**

Owner's Address: If applicable, check one and complete.
☐ Address of NEW OWNER is:  ☒ Change address of SAME OWNER to:

720 PARK AVENUE
NEW YORK, N.Y.
10021

SIGNATURE OF PRESENT OWNER(S)  Malcolm H Wiener
Date:  11  9  93

---

**SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY**
Federal Law requires that you provide the following Data (see reverse side for explanation):
PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.
Social Security Number ☐☐☐☐☐☐☐☐☐  OR  Employer I.D. Number ☐☐☐☐☐☐☐☐☐

PART TWO — Check the box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(c) of the Internal Revenue Code. ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete.

Signature of New Owner   Date: ___ / ___ / ___

---

**FOR EQUITABLE/EVLICO USE ONLY**
The Equitable/EVLICO certifies that this change has been recorded.
Date: 11-18  19 93    By: Beverly Davis

---

**IMPORTANT:** Please use typewriter or ball point pen. Press firmly since entries must be legible on both pages. Avoid erasures or alterations. When this page and its duplicate are completed, send both completed copies to us. When we have recorded the change, we will return a copy of the form signed by us as evidence of the change.

ITEM #323-2610C
CATALOG #123754

Part 1 of an Application for Fixed Benefit Life Insurance To ☐ JUV.
Equitable Variable Life Insurance Company (EVLICO) ☐ OPAI

**Proposed Insured**  a. Print name to appear on policy.

MALCOLM M. WIENER
First / Middle Initial / Last

b. ☒ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title_____
c. List all current occupations—Give Title(s) and Duties
CHief EXECUTIVE OFFICER

d. Date of Birth: Mo. 07 Dte. 03 Yr. 19 35
e. Age Nearest Birthday_____ 51
f. Place of Birth: State of_____ CHINA
g. Residence: State of_____ CT.
h. ☒ Male ☐ Female

**2. Plan**

☐ Indeterminate Premium—Yearly Renewable Term for five years.    $_____

☐ Modified Yearly Renewable Term for Amounts and Years selected below.

| Year | Face Amount | Year | Face Amount | Year | Face Amount |
|---|---|---|---|---|---|
| 1 | $_____ | 5 | $_____ | 8 | $_____ |
| 2 | _____ | 6 | _____ | 9 | _____ |
| 3 | _____ | 7 | _____ | 10 | _____ |
| 4 | _____ | | | | |

☐ Single Premium Endowment    $_____
☐ Other_____    $_____
☒ Flexible Premium Adjustable Life    $ 9,000,000
Is the Death Benefit to include the Policy Account? ☒ Yes (Option B)
☐ No (Option A)

**Amount of Insurance**

**7. Premium Payment Plan**

Check mode, and if Flexible Premium Policy complete the following:
Initial Prem. Payment$ 96,382. 60
Planned Periodic Prems. $ 96,382.60
☐ Do not send premium reminder notices
☐ Annual ☒ Semi-Annual ☐ Quarterly
☐ Monthly ☐ System-Matic (Attach S-M Form)
☐ Single
☐ Military Allotment: Branch_____
    Register Date_____
☐ Salary Allotment: Register Date_____
    Unit Name_____
    Unit/Sub-Unit No. if established:
    |_|_|_|_|_|_|_|_|_|_|_|_|_|
    Divisible by ☐2 ☐4 Payroll No._____
☐ Hold Prem.$_____

**3. Optional Benefits**

☐ Accidental Death Benefit $_____
☐ Renewable Term on Additional Insured $_____
☐ Children's Term $_____ Units_____
☐ Disability Premium Waiver ☐Disability Benefit-Flexible Prem. Pol.
☐ Other_____ ☐Waive Cost of Insurance
    ☐Credit $_____ per_____

**8. Note:**

Premiums for the Indeterminate Premium policy may change annually, subject to a guaranteed maximum annual renewal premium shown in the policy.

**4. Beneficiary** for Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured.

SAME AS OWNER

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.

The Beneficiary under any Term Insurance Rider on an Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions.

**9. Special Instructions**

a. ☐ Preliminary Term (PT) period of_____ days
    ending_____ PT Premium $_____
    Mo. Day Yr.
b. ☐ Date to save insurance age_____
c. Other
"ISSUE W/ENDORSEMENT C. 56. -189"
REGISTER DATE: 4-1-86.

**5. Owner**  Owner's Soc. Sec. or Tax No. |_|_|_|_|_|_|_|_|_|
The Owner is ☐ Proposed Insured    ☐ Applicant for Child (Sec 10.c.)
☒ Other (Give Full Name) CENTERWEST BROTHERS SECOND SECURITY
INTERNATIONAL UNION UNION READJUSTMENT DEPT_____
"If "Other" complete the following:
☐ Mr. ☐ Miss ☐Mrs. ☐ Ms. Other Title_____
Relationship to Insured_____
Specify a successor Owner if desired

If the Proposed Insured or the Applicant for a Child is not the Owner and if all persons designated die before the Insured, the Owner will be the estate of the last of such persons to die except where the Insured is a Child (see Note in 10.c.)

**6. Mailing Address** ☒ Business (Give Full Name) ☐ Residence.

|MILBURN| CORP.| | | | | | | | | | | | | | | |
No. / Street / Apt.

|WALPOR ROUTE| 01 1, |LTD| | | | | | | | | |
City

|4790 BISCAYNE |BLVD. | MIAMI, |FLA | 33137|
State / Zip

EV4-155    Cat. No. 110150    1

## 10. Complete if Proposed Insured Person is a Child (Issue Ages 0-14).

a. Will there be more life insurance in effect on the Child than on any older child in the family? ☐ Yes ☐ No
If yes, explain: _____

*to reduce the chance of a minor Child becoming the Owner. If all persons designated die before the Child, the Owner will be the Child.*

b. **Applicant**-Complete if other than the Child.
  i. _____
       First Name   Middle Initial   Last Name
  ii. ☐Mr. ☐Miss ☐Mrs. ☐Ms. ☐Other Title___
  iii. Date of Birth ____ 19__
                   Month   Day   Year
  iv. ☐ Male   ☐ Female
  v. Relationship to Child: _____
  vi. Total Life Insurance now in effect: $ _____

c. **Owner.** If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designation include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).
NOTE: *Consider designating an adult secondary Owner*

d. **Optional Benefit on Applicant.**
  ☐ Supplemental Protective Benefit. Give Applicant's:
  i. Age Nearest        ii. Place of
     Birthday_____      Birth _____
                                      State
  iii. Height____Ft.____In. Weight____lbs.
  iv. Occupation-Give Title(s) and Duties: _____

*Also answer questions on page 3 as to Applicant.*

e. *Limitations On Child's ADB and DPW Benefits.*
If the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

## 11. Complete for Children's Term Rider.

Give Names of Children below **and** answer the Questions on page 3 as to each Child.

**CHILDREN PROPOSED FOR INSURANCE:**
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| First Name | Middle Initial | Last Name | Sex | Mo. | Day | Yr. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

*(Date of Birth column headers: Mo. | Day | Yr.)*

## 12. Complete for Renewable Term Rider on Additional Insured.

Complete below **and** answer the Questions on page 3 as to the Additional Insured.

**PROPOSED ADDITIONAL INSURED PERSON**
a. Print name as it is to appear on the Policy.
_____
   First   Middle Initial   Last
b. List all current occupations--Give Title(s) and Duties.
_____

c. Date of Birth: Mo._____Day____Yr. 19__
d. Age Nearest Birthday _____
e. Place of Birth: State of _____
f. Residence: State of _____
g. ☐ Male        ☐ Female
h. Owner's Relationship to Additional Insured Person:___

## 13. Complete if Using Existing Option to Purchase Insurance.

i. Existing Individual Policy No. _____
ii. Option Date _____ iii. Option Amount: $ _____
iv. ☐ Regular Option or
    ☐ Option on Birth or Adoption of Child
         Child's Name _____
         Date of Birth or Adoption _____
v. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?
                                      ☐ Yes ☐ No

This application is made under a provision in the policy indicated above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EVLICO would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 *only if evidence of insurability is required in connection with an optional benefit or any excess of the insurance amount applied for over the insurance amount permitted by the Option Provision (the option insurance).*

EV4-155                    NO. B  92045                    2

**OTHER INFORMATION—Has any Person Proposed for Insurance:**

14. a. Ever had a driver's license suspended or revoked or, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)  ☐ Yes ☑ No

b. Any plan to travel or reside outside the U.S.?  ☑ Yes ☐ No
(Give full details.)

c. Any other life insurance now in effect or application now pending? (State companies and amounts.)  ☐ Yes ☑ No

d. Smoked cigarettes within the last 12 months?  ☐ Yes ☑ No
If yes: Total number to do so?

15. a. In the last year flown other than as a passenger or plan to do so?  ☐ Yes ☑ No
If yes: Total flying time at present _____ Hours;
Last 12 mos. _____ Hours; Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for pilot instruction; complete, test, stunt or military flying; or crop dusting.)

b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☑ No

c. Ever had an application for life or health insurance declined.  ☐ Yes ☑ No

that required an extra premium or was otherwise modified? (Give full details.)  ☐ Yes ☑ No

d. Replaced or changed any existing insurance or annuity for any plan to do so assuming the insurance applied for will be issued? (State companies, plans and amounts.)  ☐ Yes ☑ No

Answer Questions 16, 17 and 18 only if Non-Medical.

16. Proposed Insured: Height____Ft____In. Weight____lbs.
Additional Insured: Height____Ft____In. Weight____lbs.

**Has any Person Proposed for Insurance:**

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.)  ☐ Yes ☐ No

b. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)  ☐ Yes ☐ No

18. a. In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No

b. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

19. **DETAILS.** For each yes answer give Question number and full details. *For 17 and 18 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.*

| No. | Name of Person Affected | Details |
|---|---|---|
| 14b | MALCOLM | TRAVEL } JUL/PLEAS. U.K./FR./GREECE 5X/YR SUK HAZ/X |
| | | |
| | | |
| | | |
| | | |
| | | |

20. **Complete if First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:**
Have the undersigned read and do they agree to the conditions of EVLICO's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in that Agreement must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation?  ☐ Yes ☐ No *(If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.)*

☐ Amount Paid: $_____ . (Draw checks to order of EVLICO.)      ☐ Payroll deduction authorization signed.

**AGREEMENT.** Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.

(2) EVLICO's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect, if the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed Insured is living; (b) before any Register Date specified in this application; and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information unless it is stated in application Part 1, IA or 2.

Dated at _New York, New York_ on 5-14 19_87_
            City / State

(X) _Malcolm H. Wiener_
Signature of Proposed Insured or Applicant if Proposed Insured is a Child. Issue Age 0-14.

_____
Signature of Proposed Additional Insured if required.

_Malcolm H. Wiener, TRUSTEE_
Signature of Purchaser if not Proposed Insured. (If corp. show firm's name and signature of authorized officer.)

Signature of Agent
_Campbell J. Cooper_

EV4-155                                                                 3

# EXHIBIT C

EXHIBIT C

INSURED PERSON   MALCOLM H WIENER

POLICY OWNER   MALCOLM H WIENER

FACE AMOUNT
OF INSURANCE   $1,600,000

DEATH BENEFIT   OPTION B (SEE PAGE 6)

POLICY NUMBER   37 205 155

**AXA EQUITABLE**

# LIFE INSURANCE POLICY

**We agree** to pay the insurance benefits and to provide the other rights and benefits of this policy in accordance with its provisions.

### Flexible Premium Adjustable Life Plan

This is a flexible premium adjustable life policy. You can:

- increase or decrease the face amount of insurance;
- change the amount and frequency of the premiums you pay;
- change the death benefit option.

This is a non-participating policy.

All of these rights and benefits are subject to the terms and conditions of this policy. All requests for policy changes are subject to our approval and may require evidence of insurability.

*Pauline Sherman*

Pauline Sherman, Senior Vice President,
Secretary and Associate General Counsel

*Condon*

Christopher M. Condon, Chairman,
President and Chief Executive Officer

**You Have Ten Days to Examine this Policy.** If you are not satisfied with this policy for any reason, you may cancel it by returning it to us within 10 days after you receive it. If you do, we will refund the premium that was paid.

No. 85-200

EXHIBIT C

# *Contents*

*Policy Information*    3

*Table of Guaranteed Maximum Insurance Costs*    4

*Who Benefits from this Policy?*    5

*The Insurance Benefits We Pay*    5

*The Premiums You Pay*    7

*Your Policy Account and How it Works*    8

*Our Annual Report to You*    10

*The Cash Surrender Value of this Policy*    10

*How a Loan Can be Made*    11

*How Benefits are Paid*    12

*Other Important Information*    13

*A copy of the application for this policy and any additional benefit riders are at the back of the policy.*

## *In this policy:*

*"We", "our"* and *"us"* mean AXA Equitable Life Insurance Company.

*"You"* and *"your"* mean the owner of the policy at the time an owner's right is exercised.

References to amounts and values include all adjustments provided by this policy.

No. 85-200                                   Page 2

EXHIBIT C

EXHIBIT C

POLICY INFORMATION

INSURED PERSON    MALCOLM H WIENER

POLICY OWNER    MALCOLM H WIENER
FACE AMOUNT
OF INSURANCE    $1,600,000

DEATH BENEFIT    OPTION B (SEE PAGE 6)

POLICY NUMBER    37205155

BENEFICIARY    CAROLYN SEELY WIENER

REGISTER DATE    NOV 01, 1986                ISSUE AGE   51

DATE OF ISSUE    APR 24, 1987                      SEX   MALE

                                          NON-SMOKER

PARTIAL
CASH VALUE
WITHDRAWAL    MINIMUM WITHDRAWAL IS $500.

STATE OF
RESIDENCE    CONNECTICUT

AN INITIAL PREMIUM PAYMENT OF $21,776.00 IS DUE ON OR BEFORE DELIVERY
OF THE POLICY.

THE PLANNED PERIODIC PREMIUM OF $21,776.00 IS PAYABLE SEMIANNUALLY.

PREMIUM PAYMENTS ARE FOR THE INSURANCE BENEFITS AND ANY ADDITIONAL
BENEFIT RIDERS LISTED BELOW.

THE PREMIUM PAYMENTS SHOWN ABOVE MAY NOT BE SUFFICIENT TO CONTINUE THE
POLICY AND LIFE INSURANCE COVERAGE IN FORCE TO THE FINAL POLICY DATE,
WHICH IS THE POLICY ANNIVERSARY NEAREST THE INSURED PERSON'S 95TH
BIRTHDAY.  THE PERIOD FOR WHICH THE POLICY AND COVERAGE WILL CONTINUE
IN FORCE WILL DEPEND ON:  (1) THE AMOUNT, TIMING AND FREQUENCY OF PREMIUM
PAYMENTS; (2) CHANGES IN THE FACE AMOUNT OF INSURANCE AND THE DEATH BENEFIT
OPTIONS; (3) CHANGES IN THE INTEREST RATES CREDITED, AND IN THE MONTHLY
COST OF INSURANCE DEDUCTIONS FROM THE POLICY ACCOUNT FOR THIS POLICY AND
ANY BENEFITS PROVIDED BY RIDERS TO THIS POLICY; AND (4) LOAN AND PARTIAL
NET CASH SURRENDER VALUE WITHDRAWAL ACTIVITY.

Case 3:18-cv-00106-RJC-DSC  Document 1-2  Filed 03/08/18  Page 76 of 108

EXHIBIT C

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

--------------TABLE OF EXPENSE CHARGES----------------

INITIAL ADMINISTRATIVE CHARGE:

$250 SUBTRACTED FROM THE INITIAL PREMIUM PAYMENT.

CHARGE FOR APPLICABLE TAXES:

2% OF EACH PREMIUM PAYMENT.  THIS AMOUNT IS SUBTRACTED FROM EACH
PREMIUM PAYMENT.  WE RESERVE THE RIGHT TO CHANGE THIS PERCENTAGE TO
CONFORM TO CHANGES IN LEGISLATION OR IF THE INSURED PERSON CHANGES
RESIDENCE.

MONTHLY ADMINISTRATIVE CHARGE:

$4 DEDUCTED MONTHLY FROM THE POLICY ACCOUNT.  WE RESERVE THE RIGHT TO
CHANGE THIS CHARGE, BUT IT WILL NEVER BE MORE THAN $8 A MONTH.  CHANGES
WILL BE AS DESCRIBED IN "CHANGES IN POLICY COST FACTORS" ON PAGE 14.

FOR PARTIAL WITHDRAWAL OF NET CASH SURRENDER VALUE:

$25 DEDUCTED FROM THE POLICY ACCOUNT WHENEVER THERE IS A PARTIAL NET CASH
SURRENDER VALUE WITHDRAWAL.

FOR AN INCREASE YOU ASK FOR IN THE FACE AMOUNT OF INSURANCE:

$1.50 FOR EACH $1,000 OF INCREASE (BUT NOT MORE THAN $250) IS DEDUCTED
FROM THE POLICY ACCOUNT.

85-200-3

PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

------------TABLE OF SURRENDER CHARGES---------------

| POLICY YEAR | CHARGE |
|:---:|:---:|
| 1 | $17,100 |
| 2 | 17,100 |
| 3 | 17,100 |
| 4 | 17,100 |
| 5 | 17,100 |
| 6 | 17,100 |
| 7 | 13,680 |
| 8 | 10,260 |
| 9 | 6,840 |
| 10 | 3,420 |

THE APPLICABLE SURRENDER CHARGE IS SUBTRACTED FROM THE POLICY ACCOUNT IF THE POLICY IS GIVEN UP FOR ITS NET CASH SURRENDER VALUE IN THE FIRST 10 POLICY YEARS. IF THE FACE AMOUNT OF INSURANCE IS REDUCED IN THE FIRST 10 POLICY YEARS, A PRO RATA SHARE OF THE SURRENDER CHARGE FOR THAT POLICY YEAR MAY BE SUBTRACTED FROM THE POLICY ACCOUNT. SEE PAGE 11.



----------------ENDORSEMENTS------------------

1. AMENDMENT TO SUICIDE EXCLUSION: THE SUICIDE EXCLUSION IN THIS POLICY OTHER THAN IN ANY ACCIDENTAL DEATH BENEFIT RIDER, IS AMENDED BY DELETING THE PHRASE "WHILE SANE OR INSANE."

2. WE WILL REVIEW THE POLICY ACCOUNT INTEREST RATES EACH POLICY YEAR AND WILL REVIEW THE COST OF INSURANCE RATES AT LEAST EVERY FIVE YEARS AND AT THE TIME ANY CHANGE IS MADE FOR NEW ISSUES. ANY ADJUSTMENT IN THESE RATES WILL BE BY CLASS AND BASED UPON CHANGES IN FUTURE EXPECTATIONS FOR SUCH ELEMENTS AS INVESTMENT EARNINGS, MORTALITY, PERSISTENCY, EXPENSES AND TAXES, AND WILL BE DETERMINED IN ACCORDANCE WITH PROCEDURES AND STANDARDS ON FILE WITH THE NEW YORK INSURANCE DEPARTMENT.

3. THE INTEREST WE CREDIT TO THE POLICY ACCOUNT WITH RESPECT TO ANY LOANED AMOUNTS WILL BE AT AN ANNUAL RATE NOT LESS THAN THE RATE WE CHARGE FOR LOAN INTEREST REDUCED BY 2%; IN NO EVENT WILL WE CREDIT LESS THAN 4.5% A YEAR.

4. THE MONTHLY ADMINISTRATIVE CHARGE AS DESCRIBED ON PAGE 3 CONTINUED AND PAGE 10 OF YOUR POLICY WILL NOT APPLY.

85-200-3

PAGE 3 - CONTINUED
(CONTINUED ON NEXT PAGE)

EXHIBIT C

POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

5. THE FIRST $1,000 OF POLICY ACCOUNT WILL BE CREDITED WITH 4.5% EFFECTIVE ANNUAL INTEREST.

6. AMENDMENT TO "POLICY LOANS" PROVISION:  THE THIRD SENTENCE IS DELETED

7. AMENDMENT TO "THE BASIS WE USE FOR COMPUTATION" PROVISION:  THE LAST SENTENCE OF THE FIRST PARAGRAPH IS DELETED.

8. THE PHRASE "AS INTERPRETED BY US" IS DELETED FROM

     A. ITEM 5 ON PAGE 7 OF THE POLICY;

     B. THE THIRD PARAGRAPH ON PAGE 8;

     C. THE FIRST PARAGRAPH ON PAGE 12; AND

     D. THE THIRD PARAGRAPH ON PAGE 14.

9. THE PHRASE "WE DEEM IT" IS ALSO DELETED FROM THE THIRD PARAGRAPH ON PAGE 14.

S.85-98

EXHIBIT C



POLICY INFORMATION CONTINUED - POLICY NUMBER 37205155

—————————TABLE OF GUARANTEED MAXIMUM INSURANCE COSTS—————————

GUARANTEED MAXIMUM MONTHLY RATES PER $1,000
OF NET AMOUNT AT RISK (SEE PAGE 9)

| INSURED PERSON'S ATTAINED AGE | MONTHLY RATE | INSURED PERSON'S ATTAINED AGE | MONTHLY RATE |
|---|---|---|---|
| 51 | $ 0.61000 | 86 | $15.02167 |
| 52 | 0.66583 | 87 | 16.35667 |
| 53 | 0.72833 | 88 | 17.73833 |
| 54 | 0.80000 | 89 | 19.17167 |
| 55 | 0.87667 | 90 | 20.67750 |
| 56 | 0.96000 | 91 | 22.28750 |
| 57 | 1.04667 | 92 | 24.06333 |
| 58 | 1.14000 | 93 | 26.12000 |
| 59 | 1.23917 | 94 | 28.81333 |
| 60 | 1.35000 | | |
| 61 | 1.47333 | | |
| 62 | 1.61333 | | |
| 63 | 1.77250 | | |
| 64 | 1.94917 | | |
| 65 | 2.14333 | | |
| 66 | 2.35083 | | |
| 67 | 2.57250 | | |
| 68 | 2.80917 | | |
| 69 | 3.06500 | | |
| 70 | 3.35333 | | |
| 71 | 3.68167 | | |
| 72 | 4.06000 | | |
| 73 | 4.49583 | | |
| 74 | 4.98333 | | |
| 75 | 5.51333 | | |
| 76 | 6.07667 | | |
| 77 | 6.66583 | | |
| 78 | 7.27583 | | |
| 79 | 7.92417 | | |
| 80 | 8.63500 | | |
| 81 | 9.43083 | | |
| 82 | 10.33917 | | |
| 83 | 11.37333 | | |
| 84 | 12.51417 | | |
| 85 | 13.73750 | | |

85-200-4 PAGE 4

EXHIBIT C

## Who Benefits from this Policy?

**Owner.** The owner of this policy is the insured person unless stated otherwise in the application, or later changed.

If the insured person is living on the Final Policy Date defined in the Policy Information section, we will pay you the amount in the Policy Account on that date minus any outstanding loan and loan interest. This policy will then end.

As the owner, you are entitled to exercise all the rights of this policy while the insured person is living. To exercise a right, you do not need the consent of anyone who has only a conditional or future ownership interest in this policy.

**Beneficiary.** The beneficiary is as stated in the application, unless later changed. The beneficiary is entitled to the insurance benefits of this policy. If two or more persons are named, those who survive the insured person will share the insurance benefits equally, unless you have made another arrangement with us.

If there is no designated beneficiary living at the death of the insured person, we will pay the benefits to the surviving children of the insured person in equal shares. If none survive, we will pay the insured person's estate.

**Changing the Owner or Beneficiary.** While the insured person is living, you may change the owner or beneficiary by written notice in a form satisfactory to us. (You can get such a form from our agent or by writing to us.) The change will take effect on the date you sign the notice. But, it will not apply to any payment we make or other action we take before we receive the notice. If you change the beneficiary, any previous arrangement you made as to a payment option for benefits is cancelled. You may choose a payment option for the new beneficiary in accordance with "How Benefits Are Paid" on Page 12.

**Assignment.** You can assign this policy, but we will not be bound by an assignment unless we have received it in writing. Your rights and those of any other person referred to in this policy will be subject to the assignment. We assume no responsibility for the validity of an assignment.

## The Insurance Benefits We Pay

We will pay the insurance benefits of this policy to the beneficiary when we receive proof that the insured person died before the Final Policy Date. These insurance benefits include the following amounts, which we will determine as of the date of the insured person's death:

- the death benefit described below;
- plus any other benefits then due from riders to this policy;
- minus any loan (and loan interest) on the policy;
- minus any overdue monthly deductions if the insured person dies during the grace period.

EXHIBIT C

*THE INSURANCE*
*BENEFITS*
*WE PAY (continued)*

We will add interest to the resulting amount for the period from the date of death to the date of payment. We will compute the interest at a rate we determine, but not less than the greater of (a) the rate we are paying on the date of payment under the Deposit Option on Page 12; or (b) the rate required by any applicable law.

Payment of these benefits may also be affected by other provisions of this policy. See Pages 14 and 15, where we specify the suicide exclusion, our right to contest the policy, and what happens if age or sex has been misstated. Special exclusions or limitations (if any) are listed in the Policy Information section.

**Death Benefit.** The death benefit will be determined under either Option A or Option B below, whichever is chosen and is in effect on the date the insured person dies:

Under Option A, the death benefit is the greater of the following items (a) or (c).

Under Option B, the death benefit is the greater of the following items (b) or (c).

(a) The Face Amount of Insurance on the date of death.

(b) The Face Amount of Insurance *plus* the amount in the Policy Account on the date of death.

(c) A percentage of the amount in the Policy Account on the date of death. Such percentage is the applicable percentage from the table below for the insured person's age (nearest birthday) at the beginning of the policy year in which death occurs.

*TABLE OF*
*APPLICABLE PERCENTAGES*

For ages not shown, the applicable percentages shall decrease by a ratable portion for each full year

| Insured Person's Age | Percentage | Insured Person's Age | Percentage |
|---|---|---|---|
| 40 and under | 250% | 65 | 120% |
| 45 | 215 | 70 | 115 |
| 50 | 185 | 75 thru 90 | 105 |
| 55 | 150 | 95 | 100 |
| 60 | 130 | | |



65-200-5 Page 4

EXHIBIT C

Changing the Face Amount of Insurance or the Death Benefit Option. During the first policy year the death benefit option and the Face Amount of Insurance will be those you chose on the application for this policy and which are shown in the Policy Information section. At any time after the first policy year while this policy is in force, you may change the death benefit option or the Face Amount of Insurance by written request to us, subject to our approval and the following:

1. You may ask us to increase the Face Amount of Insurance if you provide evidence satisfactory to us of the insurability of the insured person. Any increase you ask for must be at least $10,000. We will deduct the charge for such increase shown in the Policy Information section from the Policy Account as of the date the increase takes effect.

2. You may ask us to reduce the Face Amount of Insurance but not to less than the minimum amount for which we would then issue this policy under our rules. If you do this in the first ten policy years, we may deduct from the Policy Account a pro rata share of the applicable surrender charge (see Page 11).

3. You can change your death benefit option. If you ask us to change from Option A to Option B, we will decrease the Face Amount of Insurance by the amount in the Policy Account on the date of change. However, we reserve the right to decline to make such change if it would reduce the Face Amount of Insurance below the minimum amount for which we would then issue this policy under our rules. If you ask us to change from Option B to Option A, we will increase the Face Amount of Insurance by the amount in the Policy Account on the date of change. Such decreases and increases in the Face Amount of Insurance are made so that there is no change in the Net Amount at Risk (see Page 9).

4. Any change will take effect on the monthly policy anniversary which coincides with or next follows the date we approve the request.

5. We reserve the right to decline to make any change that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

6. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

## The Premiums You Pay

The initial premium payment shown in the Policy Information section is due on or before delivery of the policy. No insurance will take effect before the initial premium payment is paid. Other premiums may be paid at any time at the premium collection office we designate while the policy is in force and before the Final Policy Date. They may be in any amount subject to the limits described below.

EXHIBIT C

*THE PREMIUMS*
*YOU PAY (continued)*

We will send premium reminder notices to you for the planned periodic premium shown in the Policy Information section unless you ask us not to in the application for this policy or later by written notice. You may skip planned premium payments or change their frequency and amount.

Limits. Each premium payment after the initial one must be at least $100. We may increase this minimum limit 90 days after we send you written notice of such increase.

We reserve the right not to accept premium payments in a policy year that we determine would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

Grace Period. If the Net Cash Surrender Value on any monthly anniversary is less than the monthly deductions for that month described on Page 9, we will stop making such deductions. There will then be a grace period of 61 days after that anniversary. If a grace period starts, we will send you and any assignee on our records at last known addresses a notice. The notice will state the grace period and the amount sufficient to cover 3 monthly deductions.

If by the end of the grace period we do not receive an amount sufficient to cover at least 3 monthly deductions, we will then send you and any assignee on our records at last known addresses a notice that this policy has ended without value.

If the insured person dies during the grace period, we will pay the insurance benefits as described on Page 5.

Reinstatement. If this policy has ended without value, you may reinstate it while the insured person is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period; and

2. Provide evidence of insurability satisfactory to us; and

3. Make a premium payment sufficient to keep the policy in force for at least 3 months after the date of reinstatement.

The effective date of the reinstated policy will be the monthly anniversary on or next following the date we approve your reinstatement application.

*Your Policy Account and How it Works*

When we receive your premium payments, we subtract the expense charges shown in the table in the Policy Information section. We put the balance into your Policy Account as of the date we receive the premium payment, and before any deductions from the Policy Account due on that date are made. We also put into your Policy Account any credits arising from a disability benefit under this policy.

EXHIBIT C

Your Policy Account earns interest at effective annual rates we determine. This interest is also added to your Policy Account. We make deductions from the Policy Account as described below. We will also subtract from the Policy Account any Net Cash Surrender Values you ask for. More details are given below and in the cash surrender value section on Page 10.

How We Add Interest. We will determine such interest rates annually in advance for unloaned and loaned amounts. The loaned amount, if any, is the part of the Policy Account equal to the amount of any outstanding policy loan and loan interest. The interest rates we determine each year will apply to the policy year that follows the date of determination. Any change in the interest rates we determine will be as described in "Changes in Policy Cost Factors" on Page 14. Such effective annual interest rates will not be less than 4½%.

We will add interest to your account at the end of each policy month based on amounts that were in the account throughout the month. We will credit interest on the balance of premium payments received in a policy month that are put into your Policy Account from the date we receive them, except that interest on the initial premium payment will be credited from the Register Date if later. We will credit interest on amounts that you withdraw from the Policy Account during a policy month only from the beginning of the policy month to the date of withdrawal.

Monthly Deductions. At the beginning of each policy month we make a deduction from the Policy Account to provide insurance coverage, subject to the Grace Period provision on Page 8. Such deduction for any policy month is the sum of the following amounts determined as of the beginning of that month:

○ The monthly cost of insurance for the insured person that we determine.

○ The monthly cost of any benefits provided by riders to this policy, as determined in accordance with such riders.

The monthly cost of insurance is our current monthly "cost of insurance rate" times the "net amount at risk" (Death Benefit minus the amount in the Policy Account) at the beginning of the policy month; *plus* any extra charge shown in the Policy Information section times the Face Amount of Insurance at the beginning of the policy month. For this purpose the amount in the Policy Account is determined before the monthly cost of insurance deduction but after all other deductions due on that date have been made. The cost of insurance rate is based on the sex, attained age, and rating class of the insured person. ("Attained age" means age on the birthday nearest to the beginning of the then current policy year.)

We will determine cost of insurance rates from time to time. Any change in the cost of insurance rates we use will be as described in "Changes in Policy Cost Factors" on Page 14. They will never be more than those shown in the Table of Guaranteed Maximum Insurance Costs on Page 4 plus any extra charge in the Policy Information section.

EXHIBIT C

### YOUR POLICY ACCOUNT AND HOW IT WORKS *(continued)*

Also at the beginning of each policy month, we make a deduction from the Policy Account for monthly administrative charges, subject to the Grace Period provision on Page 8. They are shown in the Table of Expense Charges in the Policy Information section.

Other Deductions. We also make the following other deductions from the Policy Account as they occur:

○ If you make a partial withdrawal of the Net Cash Surrender Value, we deduct the charge for it shown in the Table of Expense Charges in the Policy Information Section.

○ We subtract surrender charges if you give up the policy for its Net Cash Surrender Value or if you reduce the Face Amount of Insurance.

○ We make a deduction from the Policy Account if you increase the Face Amount of Insurance (see Page 7).

### Our Annual Report to You

For each policy year we will send you a report that shows the current Death Benefit, value of your Policy Account, cash surrender value and any outstanding policy loan with the current loan interest rate. It will also show all amounts added to or deducted from the Policy Account in the year: the premiums paid, interest added, insurance cost deductions, and all expense charges, surrender charges and partial net cash surrender value withdrawals made in the year. The report will also show such other information as may be required by the insurance supervisory official of the jurisdiction in which this policy is delivered.



### The Cash Surrender Value of this Policy

Net Cash Surrender Value. You may give up this policy for its Net Cash Surrender Value at any time while the insured person is living. You may do this by sending us a written request and this policy. The Net Cash Surrender Value is equal to the Cash Surrender Value minus any loan and loan interest. We will compute the Net Cash Surrender Value as of the date we receive your request and this policy. All insurance coverage under this policy ends on such date.

Cash Surrender Value. The Cash Surrender Value on any date is equal to the amount in the Policy Account on that date minus any applicable surrender charge.

Surrender Charges. If you give up this policy for its Net Cash Surrender Value in the first ten policy years, we will subtract a surrender charge from the Policy Account. The surrender charge for each such year is shown in the Table of Surrender Charges in the Policy Information section. The surrender charge stays the same throughout a policy year, except as stated below.

EXHIBIT C

EXHIBIT C

If the Face Amount of Insurance is reduced during any of the first ten policy years because you ask us to reduce it, we may also deduct from the Policy Account a pro rata surrender charge. The amount of the pro rata surrender charge will be determined by the following formula:

$$\frac{A}{B} \times C$$

where A — Represents the decrease in the Face Amount of Insurance to which a surrender charge will be applied. The amount of the decrease is the difference between the current Face Amount of Insurance and the new Face Amount of Insurance. However, this amount will be reduced by (1) the sum of all requested and approved prior increases in the Face Amount of Insurance; less (2) the sum of all requested and approved prior reductions in the Face Amount of Insurance (as described in sections 1 and 2 of "Changing the Face Amount of Insurance or the Death Benefit Option" on Page 7) minus the portion of such prior reductions on which a pro rata surrender charge was previously made.

where B — Is the initial Face Amount of Insurance.

where C — Is the original surrender charge for the applicable policy year as shown in the Table of Surrender Charges when this policy was issued.

When a pro rata surrender charge is made, the Table of Surrender Charges for that year and subsequent years will be reduced proportionately.

The written notice we send you when the Face Amount of Insurance is reduced at your request will show surrender charges. If because of such pro rata deductions the surrender charge is reduced to zero, there will be no further surrender charges.

Partial Net Cash Surrender Value Withdrawal. After the first policy year you may ask for a partial Net Cash Surrender Value withdrawal, subject to our approval and to the minimum withdrawal amount shown in the Policy Information section. A partial withdrawal will result in a reduction in the Death Benefit, the Cash Surrender Value and in the Policy Account equal to the amount withdrawn plus the amount of the following expense charge. When a partial withdrawal is made, we will deduct an expense charge from the Policy Account equal to the amount shown in the Table of Expense Charges in the Policy Information section.

Such change in the Death Benefit, Cash Surrender Value and in the Policy Account will take effect on the date of withdrawal. We will send you a written notice showing each change. The notice is to be attached to and made part of this policy. The information in it will supersede the corresponding information in the Policy Information section. We may require you to return the policy to us to make a change.

EXHIBIT C

EXHIBIT C

We reserve the right to decline a request for a partial Net Cash Surrender Value withdrawal if: (a) the Death Benefit would be reduced below the minimum amount for which we would then issue this policy under our rules; or (b) we determine that the withdrawal would cause this policy to fail to qualify as life insurance under applicable tax law as interpreted by us (see Page 14).

## How a Loan Can Be Made

**Policy Loans.** You can get a loan on this policy while it has a loan value. This policy will be the only security for the loan. The initial loan and each additional loan must be for at least the minimum loan amount shown in the Policy Information section, except for a loan to pay a premium to us. Any amount on loan is still considered to be part of your Policy Account. While on loan, it will still earn interest as stated on Page 9.

The amount of the loan may not be more than the loan value. Any existing loan and loan interest will be subtracted from a new loan.

**Loan Value.** The loan value on any date is the Cash Surrender Value on that date.

**Loan Interest.** Interest on a loan accrues daily, at an annual rate of 8%. We may charge a lower rate for any period of time. Interest is due on each policy anniversary. If the interest is not paid when due, it will be added to the loan and bear interest at the loan rate.

**Loan Repayment.** You may repay all or part of a policy loan at any time while the insured is alive and this policy is in force. We will assume that any payment you make to us while you have a loan is a loan repayment, unless you tell us in writing that it is a premium payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy. However, if the Net Cash Surrender Value is not sufficient for the monthly deduction due on a monthly anniversary the Grace Period provision will apply (see Page 8).

## How Benefits Are Paid

You can have insurance benefits, net cash surrender value withdrawals, and the Policy Account payable on the Final Policy Date paid immediately in one sum. Or, you can choose another form of payment for all or part of them. If you do not arrange for a specific choice before the insured person dies, the beneficiary will have this right when the insured person dies. If you do make an arrangement, however, the beneficiary cannot change it after the insured person dies.

The options are:

1. DEPOSIT: The sum will be left on deposit for a period mutually agreed upon. We will pay interest at the end of every month, every 3 months, every 6 months or every 12 months, as chosen.



EXHIBIT C

EXHIBIT C

2. INSTALLMENT PAYMENTS: There are two ways that we pay installments:

FIXED PERIOD: We will pay the sum in equal installments for a specified number of years (not more than 30). The installments will be at least those shown in the Table of Guaranteed Payments on Page 16.

FIXED AMOUNT: We will pay the sum in installments as mutually agreed upon until the original sum, together with interest on the unpaid balance, is used up.

3. MONTHLY LIFE INCOME: We will pay the sum as a monthly income for life. The amount of the monthly payment will be at least that shown in the Table of Guaranteed Payments on Page 16. You may choose any one of three ways to receive monthly life income. We will guarantee payments for at least 10 years (called "10 Years Certain"); at least 20 years (called "20 Years Certain"); or until the payments we make equal the original sum (called "Refund Certain").

4. OTHER: We will apply the sum under any other option requested that we make available at the time of the insured person's death or net cash surrender value withdrawal, or on the Final Policy Date, whichever applies.

We guarantee interest under the Deposit Option at the rate of 3% a year and under either Installment Option at 3½% a year. We may raise these guaranteed rates. We may also allow interest under the Deposit Option and under either Installment Option at a rate above the guaranteed rate.

The payee may name and change a successor payee for any amount we would otherwise pay to the payee's estate.

Any arrangements involving more than one of the options, or a payee who is not a natural person (for example, a corporation) or who is a fiduciary, must have our approval. Also, details of all arrangements will be subject to our rules at the time the arrangement takes effect. These include rules on: the minimum amount we will apply under an option and minimum amounts for installment payments; withdrawal or commutation rights; naming payees and successor payees; and proving age and survival.

Payment choices (or any later changes) will be made and will take effect in the same way as a change of beneficiary. Amounts applied under these options will not be subject to the claims of creditors or to legal process, to the extent permitted by law.

*Other Important Information*

Your Contract with Us. This policy is issued in consideration of payment of the initial premium payment shown in the Policy Information section.

EXHIBIT C

*OTHER IMPORTANT INFORMATION*
*(continued)*

This policy, and the attached copy of the initial application and all subsequent applications to change the policy, make up the entire contract.

Only our President or one of our Vice Presidents can modify this contract or waive any of our rights or requirements under it. The person making these changes must put them in writing and sign them.

Policy Changes—Applicable Tax Law. For you and the beneficiary to receive the tax treatment accorded to life insurance under the federal law, this policy must qualify initially and continue to qualify as life insurance under the Internal Revenue Code or successor law. Therefore, to assure this qualification for you we have reserved earlier in this policy the right to decline to accept premium payments, to decline to change death benefit options, or to decline to make partial withdrawals that would cause the policy to fail to qualify as life insurance under applicable tax law as interpreted by us. Further, we reserve the right to make changes in this policy or its riders (for example in the percentages on Page 6) or to make distributions from the policy to the extent we deem it necessary to continue to qualify this policy as life insurance. Any such changes will apply uniformly to all policies that are affected. You will be given advance written notice of such changes.

Changes in Policy Cost Factors. Changes in policy cost factors (interest, cost of insurance deductions and expense charges) will be by class and based upon changes in future expectations for such elements as: investment earnings, mortality, persistency, expenses and taxes. Any change in policy cost factors will be determined in accordance with procedures and standards on file, if required, with the insurance supervisory official of the jurisdiction in which this policy is delivered.

When the Policy is Incontestable. We have the right to contest the validity of this policy based on material misstatements made in the initial application for this policy. We also have the right to contest the validity of any policy change based on material misstatements made in any application for that change. However, we will not contest the validity of this policy after it has been in effect during the lifetime of the insured person for two years from the Date of Issue shown in the Policy Information section. We will not contest any policy change that requires evidence of insurability, or any reinstatement of this policy, after the change or reinstatement has been in effect for two years during the insured person's lifetime.

No statement shall be used to contest a claim unless contained in an application.

All statements made in an application are representations and not warranties.

See any additional benefit riders for modifications of this provision that apply to them.

What if Age or Sex has Been Misstated? If the insured person's age or sex has been misstated on any application, we will adjust any benefits to reflect the correct age and sex.

EXHIBIT C

How the Suicide Exclusion Affects Benefits. If the insured person commits suicide (while sane or insane) within two years after the Date of Issue shown in the Policy Information section, our liability will be limited to the payment of a single sum. This sum will be equal to the premiums paid, minus any loan and loan interest and minus any partial withdrawal of the net cash surrender value. If the insured person commits suicide (while sane or insane) within two years after the effective date of a change that you asked for that increases the Death Benefit, then our liability as to the increase in amount will be limited to the payment of a single sum equal to the monthly cost of insurance deductions made for such increase.

How We Measure Policy Periods and Anniversaries. We measure policy years, policy months and policy anniversaries from the Register Date shown in the Policy Information section. Each policy month begins on the same day in each calendar month as the day of the month in the Register Date.

How and When We Defer Payment. We may defer payment of any cash surrender withdrawal or loan amount (except a loan to pay a premium to us) for up to six months after we receive a request for it. We will allow interest, at a rate of at least 3% a year, on any cash surrender value payment we defer for 30 days or more.

The Basis We Use for Computation. We provide cash surrender values that are at least equal to or more than those required by law. If required to do so, we have filed with the insurance supervisory official of the jurisdiction in which this policy is delivered a detailed statement of our method of computing such values. We compute reserves under this policy by the Commissioners Reserve Valuation Method.

We base minimum cash surrender values and reserves on the "Commissioners 1980 Standard Ordinary Male and Female Mortality Tables." We also use these tables as the basis for determining maximum insurance costs, taking account of sex, attained age and rating class of the insured person. We use interest compounded annually at $4\frac{1}{2}\%$.

Policy Illustrations. Upon request we will give you an illustration of the future benefits under this policy based upon both guaranteed and current cost factor assumptions. However, if you ask us to do this more than once in any policy year, we reserve the right to charge you a fee for this service.

Policy Changes. You may change this policy to another available plan of insurance or add additional benefit riders or make other changes, subject to our rules at the time of change.

EXHIBIT C

EXHIBIT C

## Table of Guaranteed Payments
### MINIMUM AMOUNT FOR EACH $1,000 OF ORIGINAL SUM

| Option 2 | | | | Option 3 | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| FIXED PERIOD INSTALLMENTS | | | | MONTHLY LIFE INCOME | | | | | |
| | | | | | 10 Years Certain | | 20 Years Certain | | Refund Certain |
| Number of Years' Installments | Monthly Installment | Annual Installment | AGE | Male | Female | Male | Female | Male | Female |
| 1 | $84.70 | $1,000.00 | 50 | $4.50 | $3.96 | $4.27 | $3.89 | $4.28 | $3.87 |
| 2 | 43.08 | 508.60 | 51 | 4.58 | 4.02 | 4.32 | 3.94 | 4.35 | 3.93 |
| 3 | 29.21 | 344.86 | 52 | 4.67 | 4.09 | 4.38 | 4.00 | 4.42 | 3.99 |
| 4 | 22.28 | 263.04 | 53 | 4.75 | 4.16 | 4.44 | 4.06 | 4.50 | 4.05 |
| 5 | 18.12 | 213.99 | 54 | 4.85 | 4.24 | 4.50 | 4.12 | 4.58 | 4.11 |
| 6 | 15.36 | 181.32 | 55 | 4.94 | 4.32 | 4.56 | 4.18 | 4.66 | 4.18 |
| 7 | 13.38 | 158.01 | 56 | 5.04 | 4.40 | 4.62 | 4.24 | 4.74 | 4.25 |
| 8 | 11.91 | 140.56 | 57 | 5.15 | 4.49 | 4.68 | 4.31 | 4.83 | 4.33 |
| 9 | 10.76 | 127.00 | 58 | 5.26 | 4.58 | 4.74 | 4.38 | 4.93 | 4.41 |
| 10 | 9.84 | 116.18 | 59 | 5.37 | 4.68 | 4.81 | 4.45 | 5.03 | 4.49 |
| 11 | 9.09 | 107.34 | 60 | 5.49 | 4.78 | 4.86 | 4.52 | 5.13 | 4.58 |
| 12 | 8.47 | 99.98 | 61 | 5.62 | 4.89 | 4.92 | 4.59 | 5.24 | 4.67 |
| 13 | 7.94 | 93.78 | 62 | 5.75 | 5.00 | 4.98 | 4.66 | 5.35 | 4.77 |
| 14 | 7.49 | 88.47 | 63 | 5.88 | 5.12 | 5.04 | 4.73 | 5.48 | 4.88 |
| 15 | 7.11 | 83.89 | 64 | 6.03 | 5.25 | 5.09 | 4.80 | 5.60 | 4.99 |
| 16 | 6.77 | 79.89 | 65 | 6.17 | 5.39 | 5.14 | 4.88 | 5.74 | 5.10 |
| 17 | 6.47 | 76.37 | 66 | 6.32 | 5.53 | 5.19 | 4.95 | 5.88 | 5.22 |
| 18 | 6.20 | 73.25 | 67 | 6.48 | 5.68 | 5.24 | 5.01 | 6.03 | 5.35 |
| 19 | 5.97 | 70.47 | 68 | 6.64 | 5.83 | 5.28 | 5.08 | 6.18 | 5.49 |
| 20 | 5.76 | 67.98 | 69 | 6.80 | 6.00 | 5.32 | 5.14 | 6.35 | 5.64 |
| 21 | 5.57 | 65.74 | 70 | 6.97 | 6.17 | 5.35 | 5.20 | 6.53 | 5.79 |
| 22 | 5.40 | 63.70 | 71 | 7.15 | 6.34 | 5.38 | 5.26 | 6.71 | 5.96 |
| 23 | 5.24 | 61.85 | 72 | 7.32 | 6.53 | 5.41 | 5.30 | 6.91 | 6.13 |
| 24 | 5.10 | 60.17 | 73 | 7.50 | 6.72 | 5.43 | 5.35 | 7.12 | 6.32 |
| 25 | 4.97 | 58.62 | 74 | 7.67 | 6.92 | 5.45 | 5.38 | 7.34 | 6.52 |
| 26 | 4.84 | 57.20 | 75 | 7.85 | 7.12 | 5.47 | 5.42 | 7.58 | 6.73 |
| 27 | 4.73 | 55.90 | 76 | 8.02 | 7.32 | 5.48 | 5.44 | 7.82 | 6.96 |
| 28 | 4.63 | 54.69 | 77 | 8.19 | 7.53 | 5.49 | 5.46 | 8.09 | 7.21 |
| 29 | 4.54 | 53.57 | 78 | 8.36 | 7.75 | 5.50 | 5.48 | 8.38 | 7.47 |
| 30 | 4.45 | 52.53 | 79 | 8.52 | 7.96 | 5.50 | 5.49 | 8.67 | 7.75 |
| | | | 80 | 8.67 | 8.16 | 5.51 | 5.50 | 9.00 | 8.05 |
| | | | 81 | 8.81 | 8.36 | 5.51 | 5.51 | 9.34 | 8.39 |
| | | | 82 | 8.94 | 8.55 | 5.51 | 5.51 | 9.70 | 8.73 |
| | | | 83 | 9.06 | 8.73 | 5.51 | 5.51 | 10.10 | 9.12 |
| | | | 84 | 9.16 | 8.90 | 5.51 | 5.51 | 10.52 | 9.53 |
| | | | 85 & over | 9.26 | 9.05 | 5.51 | 5.51 | 10.96 | 9.97 |

If installments are paid every 3 months, they will be 25.32% of the annual installments. If they are paid every 6 months, they will be 50.43% of the annual installments.

Amounts for Monthly Life Income are based on age nearest birthday when income starts. Amounts for ages not shown will be furnished on request.

15-200-15

EXHIBIT C

## Limitation on Amount of Insurance Rider

*(This limitation is required
by the laws of New York State)*

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" and "your" mean the Owner of the policy at the time an Owner's right is exercised.*

---

If the insured person dies before the age of 14 years and 6 months, the benefit paid may be limited. The total amount of life insurance payable on the life of the insured person under this policy and under all other insurance policies in effect on the Date of Issue of this policy, in our company and all other companies, shall be subject to the following maximum amount limitation:

| Insured Person's Attained Age | Maximum Amount Limitation |
|---|---|
| Less than 4 years and 6 months | The greater of: a) $5,000; or b) 25% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |
| Between 4 years and 6 months and 14 years and 6 months | The greater of: a) $10,000; or b) 50% of the total amount of life insurance in effect on the life of the applicant for this policy on its Date of Issue. |

"Total amount of life insurance" as used in this rider shall not include: (a) return premium benefits; (b) additional benefits in the event of death by accident; (c) any additional insurance provided by use of dividends; (d) any variable death benefit above the guaranteed minimum death benefit provided under a variable life insurance policy; (e) any additional insurance provided by amounts credited to a policy after its issue; or (f) any insurance provided by a policy in excess of the face amount of insurance in force at the time of demand or death. Any part of this Policy not in excess of the above limits at the date of issue will not become in excess by reason of any later reduction in the amount of insurance on the Applicant's life.

If the total amount of life insurance on the life of the insured person is in excess of this maximum, we will terminate the amount of such excess insurance that is in effect under this policy. We will do this when the insured person dies or upon your earlier written request, but only if we are given satisfactory proof that such excess exists at the time of such death or request.

We will make an appropriate refund of the Monthly Deductions from the Policy Account if such excess insurance is terminated. We will determine the amount of the refund based on the Monthly Deductions made for the terminated insurance, with appropriate adjustments to recognize interest on such deductions (at 4½% per year compounded annually), any loan on the policy, and any partial withdrawal of the net cash surrender value. We will pay the refund to you if the insured person is living at the time of payment. If the insured person is not then living, we will pay it to the beneficiary. When such refund is paid, all of our obligations for such excess insurance terminate.

No such refund will be paid, however, if we have paid an excess amount as part of a death claim without having had proof satisfactory to us that an excess amount of insurance existed.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R85-406

EXHIBIT C

EXHIBIT C

*Exchange
Privilege
Rider*

*In this rider, "we", "our" and "us" mean AXA Equitable Life Insurance Company. "You" means the Owner of the policy at the time an Owner's right is exercised.*

After the first policy year you may exchange this policy for a new policy on the life of a new insured person, subject to conditions we determine. These conditions include but are not limited to the following:

1. We must be satisfied that the new insured person is insurable for the amount of insurance applied for.

2. The new insured person must join in the request for the new policy and the owner of the new policy must have an insurable interest in the new insured person. If this policy is assigned, the assignee must consent to the exchange.

3. The exchange may be made as of the beginning of any policy month if neither the original insured person nor the new insured person is then over age 65.

4. This policy must be in effect on the exchange date with all monthly deductions from the Policy Account having been made, with no such deductions then being waived nor amounts credited to the Policy Account by a disability rider.

5. Within 31 days before the date of exchange, we must receive (a) written request for the exchange on our application form; and (b) evidence of the new insured person's insurability satisfactory to us.

6. We will carry over to the new policy any loan and loan interest not repaid.

7. Insurance under this policy will cease when insurance under the new policy takes effect.

8. The new policy must qualify as life insurance under the Internal Revenue Code or successor legislation.

**THE NEW POLICY.** Planned periodic premiums for the new policy will be based on our rules in effect on its Register Date for the insurance age of the new insured person on that date. The Register Date of the new policy will be the same as the Register Date of this policy. However, if the new insured person's date of birth is later than the Register Date of this policy, the Register Date of the new policy will be the policy anniversary of this policy next preceding the date of exchange. The face amount of insurance and the death benefit option in the new policy will be the same as in effect in this policy on the date of exchange.

You may ask that additional benefit riders be included in the new policy. The issue of any rider will require our consent and evidence of insurability satisfactory to us.

The time periods in the Incontestability and Suicide Exclusion provisions of the new policy will begin on the Date of Issue of the new policy.

*AXA Equitable Life Insurance Company*

Karen Field Hazin, Vice President,
Secretary and Associate General Counsel

Christopher M. Condron,
Chairman and Chief Executive Officer

R85-405NY     Exchange Privilege

EXHIBIT C

EXHIBIT C

M. Dean

## Application To

☐ The Equitable Life Assurance Society of the United States

☒ Equitable Variable Life Insurance Company

REQUEST FOR ☒ CHANGE (as specified in Section I) OF POLICY OR CONTRACT NO. 37205155
☐ REINSTATEMENT ☐ DELIVERY OF POLICY OR CONTRACT NO. _____

### SECTION I

Requested Change (see below for adding RTI and CTI): Reduce the Face Amount from $2,000,000 to $1,600,000. Effective date of change is December 1, 1987.

_____

_____

_____

ADD ☐ Renewable Term Rider (RTI) on Insured        Amt. $ _____
☐ Renewable Term Rider (RTI) on Additional Insured        Amt. $ _____
☐ Children's Term Rider (CTI)        Amt. $ _____        Units _____

For RTI on the Additional Insured and for CTI, the Beneficiary will be as stated in the rider for those benefits unless otherwise designated above in "Requested Change" (in any designation include Full Name and Relationship to Insured).

*Complete below and answer the Questions in Section II as to the Additional Insured and as to each Child proposed for CTI.*

PERSON(S) TO BE COVERED UNDER RTI ON ADDITIONAL INSURED AND/OR CTI:

NOTE: To be eligible for CTI, Children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a Child is 15 days old.

| RTI or CTI? | First Name | Middle Initial | Last Name | Sex | Date of Birth Mo. | Day | Yr. |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |

*Complete a.-e. only as to Additional Insured for RTI.*

a. List all current occupations—Give Title(s) and Duties.

_____

_____

b. Age Nearest Birthday _____

c. Place of Birth: State of _____

d. Residence: State of _____

e. Owner's Relationship to Addl. Insured: _____

The signers of this request agree that:

1. If evidence of insurability is required, the statements and answers to the questions
   ☐ in Sections I and II of this form
   ☐ in Sections I and II of this form and on the medical history form dated _____
   are reaffirmed and offered as part of this request.

   Such statements and answers are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this request.

2. The Insurer shall incur no liability under this request
   (a) until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and
   (b) unless, if evidence of insurability is required, the statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of such consideration.

3. Any new policy or contract issued in connection with a change request shall be subject to: (1) Any assignment of the original policy or contract in force and on file with the Insurer at its Home Office; and (2) To any loan made by the Insurer on the original policy or contract and to the rights of the Insurer in connection with it.

4. No agent or medical examiner has authority to make or modify any contract or to waive any of the Insurer's rights or requirements. The Insurer shall not be bound by any information unless it is stated in this form or in any other form submitted in connection with this request.

Dated at N.Y.        N.Y.        on 11-31-1987
City        State

*See reverse side for Signature Requirements.*

Nota Wapena , TRUSTEE

_____

_____

Signature(s)

Will any other existing insurance or annuity be replaced or changed (or has it been) assuming that any new insurance or annuity applied for will be issued?        ☐ Yes ☐ No

Signature of Agent _____

*Also complete Production Credits information on the back.*

180-333C                                    Cat. No. 45837

EXHIBIT C

## Application (Continued)

### SECTION II

*For each new Person to be covered, answer Questions 1 and 2. Also answer Questions 3, 4 and 5 if Non-Medical.*
*For persons already covered by the policy or contract, such questions need be answered only as to occurrences that took place after the date of application for the policy or contract.*

**1. Has any Person To Be Covered:**
a. Within the last two years been convicted of two or more moving violations or driving under the influence of alcohol or drugs, or had a driver's license suspended or revoked? (Give full details—including dates, types of violation, and reason for license suspension or revocation.)  ☐ Yes ☐ No
b. Any plan to travel or reside outside the U.S.? (Give full details.)  ☐ Yes ☐ No
c. Any other life insurance now in effect or application now pending? (State companies and amounts.)  ☐ Yes ☐ No

**2. Has any Person To Be Covered:**
a. Within the last year flown other than as a passenger or plan to do so?  ☐ Yes ☐ No
If yes: Total flying time at present _____ Hours;
Last 12 mos. _____ Hours;  Next 12 mos. _____ Est. Hours.
(Complete Aviation Supplement for competitive, test, stunt or military flying, or crop dusting.)
b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.)  ☐ Yes ☐ No
c. Ever had an application for life or health insurance declined, that required an extra premium or was otherwise modified? (Give full details.)  ☐ Yes ☐ No

d. Replaced or changed any other existing insurance or annuity (or any plan to do so) assuming that any new insurance or annuity applied for will be issued? (State companies, plans and amounts.)  ☐ Yes ☐ No

**3.** Insured: Height_____Ft._____In. Weight_____lbs.
Additional Insured: Height_____Ft._____In. Weight_____lbs.

**4. Has any Person To Be Covered:**
a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.)  ☐ Yes ☐ No
b. Within the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.)  ☐ Yes ☐ No

**5. Has any Person To Be Covered:**
a. Within the last ten years repeatedly used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.)  ☐ Yes ☐ No
b. Within the last ten years received counseling or treatment regarding the use of alcohol or drugs? (Give full details.)  ☐ Yes ☐ No

**6. DETAILS.** For each yes answer give Question number, name of person(s) affected and full details. *For 4 and 5 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.*

| No. | Name of Person Affected | Details |
|-----|-------------------------|---------|
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |
|     |                         |         |

**TO BE COMPLETED BY AGENT.**
For Production Credits (Service Agent first)

| (Print) Agent's Name(s) | Initial of Last Name | Number | % Int. |
|-------------------------|----------------------|--------|--------|
|                         |                      |        |        |
|                         |                      |        |        |
|                         |                      |        |        |

Agency & Code No. _____
District & Code No. _____
Date _____ 19____
Service Agent's Signature

### SIGNATURE REQUIREMENTS

*Change.* Owner (and assignee if policy is assigned) must sign. If evidence of insurability is required, each person covered by the change must also sign.

*Reinstatement.* Each person covered by the policy must sign. If the Insured is not the Owner or if the policy is absolutely assigned, the Owner or Absolute Assignee must also sign.

*Delivery.* Same signature requirements as on original application.

*NOTE: If the Owner or any person to be covered is a child under age 15, the parent or guardian should sign for the child.*

180-333C

EXHIBIT C

EXHIBIT C

# THE EQUITABLE     ⊕ EVLICO

## REQUEST FOR CHANGE OF BENEFICIARY AND/OR OWNER TO
☐ THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES
☒ EQUITABLE VARIABLE LIFE INSURANCE COMPANY
EQUITABLE AND EVLICO REQUESTS FOR CHANGE OF BENEFICIARY AND/OR OWNER MUST BE SUBMITTED ON SEPARATE FORMS.

### DO NOT RETURN THE POLICY WITH THIS REQUEST!
*BEFORE COMPLETING THIS REQUEST, PLEASE READ THE INSTRUCTIONS ON THE COVER PAGE AND THE PROVISIONS ON THE REVERSE SIDE OF THIS FORM.*

INSURED'S/ANNUITANT'S NAME  Malcolm H. Wiener    POLICY NUMBER  37 205 155

CHANGE OF BENEFICIARY:   ☐ YES   ☒NO (No change from present Beneficiary if neither box is checked.)

FULL NAME OF NEW BENEFICIARY, RELATIONSHIP TO INSURED/ANNUITANT, ADDRESS
OF ALL NAMED BENEFICIARIES, AND SOCIAL SECURITY NUMBER.

Carolyn Seely Wiener, Wife    Soc Sec # 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
720 Park Avenue
New York, N. Y. 10021

CHANGE OF OWNER:   ☐YES   ☒NO (No change from present Owner if neither box is checked.)
FULL NAME OF NEW OWNER AND RELATIONSHIP TO INSURED/ANNUITANT

THIS CHANGE IS SUBJECT TO THE PROVISIONS ON THE REVERSE SIDE

Owner's Address: If applicable, check one and complete.
☐ Address of NEW OWNER is: ☒ Change address of SAME OWNER is:

720 Park Avenue
New York
N. Y.    10021

SIGNATURE OF PRESENT OWNER  Malcolm H. Wiener

Date:   11   8   93

### SUBSTITUTE FORM W-9 — FOR NEW INDIVIDUAL OWNER ONLY
Federal Law requires that you provide the following Data (see reverse side for explanation):
PART ONE — Enter your taxpayer identification number in the appropriate box. For most taxpayers, this is the Social Security Number.

Social Security Number ☐☐☐ ☐☐ ☐☐☐☐   OR   Employer I.D. Number ☐☐ ☐☐☐☐☐☐☐

PART TWO — Check the box if you are NOT subject to backup withholding under the provisions of section 3406(a)(1)(e) of the Internal Revenue Code. . . . ☐

CERTIFICATION — Under penalties of perjury, I certify that this information is true, correct and complete.

Signature of New Owner    Date:

### FOR EQUITABLE/EVLICO USE ONLY
The Equitable/EVLICO certifies that this change has been recorded.
Date:   11/17/ 19 93    By:

IMPORTANT: Please use typewriter or ball point pen. Press firmly since entries must be legible on both parts. Avoid erasures or alterations. When this page and its duplicate are completed, send both completed copies to us. When we have recorded the change, we will return a copy of the form signed by us as evidence of the change.

K3 11/16/93

ITEM #325-2616F.
CATALOG #113754

EXHIBIT C

EXHIBIT C

Part 1 of an Application for Fixed Benefit Life Insurance To ☐JUV
Equitable Variable Life Insurance Company (EVLICO) — ☐OPA

**1. Proposed Insured** a. Print name to appear on policy.
MALCOLM    N·    WIENER
First    Middle Initial    Last
b. ☑ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title_____
c. List all current occupations—Give Title(s) and Duties
CHIEF EXECUTIVE OFFICER

d. Date of Birth: Mo. 07 Day 03 Yr. 19 51
e. Age Nearest Birthday: 51
f. Place of Birth: State of CHINA
g. Residence: State of NY
h. ☑ Male ☐ Female

**2. Plan**
☐ Indeterminate Premium—Yearly Renewable Term for five years.
☐ Modified Yearly Renewable Term for Amounts and Years selected below.

| Year | Face Amount | Year | Face Amount | Year | Face Amount |
|------|-------------|------|-------------|------|-------------|
| 1 | $ | 5 | $ | 8 | $ |
| 2 | | 6 | | 9 | |
| 3 | | 7 | | 10 | |
| 4 | | | | | |

☐ Single Premium Endowment $_____
☐ Other_____ $_____
☑ Flexible Premium Adjustable Life $ 2,000,000
Is the Death Benefit to include the Policy Account? ☑Yes (Option B) ☐No (Option A)

**Amount of Insurance**

**3. Optional Benefits**
☐ Accidental Death Benefit $_____
☐ Renewable Term on Additional Insured $_____
☐ Children's Term $_____ Units_____
☐ Disability Premium Waiver ☐Disability Benefit-Flexible Prem. Pol.
☐ Other_____ ☐Waive Cost of Insurance
☐Credit $_____per_____

**4. Beneficiary** for Insurance on Proposed Insured. Include Full Name and Relationship to Proposed Insured.
SAME AS OWNER

Unless otherwise requested, the contingent beneficiary will be the surviving children of the Insured, in equal shares. If none survive, payment will be made to the Insured's estate.
The Beneficiary under any Term Insurance Rider on an Additional Insured or on a Child will be as stated in those riders, unless otherwise designated in Special Instructions.

**5. Owner** Owner's Soc. Sec. or Tax No. | | | | | | | | | |
The Owner is ☐ Proposed Insured ☐ Applicant for Child (See 10.c.)
☑ Other (Give Full Name) MILLBURN CORPORATION DEFINED BENEFIT PLAN TRUST FOR MALCOLM N. WIENER UNDER AGREEMENT DATED 4-01-86
If "Other", complete the following:
☐ Mr. ☐ Miss ☐Mrs. ☐ Ms. Other Title_____
Relationship to Insured_____
Specify a successor Owner if desired_____

If the Proposed Insured or the Applicant for a Child is not the Owner and if all persons designated die before the Insured, the Owner will be the estate of the last of such persons to die except where the Insured is a Child (see Note in 10.c.).

**6. Mailing Address** ☑Business (Give Full Name) ☐ Residence
| MILLBURN CORPORATION | | | | | | | | | | |
No.    Street    Apt.
℅ WALDEK ROSSA M & LTD | | | | | |
City
| 4790 BISCAYNE BLVD. MIAMI. (FLA) | 33130 |
State    Zip

**7. Premium Payment Plan**
Check mode, and if Flexible Premium Policy complete the following:
Initial Prem. Payment$ 21,776.08
Planned Periodic Prems. $ 21,776.08
☐ Do not send premium reminder notices ..
☐ Annual ☑ Semi-Annual ☐ Quarterly
☐ Monthly ☐ System-Matic (Attach S-M Form)
☐ Single
☐ Military Allotment: Branch_____
Register Date_____
☐ Salary Allotment: Register Date_____
Unit Name_____
Unit/Sub-Unit No. if established:
| | | | | | | | | |
Divisible by ☐2 ☐4 Payroll No._____
☐ Hold Prem.$_____

**8. Note:**
Premiums for the Indeterminate Premium policy may change annually, subject to a guaranteed maximum annual renewal premium shown in the policy.

**9. Special Instructions**
a. ☐ Preliminary Term (PT) period of_____days
ending _____ PT Premium $_____
Mo. Day Yr.
b. ☐ Date to save insurance age:_____
c. Other
" SEND W/ENDORSEMENT S.B.# 189 "
REGISTER DATE: 4-01-86.

EV4-155    Cat. No. 110150    1

EXHIBIT C

EXHIBIT C

## 10. Complete if Proposed Insured Person is a Child (Issue Ages 0-14).

a. Will there be more life insurance in effect on the Child than on any older child in the family? ☐ Yes ☐ No
If yes, explain:

b. Applicant-Complete if other than the Child.
i. _____
   First Name    Middle Initial    Last Name
ii. ☐ Mr. ☐ Miss ☐ Mrs. ☐ Ms. ☐ Other Title ___
iii. Date of Birth _____ 19___
          Month   Day   Year
iv. ☐ Male    ☐ Female
v. Relationship to Child: _____
vi. Total Life Insurance now in effect: $ _____

c. Owner. If the Applicant is to be the Owner, after the Applicant's death the Child will be the Owner unless otherwise designated in Special Instructions (in any such designation include Owner's Full Name, Relationship to Child, and Social Security or Tax Number).
NOTE: Consider designating an adult secondary Owner

d. Optional Benefit on Applicant.
☐ Supplemental Protective Benefit. Give Applicant's:
  i. Age Nearest        ii. Place of
     Birthday_____    Birth _____
                               State
  iii. Height_____Ft.____In. Weight____lbs.
iv. Occupation-Give Title(s) and Duties. _____
Also answer questions on page 5 as to Applicant.

e. Limitations On Child's ADB and DPW Benefits.
If the Accidental Death Benefit is applied for on the Child, the benefit is payable only if the Child dies after the Child's first birthday.
If the Disability Waiver Benefit is applied for on the Child, the benefit is effective only if the Child becomes totally disabled on or after the Child's 5th birthday.

## 11. Complete for Children's Term Rider.

Give Names of Children below and answer the Questions on page 3 as to each Child.

CHILDREN PROPOSED FOR INSURANCE:
NOTE: To be eligible, children (including stepchildren and legally adopted children) must not yet have reached their 18th birthday. Coverage does not begin until a child is 15 days old.

| First Name | Middle Initial | Last Name | Sex | Mo. | Day | Yr. |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

(Date of Birth)

## 12. Complete for Renewable Term Rider on Additional Insured.

Complete below and answer the Questions on page 3 as to the Additional Insured.

PROPOSED ADDITIONAL INSURED PERSON
a. Print name as it is to appear on the Policy.
_____
  First      Middle Initial      Last
b. List all current occupations—Give Title(s) and Duties.

c. Date of Birth: Mo._____ Day_____ Yr. 19___
d. Age Nearest Birthday _____
e. Place of Birth: State of _____
f. Residence: State of _____
g. ☐ Male     ☐ Female
h. Owner's Relationship to Additional Insured Person: _____

## 13. Complete if Using Existing Option to Purchase Insurance.

i. Existing Individual Policy No. _____
ii. Option Date _____ iii. Option Amount: $ _____
iv. ☐ Regular Option or
   ☐ Option on Birth or Adoption of Child
   Child's Name _____
   Date of Birth or Adoption _____
v. If applying for Disability Waiver Benefit, is Proposed Insured now totally disabled as defined in the Disability Waiver provision in the above policy?
                       ☐ Yes ☐ No

This application is made under a provision in the policy insurance above permitting the purchase of individual life insurance (the "Option Provision").

If this application is made within the time allowed and in accordance with the other terms in the Option Provision, including timely payment of the full first premium for the option insurance, then the option insurance shall take effect upon the terms of the policy EVLICO would issue. Otherwise, the option insurance shall not take effect.

Answer the Questions on page 3 only if evidence of insurability is required in connection with an optional benefit or any excess of the insurance amount applied for over the insurance permitted by the Option Provision (the option insurance).

EV4-155                    NO. A 231612        2

EXHIBIT C

**OTHER INFORMATION—Has any Person Proposed for Insurance:**

14. a. Ever had a driver's license suspended or revoked, within the last three years, been convicted of two or more moving violations or driving under the influence of alcohol or drugs? (Give full details—including dates, types of violation, and reason for license suspension or revocation.) ☐ Yes ☐ No

b. Any plan to travel or reside outside the U.S.? (Give full details.) ☑ Yes ☐ No

c. Any other life insurance now in effect or application now pending? (State companies and amounts.) ☐ Yes ☑ No

d. Smoked cigarettes within the last 12 months? ☐ Yes ☑ No

15. a. In the last year flown other than as a passenger or plan to do so? ☐ Yes ☑ No
If yes: Total flying time at present_____Hours;
Last 12 mos._____Hours; Next 12 mos._____Est. Hours. (Complete Aviation Supplement for pilot instruction; competitive, test, stunt or military flying; or crop dusting.)

b. Engaged within the last year, or any plan to engage in motor racing on land or water, underwater diving, sky diving, ballooning, hang-gliding or parachuting? (If yes, complete Avocation Supplement.) ☐ Yes ☑ No

c. Ever had an application for life or health insurance declined,

that required an extra premium or was otherwise modified? (Give full details.) ☐ Yes ☑ No

d. Replaced or changed any existing insurance or annuity on your plan to do so) assuming the insurance applied for will be issued? (State companies, plans and amounts.) ☐ Yes ☑ No

**Answer Questions 16, 17 and 18 only if Non-Medical.**

16. Proposed Insured: Height_____Ft____In. Weight_____lbs.
Additional Insured: Height_____Ft____In. Weight_____lbt.

**Has any Person Proposed for Insurance:**

17. a. Ever been treated for or had any indication of heart trouble, stroke, high blood pressure, chest pain, diabetes, tumor or cancer? (Give full details.) ☐ Yes ☐ No

b. In the last 5 years, consulted a physician, or been examined or treated at a hospital or other medical facility? (Include medical check-ups in the last 2 years. Do not include colds, minor virus infections, minor injuries, or normal pregnancy.) (Give full details.) ☐ Yes ☐ No

18. a. In the last 10 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? (Give full details.) ☐ Yes ☐ No

b. In the last 10 years received counseling or treatment for the use of alcohol or drugs? (Give full details.) ☐ Yes ☐ No

19. **DETAILS.** For each yes answer give Question number and full details. *For 17 and 18 also include conditions, dates, durations, treatment and results, and names and addresses of physicians and medical facilities.*

| No. | Name of Person Affected | Details |
|---|---|---|
| 14b | MALCOLM | TRAVEL BUS/BUSS U-K/EX /EUROPE 3X/YR 3WK/TRIP/X |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

20. **Complete If First Premium is Paid or a Payroll Deduction Authorization is Signed Before the Policy is Delivered:**
Have the undersigned read and do they agree to the conditions of EVLICO's Temporary Insurance Agreement, including (i) the requirement that all of the conditions in that Agreement must be met before any insurance takes effect, and (ii) the $250,000 insurance amount limitation? ☐ Yes ☐ No (If "No," a premium may not be paid nor a payroll deduction authorization signed before the policy is delivered.)

☐ Amount Paid: $_____. (Draw checks to order of EVLICO.) ☐ Payroll deduction authorization signed.

**AGREEMENT:** Each signer of this application agrees that:
(1) The statements and answers in all parts of this application are true and complete to the best of my knowledge and belief. EVLICO may rely on them in acting on this application.

(2) EVLICO's Temporary Insurance Agreement states the conditions that must be met before any insurance takes effect, if the full first premium for the policy applied for is paid, or a payroll deduction authorization is signed, before the policy is delivered.

(3) Except as stated in the Temporary Insurance Agreement, no insurance shall take effect on this application: (a) until a policy is delivered and the full first premium for it is paid, or a payroll deduction authorization is signed, while the Proposed Insured is living; (b) before any Register Date specified in this application; and (c) unless to the best of my knowledge and belief the statements and answers in all parts of this application continue to be true and complete, without material change, as of the time such premium is paid or a payroll deduction authorization is signed.

(4) No agent or medical examiner has authority to modify this Agreement or the Temporary Insurance Agreement, nor to waive any of EVLICO's rights or requirements. EVLICO shall not be bound by any information unless it is stated in application Part 1, 1A, or 2.

Dated at _New York_ _New York_ on _5/14_ 19 _87_
City           State

(X) _____
Signature of Proposed Insured or of Applicant if Proposed Insured is a Child, Issue Age 0-14.

_____
Signature of Proposed Additional Insured if required.

Signature of Agent
_Marshall J. Walger_

_____, TRUSTEE
Signature of Purchaser if not Proposed Insured. (If corp. show firm's name and signature of authorized officer.)

EV4-155                                                                 3

EXHIBIT C

EXHIBIT C

# AXA EQUITABLE
**LIFE INSURANCE COMPANY**

A Stock Life Insurance Company
Home Office: 787 Seventh Avenue, New York, New York 10019

Flexible Premium Adjustable Life Plan. Insurance payable upon death before Final Policy Date. Policy Account payable on Final Policy Date. Adjustable Death Benefit. Premiums may be paid while insured person is living and before the Final Policy Date. Premiums must be sufficient to keep the policy in force. Policy Account based on declared interest rates. This is a non-participating policy.

No. 85-200



EXHIBIT C

# EXHIBIT D

**AXA | AXA EQUITABLE**                    **redefining** / standards

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC  28201-1047



000002 AX957501    

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 36 224 259 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life insurance protection.  However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter.  If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy.  You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
     ASU @ BSD-596

000002 AX957501 000002

**ΛXΛ | AXA EQUITABLE** | **redefining** / standards

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC 28201-1047



000003 AX957501 

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 37 205 147 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life Insurance protection. However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter. If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy. You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

000003 AX957501 000003



## AXA EQUITABLE                                         redefining/standards

NATIONAL OPERATIONS CENTER
P.O. BOX 1047
CHARLOTTE, NC 28201-1047

000004 AX957501   

MALCOLM H WIENER
66 VISTA DR
GREENWICH CT 06830

| | |
|---|---|
| Insured: | MALCOLM H WIENER |
| Policy Number: | 37 205 155 |
| Plan: | Flexible Premium Adjustable Life Insurance Universal Life |
| Associate: | DAVID HUNGERFORD, CHFC, CLU |
| Assoc. Phone: | (631) 385-5420 |
| Svc Ctr Phone: | (800) 777-6510 |
| Date: | December 2, 2013 |

## NOTICE OF POLICY TERMINATION

We do not want to lose you as a client.

And we do not want you to lose your valuable life insurance protection. However, your insurance coverage has terminated without value since the payment requested in our recent lapse notice has not been received.

Nevertheless, your policy may be reinstated, subject to our approval. To request reinstatement of this policy, the enclosed application for reinstatement must be completed, signed as indicated and returned to our office within 60 days of the date of this letter. If we approve your application for reinstatement, you will be notified of the amount you will need to send us to complete the reinstatement of this policy. You should note that we may request additional requirements in order to approve reinstatement of this policy. After 60 days, please contact your financial professional or our Service Center at the numbers shown above for the necessary reinstatement requirements.

For policies that are business or employer owned, you should consult with your tax advisor concerning possible application of tax law requirements where coverage is reinstated.

cc: DAVID HUNGERFORD, CHFC, CLU
    ASU @ BSD-596

000004 AX957501 000004

# EXHIBIT E



Malcolm H Wiener
66 Vista Drive
Greenwich CT 06830

*To Be Opened Only By The Insured*

**Date:** *March 24, 2014*

**Proposed Insured:** *Malcolm H Wiener*

**Application File #:** *36 224 259, 37 205 147,
37 205 155*

## ADVICE OF UNDERWRITING DECISION

This explanation of our underwriting decision is furnished to you as part of our practices described in the notice "Your Insurance Application & How It is Handled at the Axa-Equitable", which you have been given.

Your request for Reinstatement has been declined.

The decision results from our evaluation of specific items of information obtained from you in your application, or supplements to the application statements:
- *specifically information received from Dr Barry Boyd.*

Please see the reverse side of this notice for a detailed explanation of your rights to access and to correct, amend or delete and your rights to obtain and review specific items of information we have that support the reason for our decision.

Richard Jaegar, MD
Medical Director

*sh*

AXA Equitable Life Insurance Company
AXA Life and Annuity Company
1290 Avenue of the Americas, New York, NY 10104

You have a right to know the specific items of information we have that supports the reasons for our decision and the names and addresses of institutional sources of the information. Requests for such information should be made to us in writing at the address on the reverse side within 90 business days. We will answer within 21 business days of receipt.

You also have a right to see and obtain copies of such items of information – usually through a medical professional you name, in the case of medical information. If the information is incorrect, you have a right to have it corrected, amended or deleted.

Within 30 business days of our receipt of your written request you may have access to recorded information about you which is reasonably locatable and retrievable. This right does not extend to information which relates to and is collected in connection with or in reasonable anticipation of a claim of civil or criminal proceeding. We will inform you of the nature and substance of the information and the identity of any institutional source which gave us the information. If recorded, we will advise you of those persons to whom the information has been disclosed within two years before the request, or if not recorded, we will give you the names of the persons or organizations to whom such information is normally disclosed. If you wish, we can arrange for you to see this information or obtain a copy by mail. You may be asked to pay a reasonable charge for the cost of providing copies.

In all cases we reserve the right to disclose medical information through a medical professional you name.

You may request correction, amendment or deletion of any information in our files pertaining to you. We will respond within 30 business days.

We will tell you if, in fact, we complied with your request. If we do not agree with you, we will notify you of our refusal, give you our reasons, and give you the opportunity to file a concise statement of dispute with us. Your statement will be sent with any disclosure of the information which we make to others.

In either event we will notify any insurance support organization that furnished us the information, and any person you name who may have received such information within the preceding two years, of the dispute regarding the information. Your statement of dispute will be sent to these parties if we did not comply with your request.

A request to inspect or obtain a copy of a report furnished to us by a Consumer Reporting Agency should be made directly to the agency named. All other questions and requests should be sent to us at the address shown on this Advice of Underwriting Decision. If a disclosure of medical information may be involved, the request should include the full name and address of your physician to whom you wish us to write.