IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No: 3:18-CV-106

MALCOLM H. WIENER,

                Plaintiff,

v.

AXA EQUITABLE LIFE INSURANCE COMPANY, LLC,

                Defendant.

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER

## **PRELIMINARY STATEMENT**

To determine whether to grant Defendant AXA Equitable Life Insurance Company's ("Defendant") Motion to Transfer Venue from the Western District of North Carolina ("WDNC") to the Southern District of New York ("SDNY"), this Court must answer one question:

> **Do the factors this Court is required to consider to determine whether a transfer of venue favor transfer so strongly that the Court should disregard Plaintiff Malcolm Wiener's choice of the WDNC as the forum for this action?**

Because the answer to this question is **no**, the Court should deny Defendant's Motion to Transfer Venue.

Defendant premises its entire argument on the mistaken notion that the claims at issue in this action have already been the subject of discovery in and are inherently tied to the claims in a separate lawsuit pending in the SDNY ("New York Action") and have no relation to the WDNC. This contention is demonstrably false. The claims in the New York Action concern Defendant's wrongful failure to reinstate Plaintiff's life insurance policies. This action addresses claims based on Defendant's misrepresentations to the MIB—essentially a health verification clearinghouse—concerning Plaintiff's health history, which rendered Plaintiff uninsurable.

Plaintiff selected the WDNC as the forum for this action, and the WDNC is where Defendant took the actions on which Plaintiff bases his claims—namely Defendant's communications to the MBI. Given the relation between the forum selected by Plaintiff and Plaintiff's claims, the 11-factor test the Court must consider to determine whether a transfer from the WDNC is appropriate. Defendant's motion fails because the majority of the factors favor venue remaining in the WDNC, including:

- Plaintiff's choice of forum;
- the residence of the parties;
- the relative ease of access of proof;
- the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;
- the relative advantages and obstacles to a fair trial;
- the administrative difficulties of court congestion; and
- the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action.

In fact, none of the venue transfer factors conclusively favors transfer to the SDNY. Because the factors concerning venue transfer decisively weigh in favor of venue remaining in the WDNC, the Court should deny Defendant's Motion to Transfer Venue.

## STATEMENT OF FACTS

Between 1986 and 1987, Plaintiff, a Connecticut resident, purchased from Defendant three universal life insurance plans, which totaled Sixteen Million Dollars ($16,000,000.00) (the "Policies"). Defendant is an international life insurance company incorporated under New York law. Defendant has an operations hub in Charlotte, North Carolina that employs over 500 employees. Plaintiff's former employer assumed the responsibility of paying the premiums and,

01075-001/00114926-1     2

Case 3:18-cv-00106-RJC-DSC  Document 15  Filed 05/10/18  Page 2 of 15

more generally, maintaining these Policies. After paying the premiums on the policies for twenty-two years—an amount totaling over three million dollars ($3,000,000.00)—the Policies lapsed in 2009 due to an oversight of Plaintiff's former employer. Defendant required Plaintiff to complete a reinstatement application, which Defendant subsequently approved. Once reinstated, the parties continued their business relationship.

In December 2013, Plaintiff received another notice that the Policies had lapsed and were terminated. After receiving the notice, Plaintiff reached out to the same employee of Defendant that he had worked with to reinstate his Policies in 2009. Plaintiff asked the employee what he needed to do to reinstate the Policies. Defendant's employee advised Plaintiff to file an application for reinstatement, which Plaintiff did on December 23, 2013. In March 2014, Defendant informed Plaintiff that, based on information provided by Plaintiff's doctor, it had denied his application for reinstatement—despite the fact that his health had not changed in any material way between the two reinstatement applications.

On May 13, 2015, Plaintiff filed a lawsuit against, among others, Defendant styled as *Malcolm Wiener v. AXA Equitable Life Insurance Company, David Hungerford, AXA Advisors, LLC, and AXA Network, LLC*, Civil Action No. 1:16-CV-04019 in the United States District Court for the District of Connecticut, which was ultimately transferred to the Southern District of New York (the "New York Action"). The claims alleged in the New York Action center on Defendant's actions in terminating the Policies—namely whether the appropriate notices regarding the status of the Policies were sent to Plaintiff. In August and October 2017, Plaintiff deposed certain employees of Defendant and learned for the first time that Defendant had disseminated incorrect information regarding Plaintiff's health history to third parties without Plaintiff's knowledge.

Discovery closed in the New York Action on December 22, 2017.[1] The New York Action remains pending.

This action involves some of the same parties and basic background facts as the New York Action, but the claims here are distinct from those in the New York Action and do not concern Defendant's denial of the Policies' reinstatement. Defendant initially sent Plaintiff's reinstatement application to its Charlotte operations center where it was then assigned to an underwriter. *See* Deposition of Hallie Hawkins ("Hawkins Depo."), p. 19.[2] As set forth in the Complaint in this action, Defendant's underwriter reviewed Plaintiff's reinstatement application and the attached medical records for Plaintiff's medical conditions and health events that would affect insurability. In the process of doing so, Defendant's underwriter read Plaintiff's medical records incorrectly and falsely attributed several serious medical conditions to Plaintiff that he had not experienced. The underwriter then reported the erroneous medical conditions to Defendant's Charlotte operations center who in turn reported them to the MIB—a membership corporation owned by hundreds of insurance companies that collects and aggregates medical information from life insurance applicants based on health information reported by the member life insurance companies. Life insurance organizations use the MIB to verify the medical history of new applicants. The information Defendant provided to the MIB concerning Plaintiff can be distributed to any member life insurance company that requests it. The medical information Defendant reported to the MIB about Plaintiff was riddled with inaccuracies and created an incorrectly damning medical history for Plaintiff. Defendant made its report regarding Plaintiff's health to

---

[1] A copy of the Modified Civil Discovery Plan and Scheduling Order setting the discovery deadlines in the New York Action is attached as <u>Exhibit A</u>.

[2] A copy of this portion of the Hawkins Depo. conducted in the New York Action is attached hereto as <u>Exhibit B</u>. The individual identified as Sandra Huffstedler is an employee of Defendant located in Charlotte.

the MIB without confirming its conclusions with Plaintiff's doctor, without notifying Plaintiff of the medical conditions Defendant reported to the MIB, and without providing any means of ensuring the accuracy of the personal health information Defendant was reporting. The erroneous report rendered Plaintiff incorrectly and needlessly uninsurable.

Plaintiff filed this action in the WDNC on January 25, 2018, alleging claims for Negligent Misrepresentation, Libel, Negligence, and Unfair and Deceptive Trade Practices based on the allegations detailed herein. Defendant has moved the Court to transfer the action to the Southern District of New York.

## ARGUMENT

**I.  The Court should not transfer this action to the SDNY unless Defendant can establish that the applicable factors strongly outweigh Plaintiff's choice to file the action in the WDNC.**

This Court may transfer this civil action to any other district where it might have been brought only if the Court determines a transfer is in the interests of justice. *See* 28 USC § 1404. There is no dispute that Plaintiff could have filed this action in the SDNY where Defendant seeks its transfer. Therefore, the Court need only decide whether such transfer is in the interests of justice.

To determine whether a transfer to the SDNY is appropriate, the Court must consider multiple factors, including: (1) the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantages and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity

case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws. *See e.g., Rice v. Bellsouth Advertising & Pub. Corp.*, 240 F. Supp. 2d 526, 529 (W.D.N.C. 2002). The Court must analyze the eleven factors based on quality, not just quantity. *Id*. at 529.

A motion should not be granted if transfer "would merely shift the inconvenience from the defendant to the plaintiff, or if the equities lean but slightly in favor of the movant after all factors are considered." *Uniprop Manufactured Hous. Cmtys. Income Fund II v. Home Owners Funding Corp.*, 753 F. Supp. 1315, 1322 (W.D.N.C. 1990). "In order to determine whether transfer is proper, a balance must be struck between the competing interests; and unless the balance is tipped strongly in favor of the moving party, plaintiff's choice of forum should not be disturbed." *Borgwarner, Inc. v. Honeywell Int'l, Inc.*, No. CIV. 1:07-CV-184, 2008 WL 394991, at *3 (W.D.N.C. Feb. 11, 2008) (citing *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984)).[3] Defendant bears the burden of showing that the balance of competing interests strongly favors a transfer from the WDNC to the SDNY is appropriate. *Minute Man Anchors, Inc. v. Oliver Techs., Inc.*, No. 1:04 CV 27, 2005 WL 1871164, at *13 (W.D.N.C. Aug. 5, 2005)[4]

II. **Plaintiff's choice of the WDNC as the forum for this action is entitled substantial weight based on the relation of the claims at issue to this district.**

A plaintiff's selection of the forum for this action generally is entitled to strong consideration in any transfer analysis. *Borgwarner* at *3 (citing *Minute Man Anchors, Inc. v. Oliver Technologies*, Inc., 2005 WL 1871164, at *14 (W.D.N.C. 2005)). "[I]t is 'black letter law', that 'a plaintiff's choice of a proper forum is a paramount consideration in any determination of a

---

[3] This is an unpublished decision. A true and accurate copy of this decision is attached hereto as Exhibit C.
[4] This is an unpublished decision. A true and accurate copy of this decision is attached hereto as Exhibit D.

transfer request, and that choice ... should not be lightly disturbed.' " *W. Steer-Mom 'N' Pop's, Inc. v. FMT Investments, Inc.*, 578 F. Supp. 260, 265 (W.D.N.C. 1984) (citations omitted). "While some courts have placed less emphasis on choice of forum, this Court has clearly not been one of those courts." *Uniprop*, 753 F. Supp. at 1323. Plaintiff's selection of the WDNC is entitled to further weight due to the connection between the WDNC and the claims Plaintiff asserts in this action. *See Triad Intern. Maintenance Corp. v. Aim Aviation, Inc.*, 473 F. Supp. 2d 666, 669-670 (M.D.N.C. 2006). Contrary to Defendant's suggestion of "blatant forum shopping," Plaintiff's choice of forum is based on Defendant's presence and actions in Charlotte, North Carolina. That presence and those actions are central to Plaintiff's claims and that connection justifies that the venue for this action remain the WDNC.

Plaintiff's claims are based on misrepresentations Defendant made from its operations center in Charlotte to the MIB in Massachusetts. In an attempt to limit this action's connection to Charlotte, Defendant argues this action concerns only one North Carolina employee acting in a ministerial capacity. That argument, however, grossly oversimplifies the connection between Charlotte and Plaintiff's claims.

Defendant's actions were not the single ministerial acts of an employee; they were the actions of a large insurance company with a 500+ employee operation center in Charlotte where it carried out its business, including the communications described in the Complaint. Although Defendant may have collected and assessed the misinformation at issue in New York, Connecticut or elsewhere, it chose to channel that misinformation to its operations center in Charlotte and make communications concerning that misinformation from Charlotte to the MIB, where it would be made available to all participating insurers. That the communication occurred from Charlotte was not a random coincidence; it was Defendant's chosen business practice through its operation

center. Without the actions Defendant took in North Carolina, Plaintiff would not have any of the claims it asserts in this lawsuit. Defendant should not be allowed to establish an operations center in North Carolina, direct certain business through that operations center, and then claim it is inconvenient to litigate claims in North Carolina based on that conduct. Plaintiff's claims have a substantial relationship with this forum, and Defendant must establish that the remaining factors weigh strongly in its favor to warrant a transfer to the SDNY. This factor favors retention of this suit in this District—and "[t]he court must give this factor **great weight**." *Borgwarner* at *3 (Court's emphasis).

### III. The residence of the parties favors venue remaining in the WDNC.

Plaintiff is a resident of Connecticut. Defendant is incorporated in New York and purports to have its principal place of business in New York. However, for purposes of venue, "an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C.A. § 1391(c)(2); *see also Trivette v. Walmart Stores, Inc.*, No. 3:17-CV-00560, 2017 WL 5179533, at *2 (W.D.N.C. Nov. 8, 2017).[5] Here, Defendant has an operations center in Charlotte that employs over 500 people and is where Defendant took the actions on which Plaintiff bases its claims. Accordingly, Defendant is subject to jurisdiction in the WDNC and is a resident of the WDNC for venue purposes under 28 U.S.C.A. § 1391(c)(2). Given Plaintiff's selection of the WDNC and Defendant's residency in the WDNC, this factor favors venue remaining in the WDNC.

---

[5] This is an unpublished decision. A true and accurate copy of this decision is attached hereto as <u>Exhibit E</u>.

### IV. The relative ease of access of proof factor favors venue remaining in the WDNC.

Contrary to Defendant's contentions, the WDNC will provide ease of access to proof comparable to, if not greater than, the SDNY. Plaintiff's argument relies heavily on its assertion that the discovery in the New York Action and this action are identical. Defendant suggests that all sources of proof in this action are tied to the same proof to be offered in the New York Action and exist almost exclusively in New York and Connecticut. Defendant's position, however, misunderstands the claims at issue and mischaracterizes their connection with and reliance upon the New York Action.

Plaintiff's claims in this action are different from the claims set forth in the New York Action and require consideration of different facts and law. Although some of the parties and basic background facts are the same, the claims in the respective actions are distinct and the outcome of either will not affect the other. The New York Action concerns Defendant's wrongful termination of Plaintiff's life insurance policies. The critical underwriting and related decisions concerning those claims took place in New York. This action concerns misrepresentations Defendant made from North Carolina to the MIB regarding Plaintiff's health. Accordingly, Defendant's suggestion that discovery completed in the New York Action—which included only one North Carolina deposition—is dispositive and can be relied upon for this action is fundamentally wrong.

The acts at the center of this action took place in Charlotte; therefore the parties should anticipate substantially more ease of access of proof in the WDNC in this action than in the New York Action. Specifically, witnesses and documents related to Defendant's misrepresentations in question and the business practices that led to those miscommunications are anticipated to be in Charlotte. While certain discovery in this matter may need to be conducted in New York, Connecticut or elsewhere, such burdens are comparable to, if not worse than, the burdens that

would be experienced with discovery in Charlotte if the case were transferred to the SDNY. Further, most, if not all, of Defendant's documents should be available in Charlotte under the circumstances, and nearly all documents should be available electronically. *See Commercial Equip. Co. v. Barclay Furniture Co.*, 738 F. Supp. 974, 977 (W.D.N.C. 1990) (holding that when one of the parties will suffer an inconvenience in transporting proof to another forum, the relative access to sources of proof is a neutral factor). *See also Duke Energy Florida, Inc. v. Westinghouse Elec. Co.*, 2014 WL 2572960, at *6 (W.D.N.C. June 9, 2014).[6] Finally, Plaintiff anticipates there may be multiple witnesses from North Carolina who would need to testify if the case is transferred to New York, so in either case some inconvenience will be experienced. This factor, therefore, is either neutral or favors venue remaining in this district.

V.  **The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses favors venue remaining in the WDNC.**

Similar to the prior factor, the parties likely will experience some level of inconvenience in either forum because certain non-party witnesses may not be compelled to attend trial whether in North Carolina or New York. However, Plaintiff anticipates there may be several Charlotte-based witnesses to provide testimony concerning Defendant's business practices related to communications regarding insureds' or applicants' health. Such discovery was not conducted in the New York Action because Plaintiff only discovered the claims in this action in August and October 2017. Although Defendant's Charlotte-based employees should be available for trial in either venue regardless of compulsory means, the WDNC will have subpoena power over those witnesses if they were not voluntarily produced to testify at trial in Charlotte. *See IHFC Properties, LLC v. APA Marketing, Inc.*, 850 F. Supp. 2d 604, 624 (2012) (noting that out of state

---

[6] This is an unpublished decision. A true and accurate copy of this decision is attached hereto as <u>Exhibit F</u>.

01075-001/00114926-1                           10
Case 3:18-cv-00106-RJC-DSC   Document 15   Filed 05/10/18   Page 10 of 15

witnesses may be persuaded to attend trial through other means, including as employees of parties). This factor weighs in favor of venue remaining in the WDNC.

### VI. The possibility of a view is not a factor in this action.

This factor has no bearing on the circumstances at issue in this action.

### VII. The enforceability of a judgment is a neutral factor.

A judgment should be enforceable in either district, so this factor is neutral.

### VIII. The relative advantages and obstacles to a fair trial favor venue remaining in the WDNC.

One potential obstacle to a fair trial for Plaintiff is Defendant's stated intention to seek to consolidate this action with the New York Action, which has been pending since 2015, if the matter is transferred to the SDNY. Defendants further acknowledge discovery is closed in the New York Action. If this action is transferred to the SDNY and consolidated with the New York Action, Plaintiff could be prohibited from obtaining discovery for the claims in this action, which are different from those in the New York Action. Such a result would be unfair because (1) Plaintiff did not know about the claims in this lawsuit until late in the New York Action and (2) discovery in the New York Action was not focused on the claims in this action.

The New York Action focuses on Defendant's decision not to reinstate Plaintiff's life insurance policies. The claims in this action are based on communications Defendant made to the MIB concerning Plaintiff's health history. As explained above, while there are parties and some basic facts in common between the two actions, the claims have different legal bases and factual premises. Plaintiff only learned of its claims in this action as a result of discovery conducted late in the New York Action. No credible argument can be made that discovery completed in the New York Action is sufficient for the claims in this action. However, that is precisely the threat to Plaintiff if this matter is transferred to the SDNY and consolidated with the New York Action in

which discovery is now closed. Given this potential outcome in the event of a transfer, this factor favors venue remaining in the WDNC.

IX. **Other practical problems that make a trial easy, expeditious, and inexpensive is a neutral factor.**

As explained herein, the claims in this action are separate and distinct from the claims in the New York Action, so any efficiencies potentially created by the existence of the same parties and certain background facts are substantially reduced. The fact that discovery has yet to be conducted for the claims in this action effectively eliminates any such efficiencies altogether. This factor is neutral.

X. **The administrative difficulties of court congestion factor favors venue remaining in the WDNC**.

A comparison of both districts shows that this district has fewer filings, fewer civil filings, fewer pending cases per Judgeship. Further, the comparison indicates that this district disposed of cases an average of ten months faster than the SDNY. The comparison is as follows:

|  | W.D.N.C. in 2017 | S.D.N.Y. in 2017 |
|---|---|---|
| Filings | 2,296 | 12,721 |
| Civil Filings | 254 | 379 |
| Pending Cases per Judgeship | 388 | 616 |
| Median Time (months) from Filing to Trial | 19.6 | 29.4 |

*See* Administrative Office of the United States Courts, Federal Court Management Statistics, 2017, at 11 and 23. Accordingly, this factor favors venue remaining in this district.

XI. **The interest in having localized controversies settled at home factor and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action factor favor venue remaining in the WDNC.**

This action involves parties, witnesses and actions that took place in North Carolina, New York, Connecticut and Massachusetts, so it cannot be described as purely localized. However,

Defendant directed the actions at issue through its operations center in Charlotte. Therefore, the locale with the greatest interest in addressing the particular claims alleged by Plaintiff is North Carolina, and to the extent this factor favors any position, it necessarily favors venue remaining in the WDNC.

This action is also a diversity case, and Plaintiff has alleged, among other claims, a North Carolina statutory claim for unfair and deceptive trade practices based on the actions of Defendant as alleged in the Complaint. Given this Court's familiarity with the state law that governs this action, this factor favors venue remaining in the WDNC.

### XII. The avoidance of unnecessary problems with conflict of laws factor is neutral.

Plaintiff is unaware of any unnecessary problems with conflicts of laws that would be avoided regardless of whether the case is transferred; therefore, this factor is neutral.

### CONCLUSION

Based on the foregoing analysis, the factors governing whether a venue transfer is appropriate both quantitatively and qualitatively support venue remaining in the WDNC. Under no circumstances can Defendant establish that the venue transfer factors are so strong to overcome the deference the Court should afford to Plaintiff's choice of forum of the WDNC. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Transfer.

This 10th day of May, 2018.

ALEXANDER RICKS PLLC

/s/ Kerry L. Traynum
Kerry L. Traynum
N.C. State Bar No.: 32968
kerry@alexanderricks.com
Tel: (980) 335-0712

Alice C. Richey
N.C. State Bar No.: 13677
alice@alexanderricks.com
Tel: (980) 335-0720

4601 Park Rd.; Suite 580
Charlotte, NC 28209
Telephone: (980) 335-0712
Facsimile: (704) 365-3676

Counsel for Plaintiff Malcolm H. Wiener

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

      Aaron C. Lang
      Cadwalader, Wickersham & Taft LLP
      227 West Trade Street
      Charlotte, NC 28202
      aaron.lang@cwt.com

      Robert W. Cassot
      Russell N. Jarem
      Morrison Mahoney LLP
      One Constitution Plaza, 10th Floor
      Hartford, CT 06103-1810
      rcassot@morrisonmahoney.com
      rjarem@morrisonmahoney.com

This 10th day of May, 2018.

                                              ALEXANDER RICKS PLLC

                                              /s/ Kerry L. Traynum
                                              Kerry L. Traynum
                                              N.C. State Bar No.: 32968

                                              4601 Park Rd.; Suite 580
                                              Charlotte, NC 28209
                                              Telephone: (980) 335-0712
                                              Facsimile: (704) 365-3676
                                              kerry@alexanderricks.com

                                              Counsel for Plaintiff Malcolm H. Wiener