UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MALCOLM WIENER,<br><br>        Plaintiff,<br><br>v.<br><br>AXA EQUITABLE LIFE INSURANCE COMPANY,<br><br>        Defendant. | No. 3:18-CV-106-RJC-DSC |

**DEFENDANT'S SURREPLY IN OPPOSITION TO PLAINTIFF'S
MOTION TO COMPEL PRODUCTION AND MOTION TO STRIKE
DECLARATION OF JONATHAN SAGER OR, IN THE ALTERNATIVE,
TO PRECLUDE EVIDENCE OR TESTIMONY FROM THE MEDICAL
INFORMATION BUREAU AND JONATHAN SAGER**

Defendant Equitable Financial Life Insurance Company (f/k/a AXA Equitable Life Insurance Company) ("Equitable") respectfully submits this surreply in opposition to Plaintiff's Motion to Compel Production and Motion to Strike Declaration of Jonathan Sager or, in the Alternative, to Preclude Evidence or Testimony from the Medical Information Bureau and Jonathan Sager (the "MIB Motion").

**ARGUMENT**

Plaintiff's reply brief in support of the MIB Motion is replete with misrepresentations and distortions of the record, four of which are addressed in this surreply.

*First*, Plaintiff falsely claims that his motion does not seek the same relief as his prior motion to compel, which this Court denied, (*see* Dkt. No. 51) (the "Denied Motion to Compel").

Plaintiff argues that the Denied Motion to Compel sought "a wide range of documents, including but not limited to, Defendant's own guidelines, manuals, procedures or policies," (Reply Br., Dkt. No. 95, at 4.) Plaintiff conveniently fails to mention that the Denied Motion to Compel also sought "MIB procedures, codes, standards, rules or guidelines," (Denied Motion to Compel, Dkt. No. 51, at 8)—exactly what Plaintiff now seeks. The Court has already ruled on this issue, meaning the MIB Motion is essentially a motion for reconsideration. "[T]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence . . . ." *Chhaparawal v. W. Va. Univ. Hosps.*, 2008 U.S. Dist. LEXIS 52752, at *4 (N.D. W. Va. Jul. 9, 2008). Plaintiff has pointed to no error of law or newly discovered evidence that would justify a departure from the Court's prior ruling.

*Second*, Plaintiff misleads the Court when he claims that the MIB Motion is timely and proper "because Plaintiff did not learn of Defendant's use of the [MIB General Rules and Primer] until Defendant filed the Sager Declaration." (Reply Br., Dkt. No. 95, at 2.) That is nonsense. Equitable served its expert's report, which discusses the MIB rules at length, more than eight months ago, on November 22, 2019. (*See* Lynn Patterson Report, Dkt. No. 45-5, Section 2.) In fact, Mr. Patterson's discussion of MIB rules was precisely the basis on which Plaintiff sought to compel production of the MIB rules in the Denied Motion to Compel: "Defendant's expert disclosure references MIB rules and regulations, which Defendant, as an MIB member should be able to produce but refuses to do so." (Denied Motion to Compel, Dkt. No. 51, at 7.) Plaintiff cannot be heard to argue that he had no idea that the MIB's rules were in play until Equitable submitted Mr. Sager's declaration, as Plaintiff underscored Equitable's reliance on MIB rules in the Denied Motion to Compel: "In Defendant's supporting and reply briefs concerning its Motion for Summary Judgment, Defendant reiterates MIB requirements as justification for its

misrepresentations and generally references MIB rules and guidelines but has not produced specific authority for those requirements." (Denied Motion to Compel, Dkt. No. 51, at 7.)[1]

*Third*, Plaintiff misrepresents the discovery record in several ways. He first attempts to blame Equitable for his own delay by claiming that Equitable should have told Plaintiff in October 2019 that it did not have the 2014 MIB rules and procedures. (*See* Reply Br., Dkt. No. 95, at 5.) But Plaintiff did not even request those rules until December 23, 2019. Here is what happened:

- The parties engaged in a Rule 26(f) conference in March 2019.

- Plaintiff inexplicably waited nearly six months to serve its first set of discovery requests on August 30, 2019. (*See* Plaintiff's First Set of Requests for Production of Documents, Dkt. No. 57-2.) *And while those requests called for Equitable's own policies, procedures, and manuals, they did not call for the MIB's rules.*

- The first time Plaintiff requested the MIB's rules was in his *second* set of requests for production, which was served on December 23, 2019, the last day of discovery. (*See* Plaintiff's Second Set of Requests for Production, Dkt. No. 50-2, Request No. 2 ("All manuals, guidelines, rule books, code books, or other materials in your possession, custody or control concerning MIB procedures, codes, standards, rules or guidelines whether or not created by You, including, without limitation, any materials created by or obtained from the MIB.").)

- Defendant timely objected to producing the MIB's rules on January 22, 2020.

- Plaintiff then sat on his hands for *seven weeks* before challenging Equitable's objection to producing MIB's rules in a letter dated March 11, 2020. (*See* Letter from K. Traynum, Mar. 11, 2020, Dkt. No. 50-7.) Equitable promptly advised Plaintiff in response to that letter that it does not have the 2014 MIB manual. (*See* Dkt. No. 50-8, at 3.)

---

[1] Plaintiff attempts to undercut Equitable's motion to preclude testimony by Plaintiff's expert on the ground that the motion relies on non-produced MIB rules, (*see* Reply Br., Dkt. No. 95, at 1). Yet the thrust of Equitable's motion is that: Mr. Burgess lacks the skill, training, and experience that would qualify him as an expert on underwriting practices, let alone the rule of MIB reporting and codes in that process; he is uninformed about the facts of the case (he had no idea, for example, that his client attempted to obtain life insurance in 2014); and he did not employ any recognized methodology in forming his opinions. (*See* Motion to Preclude Expert Testimony, Dkt. No. 74, *passim*). The declaration of Mr. Sager was submitted merely to underscore that Mr. Burgess is uninformed about how MIB reporting works. And Plaintiff cannot be heard to complain about references to MIB rules in Mr. Sager's declaration when Plaintiff had every opportunity to seek discovery regarding those rules from the MIB.

3

Plaintiff's attempt to claim that Equitable sandbagged him is a gross distortion of the record. In any event, nothing prevented Plaintiff from seeking discovery from the MIB at any point in the discovery period. It is not Equitable's fault that Plaintiff incorrectly assumed Equitable had a copy of the 2014 MIB rules five years later—and Equitable does not appreciate the insinuation that it has misrepresented what is in its files, (*see* Reply Br., Dkt. No. 95, at 2 (asserting that "[i] is patently unbelievable" that Defendant does not have the historical MIB rules)).[2] Plaintiff should not be rewarded for his utter lack of diligence in taking discovery from Equitable and his complete failure to seek discovery from the MIB.

    Plaintiff further distorts the discovery record when he claims that Equitable improperly failed to update its initial disclosures to include Mr. Sager. (*See* Reply Br., Dkt. No. 95, at 5–6.) Plaintiff speculates that Equitable identified Mr. Sager as a potential witness before it objected to producing the MIB rules months ago, (*see id.* at 6 ("Defendant failed to supplement its initial disclosures to identify Sager and the MIB materials *and then* actively opposed producing those materials . . . .") (emphasis added)). Yet Equitable did not consider calling Mr. Sager as a witness or request a declaration from him until less than a week prior to filing Defendant's witness list on June 19, 2020. Including Mr. Sager on the witness list days after identifying him as a potential witness satisfied Equitable's burden under Rule 26(e), which calls for prompt supplementation of disclosures in any "writing." *See* Fed. R. Civ. Proc. 26(e)(1)(A). In any event, the purpose of initial disclosures is to guide discovery, which had long closed by that time.

---

[2] There is no basis for Plaintiff's claim that Equitable breached a duty to preserve the MIB rules in effect in 2014 because they were referenced in a deposition in 2017—long before this case was filed—in a separate lawsuit that does not concern MIB reporting.

Plaintiff also mischaracterizes Sandra Huffstetler's deposition testimony. Contrary to Plaintiff's assertion, she did not testify that MIB member companies can freely access MIB files without submitting search requests to the MIB. She merely testified that the information about insurance applicants can be reviewed on the "ESP" (Elite Sales Processing) platform. (*See* Reply Br., Dkt. No. 95, at 8.) ESP is a third-party administrator that provides underwriting support to certain MIB members. (*See* https://www.elitesalesprocessing.com/.) Ms. Huffstetler did not testify that using ESP's platform eliminates the need to submit a search request to the MIB. And Mr. Sager's declaration is clear that search requests are required to obtain information on an applicant; that MIB maintains extended records of those requests; and that no search requests were submitted on Mr. Wiener. (*See* Declaration of Jonathan Sager, Dkt. No. 95-1, ¶¶ 7, 8, 15.) Plaintiff thus incorrectly asserts that "there is no evidence—in Sager's Declaration or otherwise" that MIB would have records of members reviewing Mr. Wiener's MIB file on the ESP platform. (*See* Reply Br., Dkt. No. 95, at 8.)

*Fourth*, Plaintiff cannot be heard to claim that the portion of the MIB Motion seeking to preclude testimony from the MIB or Mr. Sager is anything other than an untimely motion *in limine*. As discussed in Equitable's opposition brief, Plaintiff's motion to preclude testimony from Mr. Sager was filed seventeen days after Mr. Sager was disclosed as a witness, fourteen days after the deadline for motions *in limine* (which Plaintiff never sought to extend), and at the end of what would have been the first day of trial. Plaintiff claims that the MIB Motion "is not a motion in limine because it simply seeks production of documents on which Defendant claims to rely." (Reply Br. at 2.) But the alternative relief he seeks is to preclude testimony—precisely the stuff of a motion *in limine*. Tacking an untimely motion *in limine* onto another (baseless and untimely)

5

motion to compel does not change the fact that he is seeking to preclude evidence at trial that should have been the subject of a motion *in limine*.[3]

## CONCLUSION

For the reasons discussed herein and in Equitable's opposition brief, Defendant respectfully requests that Court deny the MIB Motion in its entirety.

Respectfully submitted this 31st day of July, 2020.

By: */s/ Aaron C. Lang*

Aaron C. Lang
N.C. Bar No.: 51511
Cadwalader, Wickersham & Taft LLP
227 West Trade Street
Charlotte, NC 28202
aaron.lang@cwt.com
Telephone: 704-348-5145
Telefax: 704-348-5200

Robert Cassot (admitted *pro hac vice*)
Federal Bar No.: ct24094
Morrison Mahoney LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06103
rcassot@morrisonmahoney.com
Telephone: 860-616-4441
Telefax: 860-244-3800

*Counsel for Defendant AXA Equitable Life Insurance Company*

---

[3] Equitable rests on its prior briefing with respect to the other issues in Plaintiff's reply, including his newfangled, baseless assertion that the MIB has violated HIPAA—a transparent attempt to distract the Court from the real issues at hand.

# CERTIFICATE OF SERVICE

   I hereby certify that a copy of the foregoing was served via e-mail, pursuant to the parties' agreement, on July 31, 2020, to the following counsel:

*Attorney for Plaintiff*
Kerry L. Traynum, Esq.
kerry@skufcalaw.com

              BY:  /s/ *Aaron C. Lang*
                 Aaron C. Lang