UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00106-RJC-DSC

| MALCOLM WIENER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | ORDER |
| AXA EQUITABLE LIFE INSURANCE COMPANY, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**THIS MATTER** comes before the Court on Defendant's motions in limine, (Doc. Nos. 71 to 73), Defendant's motion to exclude expert testimony, (Doc. No. 74), and Plaintiff's motion to compel and strike, (Doc. No. 92).

I. BACKGROUND[1]

Defendant is an insurance company and member of the Medical Information Bureau ("MIB"), a corporation owned by its member life and health insurance companies. The MIB serves as an information exchange in that its member companies contribute to the MIB database information about insurance applicants that was obtained during the underwriting process, which is then available to other member companies. When an MIB member completes the underwriting of an insurance application, it must report to the MIB information involving impairments listed in the MIB coding manual that it obtained during its underwriting of the

---

[1] The background of this case is more fully set forth in the Court's summary judgment order. (Doc. No. 63.)

individual's application. Any codes reported by an MIB member about an applicant are maintained in MIB's database and are available to other MIB members who obtain the applicant's authorization to use the MIB as an information source.

In 1986 and 1987, Plaintiff purchased from Defendant three life insurance policies. On December 2, 2013, Defendant notified Plaintiff by letter that the policies had terminated but could be reinstated subject to Defendant's approval. Plaintiff submitted reinstatement applications along with the materials required by Defendant for medical evidence of insurability. After underwriting Plaintiff's reinstatement applications, Defendant reported several MIB codes signifying different physical and mental conditions reflected in Plaintiff's medical records.[2] Defendant ultimately denied Plaintiff's reinstatement applications.

The termination of the policies is the subject of an earlier lawsuit pending in the Southern District of New York, Case No. 1:16-cv-04019-ER ("the SDNY action"). In this action, Plaintiff challenges the reasonableness of Defendant's assessment of Plaintiff's medical history and conditions and subsequent reporting of such information to the MIB. Following summary judgment, the sole claim proceeding to trial is Plaintiff's negligence claim.

Defendant filed three motions in limine to exclude (1) argument and evidence that any life insurance company rejected Plaintiff's application for life insurance based on its review of MIB codes reported by Defendant, (Doc. No. 71); (2) evidence regarding the circumstances surrounding Defendant's termination of Plaintiff's

---

[2] There is conflicting evidence as to which MIB codes Defendant reported.

2

Case 3:18-cv-00106-RJC-DSC   Document 109   Filed 08/24/20   Page 2 of 18

policies and denial of Plaintiff's reinstatement applications, (Doc. No. 72); and (3) argument and evidence that damages should be awarded based on an increase in the cost of life insurance, (Doc. No. 73). Defendant also filed a motion under Federal Rule of Evidence 702 to exclude the testimony of Plaintiff's expert, Stephen C. Burgess, as well as any expert testimony of Dr. Ori Ben-Yehuda and Dr. Barry Boyd. (Doc. No. 74.) Plaintiff filed a motion to compel production and to strike the declaration of Jonathan Sager, the MIB's Executive Vice President and General Counsel. (Doc. No. 92.) In the alternative, Plaintiff moves to exclude evidence or testimony from the MIB and Sager at trial. The motions have been fully briefed and are ripe for adjudication.

## II. DEFENDANT'S MOTIONS

### A. Motion to Exclude Evidence that any Life Insurance Company Rejected Plaintiff's Application for Life Insurance Based on Its Review of MIB Codes Reported by Defendant

After Defendant denied Plaintiff's reinstatement applications, Plaintiff engaged Sanford Robbins, an insurance agent, to seek a replacement policy. On Plaintiff's behalf, Robbins submitted at least three informal applications for life insurance. Defendant contends that because there is no evidence that any life insurance company rejected Plaintiff's application based on the MIB codes, Plaintiff should be precluded from arguing or offering such evidence at trial.

The Court agrees with Defendant. There is no evidence that any life insurance company rejected Plaintiff's application based on its review of the MIB codes reported by Defendant. Indeed, in his response in opposition to Defendant's motion, Plaintiff

3

does not argue that any life insurance company rejected Plaintiff's application based on its review of Plaintiff's MIB file or otherwise. (See Doc. No. 89.) John Hancock, to whom Robbins sent an informal application, declined Plaintiff's application but did so based only on its review of the medical records, not Plaintiff's MIB file. Principal Life Insurance Company reviewed only Plaintiff's medical records and tentatively approved his informal application at a Table 4 rating subject to a full underwriting and MIB check upon receipt of a formal application, which Plaintiff never submitted. Robbins also submitted an informal application to Security Mutual Life Insurance Company of New York, and there is conflicting evidence as to whether Security Mutual reviewed Plaintiff's MIB file in considering Plaintiff's informal application. Nevertheless, Security Mutual did not deny Plaintiff's application, but instead tentatively approved it at a Table 4 rating, and Plaintiff never submitted a formal application.

Therefore, the Court grants Defendant's motion and excludes argument and evidence that any life insurance company rejected Plaintiff's application for life insurance based on its review of MIB codes reported by Defendant.[3]

---

[3] This ruling is limited to excluding argument and evidence that any life insurance company rejected Plaintiff's application for life insurance based on its review of Plaintiff's MIB file. As discussed above, Security Mutual tentatively approved Plaintiff's application at a Table 4 rating, and there is conflicting evidence as to whether Security Mutual reviewed Plaintiff's MIB file in considering Plaintiff's application.

4

B.  Motion to Exclude Evidence Regarding the Circumstances of Defendant's Termination of Plaintiff's Policies and Denial of Plaintiff's Reinstatement Applications

Defendant argues that evidence regarding the circumstances surrounding Defendant's termination of Plaintiff's policies and denial of Plaintiff's reinstatement applications in 2013 should be excluded because such evidence (1) is not relevant, (2) would serve only to confuse or mislead the jury, and (3) would needlessly lengthen the trial. Plaintiff argues that he should be allowed to provide the background and context necessary for the jury to understand his relationship and history with Defendant and the basis for his reinstatement applications.

The Court concludes that evidence regarding the circumstances surrounding Defendant's termination of Plaintiff's policies and denial of Plaintiff's reinstatement applications in 2013 is not relevant. Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Plaintiff's negligence claim concerns only Defendant's reasonableness in assessing Plaintiff's medical history and conditions and subsequent reporting of that information to the MIB. The allegedly wrongful termination of Plaintiff's policies is the subject of the SDNY action. The circumstances surrounding that termination and Defendant's denial of Plaintiff's reinstatement applications are neither relevant to the reasonableness of Defendant's assessment of Plaintiff's medical history and subsequent reporting to the MIB nor necessary to provide background and context. The mere facts that Defendant terminated Plaintiff's policies and denied Plaintiff's reinstatement applications are

5

sufficient to provide the necessary background and context to the jury. Therefore, the Court grants Defendant's motion and excludes evidence regarding the circumstances surrounding Defendant's termination of Plaintiff's policies and denial of Plaintiff's reinstatement applications in 2013.

The Court notes, however, that Plaintiff also submitted a reinstatement application in 2008, which was approved. Plaintiff has indicated that he will introduce evidence that in underwriting Plaintiff's 2008 reinstatement application, Defendant did not report to the MIB conditions it subsequently reported in underwriting Plaintiff's 2013 reinstatement applications. The admissibility of such evidence is not before the Court at this time, and the Court will rule on its admissibility if and when it is offered at trial.

### C. Motion to Exclude Evidence of Damages Based on an Increase in the Cost of Life Insurance

Defendant moves to exclude argument and evidence that damages should be awarded based on an increase in the cost of life insurance. Defendant argues that from day one of this case, Plaintiff's theory has been that Defendant's negligent reporting to the MIB rendered him uninsurable. As a result, Defendant contends that no discovery was conducted on any impact of the MIB codes on the price of insurance, and the time for a new theory of damages has long passed. In addition, Defendant argues that if Plaintiff were to seek damages based on the difference between the cost of insurance due to the MIB codes and the cost of insurance had Defendant not reported the MIB codes, Plaintiff would have to offer expert testimony on those issues, and Plaintiff has not done so.

6

The Court agrees with Defendant. Throughout this litigation, Plaintiff has asserted that Defendant's MIB reporting effectively rendered Plaintiff uninsurable, and Plaintiff has not offered any expert testimony to support a damages award based on an increase in the cost of insurance due to the MIB codes reported by Defendant. In addition, Plaintiff never obtained a replacement policy under which he has made any payments and, thus, he has not incurred any damages due to an increase in the cost of insurance. Although Plaintiff's efforts in obtaining replacement life insurance coverage and the outcome of those efforts—namely, tentative approvals at double the standard rate—are relevant to Plaintiff's attempts to mitigate his damages, Plaintiff may not argue or offer evidence that damages should be awarded based on an increase in the cost of life insurance due to the MIB codes. Therefore, the Court grants Defendant's motion and excludes argument and evidence that damages should be awarded based on an increase in the cost of life insurance due to the MIB codes reported by Defendant.

### D. Motion to Exclude Expert Testimony

Burgess, an expert for Plaintiff, opines that Defendant's reporting to the MIB created an insurmountable obstacle to Plaintiff obtaining insurance from other carriers. Defendant moves to exclude Burgess's testimony, arguing that he is not qualified to render the offered opinion.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under Rule 702, a witness may be qualified as an expert by knowledge, skill, experience, training, or education. Fed. R. Evid. 702. A witness's qualifications

7

to render an expert opinion are "liberally judged by Rule 702. Inasmuch as the rule uses the disjunctive, a person may qualify to render expert testimony in any one of the five ways listed: knowledge, skill, experience, training, or education." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993). "The Fourth Circuit has ruled that when an expert's qualifications are challenged, 'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" SMD Software, Inc. v. EMove, Inc., 945 F. Supp. 2d 628, 635 (E.D.N.C. 2013) (quoting Kopf, 993 F.2d at 377).

The Court concludes that Burgess's knowledge and experience qualifies him to render his offered expert opinions. From 1995 to 2008, Burgess was the Regional Director and Sales Manager for Penn Mutual Life Insurance Company. In that role, he managed a team of regional underwriters and his region underwrote over 200 life insurance applications each year. He personally spoke with corporate underwriting teams almost daily to complete the underwriting process. In so doing, Burgess communicated with underwriters about MIB hits in applicants' files and reporting information to the MIB. (Doc. No. 90-2, at 23:3–24:16.) In addition, his regional office worked with other major insurers, including American General, Transamerica, and West Coast Life. Therefore, the Court concludes that Burgess is qualified to render his offered expert opinions.

Defendant also argues that Burgess's expert testimony should be excluded because he did not use a recognized methodology in forming his opinions. Rule 702

8

states a witness who is qualified as an expert may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "Courts have distilled the requirements of Rule 702 into two crucial inquiries: 1) whether the proposed expert's testimony is relevant; and 2) whether it is reliable." Yates v. Ford Motor Co., 113 F. Supp. 3d 841, 845 (E.D.N.C. 2015). "The Supreme Court has made clear that it is the trial court's duty to play a gatekeeping function in deciding whether to admit expert testimony: 'The trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" United States v. Crisp, 324 F.3d 261, 265 (4th Cir. 2003) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)).

In Daubert, the Supreme Court announced five factors that district courts may consider in assessing the relevance and reliability of expert testimony. 509 U.S. at 593–94. Those factors are:

> (1) whether the particular scientific theory "can be (and has been) tested"; (2) whether the theory "has been subjected to peer review and publication"; (3) the "known or potential rate of error"; (4) the "existence and maintenance of standards controlling the technique's operation"; and (5) whether the technique has achieved "general acceptance" in the relevant scientific or expert community.

9

Crisp, 324 F.3d at 266 (quoting Daubert, 509 U.S. at 593–94). The Daubert factors, however, are neither definitive nor exhaustive. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150–51 (1999). "In determining whether proffered expert testimony is reliable, the district court has broad discretion to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved." United States v. Hammoud, 381 F.3d 316, 337 (4th Cir. 2004); see also Kumho Tire, 526 U.S. at 142 ("[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination."). "The inquiry to be undertaken by the district court is 'a flexible one' focusing on the 'principles and methodology' employed by the expert, not on the conclusions reached." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999) (quoting Daubert, 509 U.S. at 594–95).

The flexibility of the district court's reliability assessment is particularly applicable when expert testimony is based on experience, "as there exist meaningful differences in how reliability must be examined with respect to expert testimony that is primarily experiential in nature as opposed to scientific." United States v. Wilson, 484 F.3d 267, 274 (4th Cir. 2007). While scientific expert testimony is "objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication," experiential expert testimony "does not rely on anything like a scientific method." Id. (quotation marks omitted). Even so, "this does not lead to a conclusion that experience alone—or experience in conjunction with other knowledge, skill,

10

training or education—may not provide a sufficient foundation for expert testimony." Id. (quotation marks omitted). Experience can be "the predominant, if not sole, basis for a great deal of reliable expert testimony." Fed. R. Evid. 702 advisory committee's note.

The Court concludes that Burgess's opinion is reliable. Burgess explained how—despite MIB General Rule D.4 prohibiting MIB members from declining an application based solely on an unverified MIB report without an independent investigation—MIB codes of significant health issues can render an applicant effectively uninsurable by causing underwriters to decline to initiate the underwriting process. Burgess opines that in Plaintiff's situation—that is, an older applicant seeking a substantial amount of life insurance with several MIB hits reflecting significant health conditions—an insurance company will likely decline to initiate the underwriting process. Those opinions are based on Burgess's significant experience in managing underwriting teams and pushing thousands of applications through the underwriting process. Therefore, the Court concludes that Burgess's opinion is admissible and denies Defendant's motion as to Burgess.

Defendant also moves to exclude any expert testimony of Plaintiff's treating physicians, Dr. Ori Ben-Yehuda and Dr. Barry Boyd, because Plaintiff never disclosed them as experts. In his response in opposition to Defendant's motion, Plaintiff does not address Defendant's request to exclude any expert testimony of Ben-Yehuda and Boyd. (See Doc. No. 90.) Therefore, the Court grants Defendant's motion as to Ben-Yehuda and Boyd, and they will not be permitted to offer expert testimony at trial.

11

## III. PLAINTIFF'S MOTION TO COMPEL AND STRIKE

In support of its motion to exclude expert testimony, Defendant filed a declaration of Jonathan Sager, the MIB's Executive Vice President and General Counsel. In that declaration, Sager refers to "MIB General Rule D.4"—which, as discussed above, prohibits MIB members from declining an application based solely on an unverified MIB report without an independent investigation—and "the MIB Primer." (Doc. No. 74-5, ¶ 9.) Plaintiff now moves to compel the MIB Rules and the MIB Primer, arguing that Plaintiff requested such documents in discovery and Defendant failed to produce them, as well as to strike Sager's declaration. If production of the documents is not compelled, Plaintiff alternatively moves for an order precluding Defendant from offering such evidence at trial.

### A. Procedural Background

The procedural background of this action is necessary to resolving Plaintiff's motion. Plaintiff initiated this action on January 25, 2018. Although the parties agreed that discovery conducted in the SDNY action would also be used in this action, discovery in this action officially commenced on March 15, 2019 when the Court issued its scheduling order. The deadline for completing discovery in this case was December 23, 2019.

On August 30, 2019, Plaintiff served his first set of requests for production. In RFP #9, Plaintiff sought:

> All documents, including, without limitation, any guidelines, manuals, procedures or policies, concerning (1) requesting medical records for life insurance applicants, (2) reviewing medical records for life insurance applicants, and/or (3) reporting or communicating information

12

> concerning any life insurance applicant's health or medical history to any third party, including, without limitation, the [MIB] or any insurance company.

(Doc. No. 92-1, at 8.) On October 3, 2019, Defendant served its objections and responses to Plaintiff's first set of RFPs. Defendant objected to RFP #9 on numerous grounds. On November 21, 2019, Plaintiff sent a letter to Defendant in an attempt to meet and confer regarding Defendant's objections, to which Defendant responded on December 6, 2019.

On December 23, 2019—the deadline for completing discovery—Plaintiff served his first set of interrogatories and second set of RFPs ("second set of discovery requests"). In RFP #2, Plaintiff sought: "All manuals, guidelines, rule books, code books, or other materials in your possession, custody or control concerning MIB procedures, codes, standards, rules or guidelines whether or not created by You, including, without limitation, any materials created by or obtained from the MIB." (Doc. No. 92-2, at 5.) On January 22, 2020, Defendant served its objections and responses to Plaintiff's second set of discovery requests, reiterating its objections to RFP #9 in Plaintiff's first set of RFPs in response to RFP #2 of Plaintiff's second set of discovery requests.

The deadline for filing dispositive motions was January 24, 2020, and on that date, Defendant filed its motion for summary judgment.

On March 25, 2020, Plaintiff filed a motion to compel. Of relevance to Plaintiff's instant motion to compel and strike, in Plaintiff's motion filed on March 25, Plaintiff sought to compel responses to RFP #9 of Plaintiff's first set of RFPs and

13

RFP #2 of Plaintiff's second set of discovery requests. The Magistrate Judge issued an order denying Plaintiff's motion to compel on April 28, 2020.

On July 6, 2020, Plaintiff filed the instant motion to compel and strike.

## B. Discussion

Plaintiff's instant motion to compel and strike is meritless. In seeking to compel responses to the same RFPs that were the subject of Plaintiff's first motion to compel, the instant motion is a veiled request for reconsideration of the Magistrate Judge's order denying Plaintiff's first motion to compel. The district court may assign nondispositive pretrial matters, such as a motion to compel, to a magistrate judge. 28 U.S.C. § 636(b)(1)(A). Any party may file objections to a magistrate judge's order within fourteen days, and the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "A party may not assign as error a defect in the order not timely objected to." Id. Accordingly, if Plaintiff sought reconsideration of the Magistrate Judge's order denying his motion to compel, Plaintiff should have filed objections thereto within fourteen days. Having failed to do so, Plaintiff has waived any errors in the Magistrate Judge's order.

Notwithstanding Plaintiff's waiver, Plaintiff's first motion to compel was untimely. Plaintiff filed the motion three months after the close of discovery, and it is well established in this district that "a party must generally move to compel a party to comply with a discovery request prior to the close of discovery or the motion is untimely." Willis v. Cleveland Cty., No. 1:18-cv-292, 2020 U.S. Dist. LEXIS 11167,

14

at *6–7 (W.D.N.C. Jan. 23, 2020) (denying motion to compel as untimely because it was filed after the discovery deadline), aff'd, 2020 U.S. Dist. LEXIS 37912 (W.D.N.C. Mar. 4, 2020); Baker & Taylor, Inc. v. Coll. Book Rental Co., No. 3:12-cv-553, 2014 U.S. Dist. LEXIS 138672, at *11–12 (W.D.N.C. Sept. 30, 2014) (same); Surrett v. Consol. Metco, Inc., No. 1:11cv106, 2012 U.S. Dist. LEXIS 54199, at *6 (W.D.N.C. Apr. 18, 2012) (same); Rudolph v. Buncombe Cty., No. 1:10cv203, 2011 U.S. Dist. LEXIS 128181, at *6 (W.D.N.C. Nov. 4, 2011) (same). This is true even when the parties agree among themselves to conduct discovery beyond the deadline ordered by the Court. Willis, 2020 U.S. Dist. LEXIS 11167, at *6–7; Aspex Eyewear, Inc. v. United Syntek Corp., No. 3:02cv385, at *27 (W.D.N.C. Mar. 7, 2008). To the extent that Plaintiff's first motion sought to compel responses to Plaintiff's first set of RFPs, Plaintiff did not file the motion until almost six months after Defendant served its objections and responses, and there was no justification for such delay. Moreover, Plaintiff did not request documents regarding MIB rules and guidelines—the documents sought in Plaintiff's instant motion to compel—until Plaintiff's second set of discovery requests, which Plaintiff served on the last day of discovery. The Court's Pretrial Order and Case Management Plan states:

> Counsel are directed to initiate discovery requests and notice or subpoena depositions sufficiently in advance of the discovery completion deadline so as to comply with this Order. Discovery requests that seek responses or schedule depositions after the discovery completion deadline are not enforceable except by order of the Court for good cause shown.

(Doc. No. 29, at 3.) Accordingly, not only was Plaintiff's motion to compel untimely, but also Plaintiff's second set of discovery requests were untimely.

Plaintiff's instant motion to compel and strike—filed more than six months after the discovery deadline—is likewise untimely. Plaintiff contends that the motion is not untimely because he did not learn of Defendant's reliance on the MIB Rules and the MIB Primer until Defendant filed Sager's declaration in support of its motion to exclude expert testimony. The record demonstrates that Plaintiff's contention is patently false.

Hallie Hawkins, Defendant's designated representative, discussed the MIB rules (including MIB General Rule D.4) and MIB guidelines during her deposition in the SDNY action on October 25, 2017—three months before this case was even filed, seventeen months before Plaintiff filed his first motion to compel, and twenty months before Plaintiff filed the instant motion. (Doc. No. 95-2.) In fact, Plaintiff argued this point in support of his first motion to compel: "During depositions in the SDNY action, Hallie Hawkins . . . repeatedly testified that she consulted and relied upon various . . . MIB guidelines and procedures in reviewing Plaintiff's medical records, determining what conditions to report to the MIB and coding those conditions." (Doc. No. 51, at 6–7.) In addition, Defendant's expert, Lynn Patterson, specifically discussed the MIB Rules (including MIB General Rule D.4) and the MIB Primer in his expert report, which was served on Plaintiff on November 22, 2019—one month before the discovery deadline, four months before Plaintiff filed his first motion to compel, and seven months before Plaintiff filed the instant motion. (Doc. No. 45-5.) Further, the MIB Rules were the primary basis for Defendant's motion for summary judgment, which was filed on January 24, 2020—two months before Plaintiff filed his

16

first motion to compel and five months before Plaintiff filed the instant motion.

As the above demonstrates, Plaintiff was well aware of the MIB Rules and the MIB Primer long before Defendant filed Sager's declaration, and there is no justification for Plaintiff's delay in moving to compel production of those documents the first time or in the instant motion. Therefore, the Court denies Plaintiff's motion to compel and to strike Sager's declaration, as well as Plaintiff's alternative request to exclude such evidence at trial.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Defendant's motion to exclude argument and evidence that any life insurance company rejected Plaintiff's application for life insurance based on its review of MIB codes reported by Defendant, (Doc. No. 71), is **GRANTED**, and such argument and evidence is excluded;

2. Defendant's motion to exclude evidence regarding the circumstances surrounding Defendant's termination of Plaintiff's policies and denial of Plaintiff's reinstatement applications, (Doc. No. 72), is **GRANTED**, and such evidence is excluded;

3. Defendant's motion to exclude argument and evidence that damages should be awarded based on an increase in the cost of life insurance due to the MIB codes reported by Defendant, (Doc. No. 73), is **GRANTED**, and such argument and evidence is excluded;

4. Defendant's motion to exclude expert testimony, (Doc. No. 74), is

**GRANTED in part** and **DENIED in part**. The motion is **DENIED** as to Burgess, and he will be permitted to testify as an expert at trial. The motion is **GRANTED** as to Ben-Yehuda and Boyd, and they will not be permitted to testify as experts at trial; and

5. Plaintiff's motion to compel and strike, (Doc. No. 92), is **DENIED**.

Signed: August 24, 2020

*[Signature]*

Robert J. Conrad, Jr.
United States District Judge