IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
No. 3:18-CV-106-RJC-DSC

| MALCOLM WIENER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | REPLY IN SUPPORT OF |
| v. | ) | EQUITABLE'S MOTIONS |
| | ) | TO DISMISS AND FOR |
| AXA EQUITABLE LIFE INSURANCE COMPANY, | ) | POST-TRIAL RELIEF |
| | ) | |
| Defendant. | ) | |

As Equitable's opening brief showed, the federal courts lack subject-matter jurisdiction over Mr. Wiener's negligence claim. Mr. Wiener also did not offer sufficient evidence on three aspects of his claim, or evidence that satisfied the legal measure of damages for his claim. His response brief leaves these failures uncured.

On subject-matter jurisdiction, Mr. Wiener tacitly admits that his negligence claim is barred by a North Carolina insurance statute (or by the equivalent statute in Connecticut). He argues that this statutory bar does not undermine federal subject-matter jurisdiction, but that argument fails because the state insurance statute creates an <u>exclusive</u> remedy for the type of wrong that Mr. Wiener alleges. That exclusive remedy, and the corresponding ban on negligence claims, deprive the federal courts of subject-matter jurisdiction.

On injury and causation:

- Mr. Wiener's negligence claim required him to show that Equitable's MIB codes made him categorically uninsurable. He concedes, though, that even after Equitable reported the codes, two separate companies still gave him preliminary

offers of insurance. He tries to sidestep this problem by alluding to a different injury—insurability at a higher cost—but as this Court has already held, that alleged injury strays from Mr. Wiener's theory of the case. It also lacks an evidentiary basis.

- Mr. Wiener's theory required him to prove that insurers refused to start the underwriting process because of Equitable's MIB codes. Mr. Wiener did not prove that theory of causation, as his response brief confirms. For example, Mr. Wiener ignores Sandy Robbins's concession that the five insurers that declined to offer Mr. Wiener a policy reviewed only his medical records, not the MIB codes. More importantly, the one insurer that might have seen the codes, Security Mutual, <u>agreed</u> to start the underwriting process.

- Mr. Wiener's response also fails to identify any evidence that any insurer would have offered him insurance if not for the MIB codes. That third evidentiary gap is an independent basis for judgment as a matter of law.

Finally, Mr. Wiener's response confirms that his evidence did not satisfy the controlling measure of damages. Mr. Wiener asks the Court to measure his damages by the $16 million death benefit of his lapsed Equitable policies—the same damages he seeks in his lawsuit in New York. That measure, however, does not fit Mr. Wiener's claim in this Court. Mr. Wiener claims here that the MIB codes shut him out of the market for life insurance. If that were true, Mr. Wiener's damages would be loss-of-market damages: the net present value of the insurance policy he would have obtained in the absence of the MIB codes. No witness testified to that value.

Although a jury's verdict deserves respect, the law calls for judgment notwithstanding the verdict when a plaintiff fails to offer legally sufficient evidence. The law also calls for a federal court to dismiss a case that lacks subject-matter jurisdiction. This case has both of those defects.

**I.      The Federal Courts Lack Subject-Matter Jurisdiction over Mr. Wiener's Claim.**

The federal courts lack subject-matter jurisdiction over Mr. Wiener's negligence claim because a North Carolina insurance statute—the Consumer and Customer Information Privacy Act—bars negligence claims based on the disclosure of incorrect health information to the MIB. See Doc. No. 131, at 6-11 [Opening Br.]. The Act provides alternative exclusive remedies for that alleged wrong. See id. at 7-8; see also N.C. Gen. Stat. §§ 58-39-50(a)-(d), -105.

Mr. Wiener does not deny the Act's exclusive-remedy provisions or its ban on negligence claims.[1]  See Doc. No. 138, at 6-17 [Resp.]. Instead, he asks the Court not to apply the Act for procedural reasons. Those arguments fail.

First, Mr. Wiener argues that a federal court always has subject-matter jurisdiction to decide whether a claim is colorable. See id. at 6-7. The lack of jurisdiction in this case, however, does not depend on whether Mr. Wiener has pleaded the elements of a negligence claim. Instead, jurisdiction fails here because a statutory bar expressly precludes Mr. Wiener's claim in deference to an exclusive statutory remedy. See Opening Br. 9-11. Equitable's opening

---

[1]      Mr. Wiener speculates that he could have shown that Equitable acted with malice or a willful intent to injure him, so his claim might have survived under an exception to the statutory bar. See Resp. 16 n.3. That speculation, however, clashes with this Court's summary judgment against Mr. Wiener's libel and unfair-trade-practice claims. In that decision, the Court held (a) that the MIB codes were not false, and (b) that any shortcomings in the analysis behind the MIB codes were "not deceptive, immoral, unethical, oppressive, [or] unscrupulous." Wiener v. AXA Equitable Life Ins. Co., No. 3:18-CV-106-RJC-DSC, 2020 WL 3035222, at *4-5, *8-9 (W.D.N.C. June 5, 2020).

3

brief cites multiple decisions that dismiss common-law claims for lack of subject-matter jurisdiction when an exclusive statutory remedy displaces those claims. See id. at 9-10.

Mr. Wiener responds that in the cases Equitable cites, separate agencies administered the exclusive remedies. See Resp. 11. But in cases like this one, subject-matter jurisdiction turns on whether the statutory remedy is exclusive, not on the mechanics of that exclusive remedy. See, e.g., Santos v. Boeing, No. 02 C 9310, 2004 WL 1384724, at *3-4 (N.D. Ill. May 11, 2004); Klaahsen v. APCOA/Standard Parking, Inc., No. Civ. 02-620(RHK/AJB), 2002 WL 1397041, at *4-6 (D. Minn. June 26, 2002). Here, the relevant statute allows an applicant to seek remedies from an insurer and to seek equitable relief if needed. See N.C. Gen. Stat. §§ 58-39-50(a)-(d), -105(a). Those statutory remedies are exclusive, as Mr. Wiener's response does not deny. See id. §§ 58-39-105(e), -110.

Second, Mr. Wiener argues that the statutory bar does not apply because he lives in Connecticut. See Resp. 8. But as Mr. Wiener admits, id. at 10, Connecticut has a virtually identical statute. Compare Conn. Gen. Stat. §§ 38a-975 to -999b, with N.C. Gen. Stat. §§ 58-39-1 to -125. If anything, the Connecticut statute is more fatal to Mr. Wiener's claim: Under that statute, unless an applicant proves malice or willful intent to injure, the statute bars any claim that is based on information given to an insurance-support organization. See Conn. Gen. Stat. § 38a-996. Thus, under Connecticut law and North Carolina law alike, Mr. Wiener's jurisdictional arguments hit a statutory bar.

Third, Mr. Wiener argues that Rule 8(c) required Equitable to raise the Act as an affirmative defense, like the defenses of official or qualified immunity. See Resp. 9-10. That analogy to government immunities misses the distinction between a displacement of the common law and a mere defense. Here, the federal courts lack subject-matter jurisdiction because a

4

statutory remedy displaces Mr. Wiener's common-law negligence claim. See Opening Br. 6-11. Government immunities lack this displacement feature. They do not give a plaintiff an exclusive alternative remedy, as here. Instead, they are pure defenses: They simply shield defendants from tort liability. See Pearson v. Callahan, 555 U.S. 223, 231 (2009); Clark v. Link, 855 F.2d 156, 160 (4th Cir. 1988). In contrast, the statutory immunity here is not purely defensive, so it did not have to be pleaded as an affirmative defense.

Fourth, Mr. Wiener's argument on redressability fails as well. See Resp. 12-14. Under federal standing doctrine, a claim is not redressable, and thus does not establish subject-matter jurisdiction, if the law does not authorize a court to provide the relief requested. See Opening Br. 10-11. Mr. Wiener argues that if this is the law, every claim that fails on the merits lacks redressability. See Resp. 13-14. But that argument conflates subject-matter jurisdiction with the merits. Redressability is an aspect of standing, a threshold question that a federal court is called to decide, regardless of whether a plaintiff's claim is colorable or not. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-03 (1998). When a statute bars the relief that a plaintiff is seeking, a federal court lacks the authority to give the plaintiff his chosen relief even if he establishes all of the elements of his claim.[2] See Opening Br. 10-11.

Fifth, Mr. Wiener cannot distinguish Goddard v. Protective Life Corp., 82 F. Supp. 2d 545 (E.D. Va. 2000). Goddard held that an identical Virginia statute barred common-law claims about the transmission of MIB codes. Id. at 559. Goddard did not analyze whether the statute

---

[2]  Mr. Wiener focuses his redressability argument on trying to distinguish Steel Co. See Resp. 12-13. He argues that Steel Co.'s holding on redressability does not apply here because his desired remedy (money damages) would redress his alleged injury. See id. at 13. But that premise is mistaken: Even if Mr. Wiener could establish a negligence claim that would normally provide money damages, the Act bars an award of money damages for negligence in this case. Indeed, it forbids a negligence claim outright. See N.C. Gen. Stat. §§ 58-39-105(a), -110. That failure of redressability defeats subject-matter jurisdiction.

5

affected the court's subject-matter jurisdiction, see Resp. 10-11, but that was because the parties and the court apparently did not raise the issue. See Goddard, 82 F. Supp. 2d at 559-61.

Finally, Mr. Wiener fails in his argument that applying the Act now would be unfairly prejudicial. See Resp. 14-17. The law calls for dismissal at any time—including after trial—when the Court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3); see Opening Br. 11. As shown above, that is the case here.

In sum, the Act's exclusive remedies and its express ban on negligence claims defeat federal subject-matter jurisdiction over this case.

## II.     Mr. Wiener Presented Insufficient Evidence on Injury and Causation.

In its opening brief, Equitable showed that Mr. Wiener did not offer legally sufficient evidence on three aspects of his negligence claim. See Opening Br. 12-17. Nothing in Mr. Wiener's response cures those failures of proof.

### A.     Two insurers' offers to Mr. Wiener defeat his claim that he was uninsurable.

Mr. Wiener claims a specific form of uninsurability: that after Equitable reported its MIB codes, no insurer would even begin to underwrite a policy for him. See Wiener v. AXA Equitable Life Ins. Co., No. 3:18-cv-106-RJC-DSC, 2020 WL 4938338, at *3, *5 (W.D.N.C. Aug. 24, 2020). Mr. Wiener's response recommits to that theory. It quotes Mr. Burgess's testimony that when an insurance company sees significant MIB codes, it "can simply say we're not interested in even starting the underwriting process." Resp. 24 (quoting Tr. 321:21-23). Mr. Burgess did not testify on any other meaning of uninsurability. See Opening Br. 3, 12-13.

Even if that form of uninsurability could happen in some cases, it did not happen here. Mr. Wiener's evidence proved this point. His own witness, Sandy Robbins, testified that after Equitable reported its codes to the MIB, Mr. Wiener received two preliminary offers of

6

insurance, each of which proposed to continue the underwriting process. See Opening Br. 12-14; Tr. 113:24-114:4, 116:5-15. In light of those offers, Mr. Robbins himself described Mr. Wiener as insurable. Tr. 114:3-4, 116:12-15.

Mr. Wiener does not and cannot deny these points. He concedes that Security Mutual "was willing to continue the underwriting process for Wiener," Resp. 22, and that The Principal "offered to begin the formal underwriting process for Wiener," id. at 23 (emphasis deleted). These two offers disprove the categorical uninsurability that Mr. Wiener claimed here. Because Mr. Wiener's theory of categorical uninsurability lacks any legally sufficient evidentiary basis, Rule 50 calls for judgment as a matter of law in favor of Equitable. See Fed. R. Civ. P. 50(a)(1), (b).

In response to these problems, Mr. Wiener pivots to a different theory of injury: He alludes to being "insurable [only] at an unreasonable rate." Resp. 3; see id. at 22-23. But any claim of cost-based uninsurability would fail under this Court's earlier rulings. When this Court granted Equitable's motion in limine, it noted that Mr. Wiener's only claimed injury is categorical uninsurability. See Wiener, 2020 WL 4938338, at *3. The Court also credited Equitable's argument that the parties had not done any discovery on whether the MIB codes affected Mr. Wiener's cost of insurance. Id. Based on these and other problems, the Court barred Mr. Wiener from presenting evidence on increased insurance costs. Id. The Court's analysis still defeats any argument that the MIB codes have made Mr. Wiener uninsurable at a "[ ]reasonable rate." Resp. 3.

Finally, even if Mr. Wiener could argue cost-based uninsurability now, that theory would have no evidentiary basis. No witness defined the term "insurable" as meaning that Mr. Wiener could buy insurance at his desired price. In fact, Mr. Robbins's testimony was to the opposite

7

effect. Even though Mr. Wiener's offers from Security Mutual and The Principal involved premiums twice as high as standard premiums, Mr. Robbins admitted that those offers show insurability. Tr. 114:3-4, 116:12-15. In addition, no witness testified on what would be a "reasonable" premium for a $10 million insurance policy on the life of a 78-year-old man with Mr. Wiener's medical history. Thus, even if Mr. Wiener's theory of cost-based uninsurability were viable, it would lack evidentiary support in this record.

> **B.    Mr. Wiener did not offer legally sufficient evidence that the MIB codes caused him to be uninsurable.**

Mr. Wiener's negligence theory also required him to prove that any problems with his insurability stemmed from the MIB codes. He did not offer that proof. See Opening Br. 14-16.

Mr. Wiener's response cites no evidence, let alone sufficient evidence, of the causation that his claim required:

- He has no answer to Mr. Robbins's testimony that all five insurance companies that declined to insure Mr. Wiener did so based on his medical records alone. See Tr. 120:3-18. As a result, Mr. Wiener has failed to show that any insurer declined his application because of the MIB codes.

- Mr. Wiener also has no answer to Mr. Robbins's admission that Security Mutual—the only insurer that even might have reviewed the MIB codes—gave Mr. Wiener a preliminary offer of insurance. See Tr. 115:17-116:18. That offer breaks any causal link between the MIB codes and Mr. Wiener's problems in getting new insurance.

This Court has already recognized this lack of causation. In its ruling on Equitable's motion in limine, the Court held that "[t]here is no evidence that any life insurance company

8

rejected Plaintiff's application based on its review of the MIB codes reported by Defendant." Wiener, 2020 WL 4938338, at *2.

Mr. Wiener's response does not fill this evidentiary gap. To try to fill it, he points to Mr. Robbins's and Mr. Burgess's testimony that insurers sometimes decline to start the underwriting process based on an applicant's MIB codes. See Resp. 23-24. But if Mr. Wiener is implying that something similar happened in this case, Mr. Robbins's testimony refutes that implication. Mr. Robbins testified that (1) he could recall only five insurers that declined to make offers to Mr. Wiener, and (2) all five of those insurers reviewed only medical records. Tr. 120:16-19. "None of them reviewed MIB codes." Tr. 120:18. Mr. Burgess, for his part, testified that he had no idea whether any of the insurers that declined to underwrite Mr. Wiener accessed his MIB codes. Tr. 347:11.

In any event, testimony on what sometimes happens somewhere is not enough to prove causation in a particular case—especially when other evidence exposes the "sometimes" testimony as mere speculation. See Young v. Hickory Bus. Furniture, 538 S.E.2d 912, 916 (N.C. 2000). In one case of this kind, Gibson v. Ussery, there was "no evidence beyond mere conjecture and speculation that defendants' alleged negligence was the proximate cause" of the plaintiff's injuries. 675 S.E.2d 666, 670 (N.C. Ct. App. 2009). Under those circumstances, the North Carolina Court of Appeals affirmed a directed verdict in the defendant's favor. Here, the same problem calls for a post-trial judgment as a matter of law.

### C. Mr. Wiener did not offer any evidence that but for the MIB codes, a complete underwriting process would have yielded an offer of insurance.

Mr. Wiener's negligence theory also required a showing of but-for causation: a showing that if not for the MIB codes, an insurer would have offered Mr. Wiener a new policy after a complete underwriting process. See Opening Br. 16-17. Mr. Wiener did not make that showing.

9

See id. Indeed, the record refutes but-for causation: After reviewing Mr. Wiener's medical records, five insurers refused to give Mr. Wiener even a preliminary offer of insurance. See id.

At trial, Mr. Wiener offered no evidence of but-for causation, and he points to none now. Instead, he points backward to his health in 2008, when Equitable agreed to reinstate one of his old policies. See Resp. 21.

That argument fails for at least two reasons.

First, any argument that Mr. Wiener was just as insurable in 2013 as he was in 2008 overlooks that, by 2013, Mr. Wiener was 78 years old. As Mr. Wiener's own counsel argued, age is a critical factor for insurability. See Tr. 20:19-20 ("the applicant's age, as well as the amount of insurance coverage they are seeking" are two key factors a life insurance company will consider); Tr. 495:6-7 ("the age and amount of death benefit are critical considerations"). For Mr. Wiener to show insurability by extrapolation, he would have had to offer evidence that insurers consider the risk of insuring a 78-year-old man equivalent to the risk of insuring a 73-year-old man. He offered no such evidence. Nor could he.

Second, although Mr. Wiener makes arguments about his 2013 insurability with Equitable, he overlooks the key fact on that insurability: After Equitable reviewed Mr. Wiener's medical records in 2013, it declined to insure him again. See, e.g., Tr. 14:24-15:3. That decision was consistent with the later decisions of the five insurers that declined to offer insurance after studying Mr. Wiener's medical records. See Opening Br. 16-17. In any event, this lawsuit does not challenge Equitable's decision not to reinstate Mr. Wiener's policies; that decision is the subject of Mr. Wiener's lawsuit in New York. See, e.g., Tr. 15:5-8; 358:7-359:6; Wiener, 2020 WL 4938338, at *1.

In sum, Mr. Wiener did not offer sufficient evidence that he would have ultimately qualified in 2013 for new life insurance. His claim thus fails for lack of but-for causation.

**III.     Mr. Wiener Did Not Introduce Evidence To Satisfy Any Valid Measure of Damages.**

North Carolina law required Mr. Wiener to offer evidence on damages that matched his claimed injury. See, e.g., Heath v. Kirkman, 82 S.E.2d 104, 108-09 (N.C. 1954). Here, Mr. Wiener claimed a lack of access to the market for new life insurance, so the law required him to prove the net value of the policy he would have obtained in that market. See Opening Br. 17-21 (discussing cases). Mr. Wiener did not offer that proof. See id.; see also Tr. 358:7-361:24.

Mr. Wiener argues that requiring that evidence is inconsistent with the Court's jury instructions. See Resp. 27. That is a red herring. The Court's instructions stated that Mr. Wiener could recover the actual damages proximately caused by Equitable's negligence. See Tr. 502:3-4. That general principle is not the issue here. Instead, the issue is a more specific one: whether Mr. Wiener offered proof of actual damages that aligns with his theory of harm. Compare Opening Br. 17-21, with Resp. 26-33.[3]

Mr. Wiener argues that he presented legally sufficient evidence of damages by showing the death benefit of his old Equitable policies. See Resp. 29, 32. That evidence, however, is insufficient for at least three reasons.

First, measuring damages by the death benefit under Mr. Wiener's lapsed Equitable policies amounts to a request to reinstate those policies. But that is the same recovery

---

[3]     Because Equitable's arguments on whether Mr. Wiener offered sufficient evidence to satisfy the legal measure of damages did not challenge the Court's jury instructions, Equitable was not required to present those arguments as objections to the instructions. Mr. Wiener's waiver arguments, see Resp. 27, thus fail.

11

Mr. Wiener is seeking in New York. That overlap in damages clashes with Mr. Wiener's representations here that his claims "are distinct from those in the New York Action and do not concern Defendant's denial of the Policies' reinstatement." Doc. No. 15, at 4.

Second, Mr. Wiener's theory has no evidentiary support. No witness testified that Mr. Wiener would have obtained a $16 million policy at the end of a complete underwriting process. Compare Opening Br. 19-20 (noting the absence of that testimony), with Resp. 26-33 (failing to identify any such testimony). The evidence, in fact, showed that Mr. Wiener applied for only $10 million in coverage. See Tr. 487:6-10.

Third, Mr. Wiener's theory has no support in the law. Mr. Wiener does not cite any case that shows that the death benefit under his old Equitable policies is a valid measure of damages in this case. See Resp. 28-29, 32.

Mr. Wiener also levels a barrage of arguments against a loss-of-market measure of damages, but those arguments all fail.

Mr. Wiener argues that loss-of-market damages apply only in contract cases, but he is mistaken. See Resp. 26. The loss-of-market measure of damages comes from the Restatement (Second) of Torts. See Opening Br. 18. Equitable's opening brief cites multiple cases that apply that measure of damages to tort claims. See id.

Mr. Wiener also argues that the loss-of-market measure is foreclosed by Equitable's motion to exclude evidence that the MIB codes increased Mr. Wiener's cost of insurance. See Resp. 29-31. That argument misses the point of Equitable's motion. Equitable moved to exclude evidence of increased premiums because Mr. Wiener himself never based his theory of injury on an increase in premiums. See Wiener, 2020 WL 4938338, at *3 (accepting Equitable's argument). Instead, Mr. Wiener has always argued that he is categorically uninsurable. See id.

at *3, *5. It was Mr. Wiener's own theory of the case that led the Court to bar Mr. Wiener from offering evidence of increased premiums. Id. at *3.

Mr. Wiener also suggests that Equitable has waived its argument that any damages award must be reduced to present value. See Resp. 31. But as Mr. Wiener concedes, North Carolina law requires that awards of future damages be reduced to present value. See id. at 32 n.11. Mr. Wiener's claim seeks future damages: a death benefit that his beneficiaries could receive in the future. Under North Carolina law, that future amount can qualify as actual damages, as required by the Court's instructions, only if Mr. Wiener reduces it to present value.[4]

Finally, Mr. Wiener urges the Court to uphold the damages award based on his alleged pain and suffering, inconvenience, and loss of reputation. See id. at 33. Mr. Wiener, however, has never claimed any of those injuries. On the contrary, he has claimed only one injury: an inability to access the market for life insurance. See supra pp. 6-8.

As shown above, Mr. Wiener's damages evidence clashed with the measure of damages that his theory of injury requires. His failure to offer any legally valid evidence of damages calls for judgment for Equitable, a remittitur to nominal damages, or a new trial.

---

[4] Mr. Wiener cites WRI/Raleigh, L.P. v. Shaikh, 644 S.E.2d 245, 249 (N.C. Ct. App. 2007), to suggest that Equitable has waived arguments on present value. See Resp. 31. The jury in that case, however, received an instruction on present value. The case has no bearing on what conduct can waive a present-value argument.

## CONCLUSION

Equitable requests that the Court vacate the judgment in this lawsuit and dismiss the lawsuit.  Alternatively, Equitable requests that the Court enter judgment as a matter of law in Equitable's favor.  Alternatively, Equitable requests that the Court remit Mr. Wiener's damages to nominal damages of $1.00 or order a new trial.

This 6th day of November, 2020.


/s/ John R. Wester

| | |
|---|---|
| John R. Wester | Aaron C. Lang |
| N.C. State Bar No. 4660 | N.C. State Bar No. 51511 |
| Matthew W. Sawchak | Cadwalader Wickersham & Taft LLP |
| N.C. State Bar No. 17059 | 227 West Trade Street |
| Stephen D. Feldman | Charlotte, NC  28202 |
| N.C. State Bar No. 34940 | aaron.lang@cwt.com |
| Robinson, Bradshaw & Hinson, P.A. | Telephone:  704-348-5145 |
| 101 N. Tryon St., Suite 1900 | Telefax:  704-348-5200 |
| Charlotte, NC  28246 | |
| jwester@robinsonbradshaw.com | Robert Cassot (admitted pro hac vice) |
| msawchak@robinsonbradshaw.com | Federal Bar No. ct24004 |
| sfeldman@robinsonbradshaw.com | Morrison Mahoney LLP |
| Telephone:  704-377-2536 | One Constitution Plaza, 10th Floor |
| Telefax:  704-378-4000 | Hartford, CT  06103 |
| | rcassot@morrisonmahoney.com |
| | Telephone:  860-616-4441 |
| | Telefax:  860-244-3800 |

Counsel for Equitable