UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00106-RJC-DSC

| | |
|---|---|
| MALCOLM WIENER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) **ORDER**<br>AXA EQUITABLE LIFE )<br>INSURANCE COMPANY, )<br>)<br>Defendant. )<br>) | |

**THIS MATTER** is before the Court on reversal and remand from the Fourth Circuit to address "AXA's argument for post-trial relief challenging the amount of damages" that a jury awarded to Malcom Wiener. *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 785 (4th Cir. 2023). AXA argues that the jury rested its $16 million award on an improper standard, and thus, that the award lacks a basis in substantial evidence. Because Wiener offered no baseline to support the jury's $16 million award, it is improper. The Court will reduce the jury award to nominal damages of one dollar ($1).

I.   BACKGROUND

In 1986 and 1987, Malcolm Wiener purchased three life insurance policies from AXA Equitable Life Insurance Company with a total face value of $16 million. (Doc. No. 1-2 at ¶¶ 9–11). In October 1986, Wiener purchased the first policy in the amount of $9 million which was later reduced to $7.2 million. (*Id.* at ¶ 9). In May 1987, Wiener purchased the second and third policies: the second in the amount of

1

$9 million which was later reduced to $7.2 million and the third in the amount of $2 million which was later reduced to $1.6 million. (*Id.*). In December 2013, each of the three policies lapsed for nonpayment of premiums. (*Id.* at ¶ 21).

Wiener sought reinstatement, but AXA denied his application. In May 2015, Wiener sued AXA over its reinstatement decision in the District of Connecticut alleging claims for breach of contract, waiver, violation of the Connecticut Unfair Trade Practices Act, fraudulent misrepresentation, and breach of the covenant of good faith and fair dealing. That lawsuit is not before this Court but rather was transferred to the United States District Court for the Southern District of New York. That court granted summary judgment in favor of AXA on all claims. *See Wiener v. AXA Equitable Life Ins. Co.*, 2021 U.S. Dist. LEXIS 62776 (S.D.N.Y. Mar. 31, 2021). The decision is now on appeal before the Second Circuit. (Dkt. No. 22-894).

The instant case relates only to AXA's negligence in coding Wiener's medical history. In January 2018, Wiener filed the present action alleging, among other things, that AXA was negligent in "failing to adequately read, understand and verify and accurately report Plaintiff's medical history, conditions and events to third parties." (Doc. No. 1-2 at ¶ 67). Following AXA's review, it reported its findings to the Medical Information Bureau ("MIB"), which then, in turn, shared AXA's findings with other insurance providers through codes denoting certain health conditions. AXA's negligent reporting of erroneous MIB codes rendered

2

Wiener "effectively uninsurable or uninsurable at a reasonable cost." *Wiener*, 58 F.4th at 785.

According to evidence introduced at trial, Wiener sought new insurance coverage from at least eight carriers. *Wiener*, 58 F.4th at 784–85. All but two denied him coverage altogether. *Id.* And those that offered insurance made only preliminary, revocable offers for $10 million policies at double the standard rate. *Id.* At least two carriers (John Hancock and Principal Life) reached decisions based on Wiener's medical records alone—without consideration of any MIB records or codes. (Doc. No. 122, 110–14). John Hancock declined Wiener coverage altogether. (*Id.* at 112). And Principal Life made only a preliminary coverage offer for $10 million at double the standard rate, citing Wiener's "history of atrial fibrillation and monoclonal gammopathy." (*Id.* at 112–14).

Following a trial on AXA's negligence, a jury awarded Wiener $8 million: the value of the $16 million lapsed death benefit less $8 million for failure to mitigate his damages. (Doc. No. 117). AXA then moved for post-trial relief under Federal Rules 12(b)(1), 50(b), and 59. (Doc. No. 130). Before reaching AXA's sufficiency of the evidence challenges, this Court granted AXA's Rule 12(b)(1) motion, concluding that it lacked subject-matter jurisdiction because Connecticut law precluded Wiener's cause of action. *See Wiener v. AXA Equitable Life Ins. Co.*, No. 3:18-cv-00106-RJC-DSC, 2021 U.S. Dist. LEXIS 30939, at *19–20 (W.D.N.C. Feb. 19, 2021), *rev'd and rem'd*, 58 F.4th 774 (4th Cir. 2023).

The Fourth Circuit reversed and remanded the decision, holding that AXA had "waived any contention that this action should have been governed by Connecticut law." *Wiener*, 58 F.4th at 781. Though this Court did not reach AXA's sufficiency of the evidence challenges, the Fourth Circuit addressed the causation issue, holding that "[a]mple evidence supported the jury's verdict for Wiener." *Id.* at 784. "But because AXA's argument for post-trial relief challenging the amount of damages . . . was neither raised nor briefed before [the Fourth Circuit]," the panel remanded that narrow issue back to this Court. *Id.* at 785.

II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 50(b) allows an aggrieved party to file a renewed motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). "When the loser of a jury trial challenges [a] verdict under Federal Rule of Procedure 50(b), 'the question is whether a jury, viewing the evidence in the light most favorable to the winning party, could have properly reached the conclusion reached by [the] jury.'" *Wiener*, 58 F.4th at 784 (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543 (4th Cir. 2003) (cleaned up)). Under Rule 50(b), the Court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

A jury's damage award will withstand a Rule 50(b) motion "unless no substantial evidence is presented to support it, it is against the clear weight of the evidence, it is based upon evidence that is false, or it will result in a miscarriage of justice." *Barber v. Whirlpool Corp.*, 34 F.3d 1268, 1279 (4th Cir. 1994); *see also Stamathis v. Flying J, Inc.*, 389 F.3d 429, 436 (4th Cir. 2004). A mere scintilla of

4

evidence supporting the verdict is insufficient. *See In re Quinn*, No. 92-2366, 1993 U.S. App. LEXIS 21527, at *21 (4th Cir. Aug. 23, 1993); *Custer v. Hall*, No. 91-2673, 1992 U.S. App. LEXIS 21083, at *4 (4th Cir. Sept. 3, 1992) (both citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986)). Judgment as a matter of law can include entry of damages in an amount supported by the evidence. *See, e.g.*, *Price v. City of Charlotte, N.C.*, 93 F.3d 1241, 1257 (4th Cir. 1996); *Pracht v. Saga Freight Logistics, LLC*, No. 3:13-cv-00529-RJC-DCK, 2016 U.S. Dist. LEXIS 69158, at *10 (W.D.N.C. May 20, 2016).

A Rule 50 motion for judgment as a matter of law operates under the same standard as a motion for summary judgment. *Anderson*, 477 U.S. at 250. Such motions present questions of law as to whether, when all the evidence is considered together with all reasonable inferences drawn in the nonmovant's favor, there exists a failure or lack of evidence to support the verdict. *Spell v. McDaniel*, 604 F. Supp. 641, 646 (E.D.N.C. 1985). Thus, "[b]ecause Wiener won at trial, all disputed facts must be construed in his favor and he must be given the benefit of all reasonable inferences." *Wiener*, 58 F.4th at 784.

### III. DISCUSSION

AXA advances two core arguments: first, that the jury based its award on an improper standard (the $16 million death benefit from his lapsed policies); and second, that, even if the $16 million death benefit was an appropriate measure, Wiener failed to provide necessary evidence of future premiums to offset that $16 million award. As success on the first argument forecloses the second, the Court addresses only AXA's baseline argument.

5

## A. The Award Rests on an Improper Baseline

Under North Carolina law, "the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty." *Olivetti Corp. v. Ames Bus. Sys., Inc.*, 319 N.C. 534, 547–48 (1987); *see also Compton v. Kirby*, 157 N.C. App. 1, 17, (2003) (quoting *Tillis v. Cotton Mills*, 251 N.C. 359, 366, (1959) ("Absolute certainty is not required, but evidence of damages must be sufficiently specific and complete to permit the jury to arrive at a reasonable conclusion.")). "While[] the proper amount of damages in a case is generally a question of fact, the proper standard with which to measure those damages is a question of law." *JTE Constructors of N.C., Inc. v. United States Fid. & Guar. Co.*, No. 1:02CV283, 2003 U.S. Dist. LEXIS 22301, at *19 (M.D.N.C. Nov. 25, 2003).

Under Federal Rule of Civil Procedure 50(b), a court may enter judgment as a matter of law when the jury's damages award is improper. *See Price*, 93 F.3d at 1257 (reversing an award of compensatory damages for emotional distress where the plaintiffs offered no "explanation or evidence" of emotional distress and instead awarding nominal damages under Rule 50(b)); *Pracht*, 2016 U.S. Dist. LEXIS 69158, at *10 (entering judgment as a matter of law under Rule 50(b) to change a jury award on a state law claim from $1 to $99,276.83); *see also W. Union Tel. Co. v. Hall*, 124 U.S. 444, 454 (1888) (reversing compensatory damages award in a negligence action and instead awarding nominal damages where actual damages were "purely contingent, without anything in the case to show that [actual loss] was

6

even probable . . . much less that it would certainly have taken place."). The Court has discretion to enter such a judgment. *See Globe Liquor Co. v. San Roman*, 332 U.S. 571, 574 (1948) ("[D]etermination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.").

Here, the jury awarded Wiener actual damages of $16 million before deducting $8 million for his own failure to mitigate. The jury's award, AXA argues, relies upon an improper standard because this action sought compensatory damages for AXA's negligence in coding Wiener's medical history, not reinstatement of Wiener's previous policies. Wiener's expert witness, Steve Burgess, testified about damages based on Wiener's lapsed coverage:

> Q. And can you explain what you believe the damages to be?
> A. I believe the damages to be that he had, Mr. Wiener had $16 million of life insurance coverage before AXA terminated his policies and, in my opinion, sent out information to the insurance community that was inaccurate about his health history. So it cost him the $16 million of death benefit.

(Doc. No. 123 at 328). Wiener's counsel echoed the standard in closing:

> On damages, Burgess told you straight. Malcolm Wiener could not replace the $16 million coverage because of incorrect codes.

(Doc. No. 124 at 496).

AXA then protested in motion under Rule 50(a):

> The final thing is, Your Honor, on damages, the damages that have been offered makes no logical sense whatsoever. Mr. Burgess has said, "Well, there's $16 million that he's out." Mr. Wiener was uninsured at the timeframe that we're talking about. The issue in this case is not and cannot be in this case the fact that AXA declined his policy. That is not what this case is about.
> THE COURT: Right.
> MR. CASSOT: This case is solely about whether --
> THE COURT: That's the big case, not this little case.

(Doc. No. 123 at 358).[1] After a short discussion, the Court agreed and suggested that Wiener may be able to recover nominal damages:

> THE COURT: What do you do -- as I understand North Carolina law, the plaintiff can assert a case of negligence and get nominal damages, and so, he doesn't need to get $16 million.

(Doc. No. 123 at 359). On that basis, the Court denied AXA's Rule 50(a) motion and submitted the case to the jury.

---

[1] The "big case" inartfully referred to by the Court is Wiener's breach of contract action against AXA in the Southern District of New York.

The Court finds that Wiener's lapsed $16 million death benefit is an improper baseline of damages. This action sought compensatory damages for AXA's negligence in coding Wiener's medical history—not reinstatement of Wiener's previous policies. Though AXA's negligence rendered Wiener "effectively uninsurable," *see Wiener*, 58 F.4th at 784–85, Wiener was required to provide some measure of the damage caused by his uninsurability. Here, Wiener's bygone insurance policies do nothing more than provide insight into policies Wiener was able to obtain in 1986 and 1987—at a significantly younger age and before experiencing several health conditions. Regardless, because Wiener offered no baseline to support the jury's $16 million award, the award lacks a sufficient evidentiary basis.

This action concerns Wiener's insurability after his previous policies had already lapsed. A proper damages standard in this action must capture the difference between Wiener's insurability with and without the erroneous MIB codes. To borrow the Fourth Circuit's example, such a baseline might be the cost of a $16 million policy without negligent coding, which Wiener could then compare with a $16 million policy at the cost of $15,999,999 per year. *See Wiener*, 58 F.4th at 784. But to date, Wiener has offered no evidence demonstrating that, absent the MIB codes, he would have even qualified for $16 million in life insurance—let alone at a reasonable cost.

In fact, the evidence indicates otherwise. The record demonstrates that after his previous policies had lapsed, Wiener sought replacement insurance from at least

9

eight carriers. Of those carriers, at least two came to coverage decisions based on Wiener's medical records alone—without consideration of any MIB records or codes. (Doc. No. 122, 110–14). The first, John Hancock, denied Wiener coverage altogether. (*Id.*). And the second, Principal Life, made only a preliminary coverage offer of $10 million at double the standard rate. (*Id.*). The record demonstrates that Wiener fared no better when seeking insurance from carriers that did not consider the erroneous MIB codes.

Throughout this case, Wiener has offered no expert testimony or other evidence of the damages caused by his effective uninsurability. And the record makes clear that, even absent the erroneous MIB codes, Wiener was "effectively uninsurable or uninsurable at a reasonable cost." *Wiener*, 58 F.4th at 784–85. Without appropriate evidence of Wiener's insurability, actual damages based on a lapsed $16 million death benefit are "purely contingent." *See Hall*, 124 U.S. at 454. The Court finds that "no substantial evidence" supports the jury's $16 million actual damages award. *Barber*, 34 F.3d at 1279.

Thus, the Court's prior discussion with Wiener's counsel on damages provides guidance: "the plaintiff can assert a case of negligence and get nominal damages . . . he doesn't need to get $16 million." (Doc. No. 123 at 359). North Carolina law provides for nominal damages in tort actions. *See Jewell v. Price*, 264 N.C. 459, 461 (1965) ("Nominal damages may be recovered in actions based on negligence."). Such damages "are recoverable where some legal right has been invaded but no actual loss or substantial injury has been sustained," to recognize "the technical injury" the

10

plaintiff suffered. *Title Ins. Co. of Minnesota v. Smith, Debnam, Hibbert & Pahl*, 119 N.C. App. 608, 611 (1995).

While Wiener demonstrated that "the erroneous MIB codes that AXA reported caused his uninsurability," *Wiener*, 58 F.4th at 785, his evidence shows only technical injury. Wiener failed to demonstrate that he was not otherwise "effectively uninsurable or uninsurable at a reasonable cost" absent the erroneous codes. Wiener is, therefore, entitled to nominal damages of one dollar ($1). *See Zeuner v. Rare Hosp. Int'l, Inc.*, 386 F. Supp. 2d 635, 637 n.2 (M.D.N.C. 2005) (awarding nominal damages of $1 where the plaintiff prevailed at trial but failed to offer any evidence of compensatory damages because the plaintiff's "own activities in failing to comply with discovery and trial preparation requirements precluded her from presenting evidence of damages at trial"); *see also Clark v. Coleman*, 448 F. Supp. 3d 559, 578 (W.D. Va. 2020) (awarding nominal damages of $1 under Rule 50(b) because "[b]ased on the evidence submit[ted] at trial, the court [held] that Clark [had] not presented any evidence from which a jury could find the existence of compensable damages."); *Weider v. Hoffman*, 238 F. Supp. 437, 448 (M.D. Pa. 1965) (awarding nominal damages of $1 where the jury awarded legally improper damages).

**B. Neither Waiver nor Estoppel Applies**

Wiener argues that AXA waived or is estopped from making the arguments it now raises. Wiener takes issue with AXA's acceptance of the Court's jury instructions, arguing that AXA "retroactively challenged the Court's damages

11

instruction without having ever objected to the instruction during the charge conference or after the Court instructed the jury." (Doc. No. 165 at 8).

AXA later argued that the jury based its verdict on an improper standard, because "in a 'loss of market' case like this one, the plaintiff must show the net value of what he could have obtained in an unimpaired market." (Doc. No. 131 at 18). Wiener contends that AXA waived its damages arguments because AXA failed to request a "loss of market" damages instruction or to timely object to the instructions presented.

Regardless of the terminology employed, the Court finds that AXA has consistently presented the arguments currently at issue. AXA raised the issue during trial on a 50(a) motion, ("[T]he damages that have been offered make[] no logical sense whatsoever" (Doc. No. 123 at 358)); then renewed its argument in the motion now before the Court, ("An award of damages cannot rest on a legally incorrect measure" (Doc. No. 131 at 17)); and again in its most recent briefing, ("[T]he jury's award was based on the wrong measure." (Doc. No. 166 at 11)). AXA did not waive its arguments by accepting the Court's jury instructions; indeed, AXA agrees that the jury instructions were appropriate. (Doc. No. 166 at 19).

Wiener raises the same arguments for judicial estoppel. (Doc. No. 165 at 10). Estoppel is appropriate when: "(1) [t]he party to be estopped [is] asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position [is] accepted by the tribunal; and (3) the party to be estopped [has] taken inconsistent positions

12

intentionally for the purpose of gaining unfair advantage." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). Here, AXA prevented Wiener from presenting evidence on a certain theory of damages, both in a pretrial motion and at trial. The fact that such evidence may be necessary—and that AXA so argues—does not constitute an inconsistent position. Estoppel is inapposite.

### C. AXA's Rule 59(e) Motion is Conditionally Granted

"If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." Fed. R. Civ. P. 50(c). "Unlike the procedure under Rule 50(b), on a motion for a new trial under Rule 59(e) a district court is permitted to weigh the evidence." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 650 (4th Cir. 2002). Still, the Court will grant such a motion only if the verdict: (1) is against the clear weight of the evidence, (2) is based on evidence which is false, or (3) will result in a miscarriage of justice, "even though there may be substantial evidence which would prevent the direction of a verdict." *Id.*

Even extending Wiener "the benefit of all reasonable inferences" and resolving all disputed facts in his favor, for the reasons stated above, the Court finds that no jury, "'viewing the evidence in the light most favorable to the winning party, could have properly reached the conclusion reached by this jury'" on compensatory damages. *Wiener*, 58 F.4th at 784 (quoting *Bryant*, 333 F.3d at 543 (cleaned up)). Thus, the Court finds that the damages award is against the clear

13

weight of the evidence and conditionally grants a new trial in the event that this Order is vacated or reversed.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. AXA Equitable Life Insurance Company's Renewed Motion for Judgment as a Matter of Law, (Doc. No. 130), is **GRANTED**. The jury verdict of $8 million, representing the amount of damages that Plaintiff Malcom Wiener is entitled to recover from Defendant AXA Equitable Life Insurance Company, (Doc. No. 117), is **SET ASIDE**, and Plaintiff Malcolm Wiener is instead entitled to an award of nominal damages in the amount of one dollar ($1).

2. The Clerk of Court is directed to enter judgment in accordance with this Order and close this case.

Signed: March 8, 2024

Robert J. Conrad, Jr.
United States District Judge